UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HIND OMAR,

    Plaintiff,

Case No. 23-
Hon.

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, in their individual
and official capacity,

    Defendant.

---

DAVID A. NACHT (P47034)
SCOTT D. WILSON
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
dnacht@nachtlaw.com
swilson@nachtlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the complaint.

## FIRST COMPLAINT AND JURY DEMAND

Plaintiff, Hind Omar, by and through her attorneys, NACHTLAW, P.C., brings this action against Defendant and states the following:

### INTRODUCTION

Plaintiff, Hind Omar (Ms. Omar or the Plaintiff), hereby brings an action for declaratory and injunctive relief, compensatory damages, attorneys' fees, and costs

pursuant to Title II of the Americans with Disabilities Act, 29 U.S.C. 12131, *et seq.*, section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, *et seq.*, and the Persons with Disabilities Civil Rights Act, Michigan Compiled Laws, Chapter 37. Civil Rights section 37.1101, *et seq.*, against the Board of Governors of Wayne State University (the law school, Wayne State University, or the Defendant), an eight-member Board elected by Michigan voters, which is responsible for selecting the university presidents, supervising the control and direction of university funds, setting tuition and other fiscal policies, determining compensation for services, and conferring degrees, and in support thereof alleges as follows:

## JURISDICTION

1. This action arises from a violation of Title II of the Americans with Disabilities Act, 29 U.S.C. 12131, *et seq.*, section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, *et seq.*, and the Persons with Disabilities Civil Rights Act, Michigan Compiled Laws, Chapter 37. Civil Rights section 37.1101, *et seq*. This Court has original jurisdiction pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1343 and supplemental jurisdiction under 28 U.S.C. 2367.

## PARTIES

2. Plaintiff, Hind Omar, is an individual of the full age of majority residing in this judicial district.

3. Made Defendant herein is the Board of Governors of Wayne State University, an eight-member Board elected by Michigan voters, which is responsible for selecting the university presidents, supervising the control and direction of university funds, setting tuition and other fiscal policies, determining compensation for services, and conferring degrees. Wayne State University is a recipient of federal funding and is domiciled in this district.

## VENUE

4. Venue is appropriate under 28 U.S.C. 1391(b)(1) and (2), as the Defendant is domiciled in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

5. Ms. Omar is disabled at all times material to this Complaint.

6. Ms. Omar applied to and was accepted in December of 2022 to attend Wayne State University Law School for the 2023-2024 school year, which begins in fall 2023.

7. Ms. Omar immediately contacted the law school and Student Disability Services (SDS) Office to acquire reasonable accommodations.

8. Ms. Omar provided proper medical paperwork and a list of accommodations with an explanation why there are necessary and reasonable for her specific disabilities.

9. The law school and the SDS office denied the requested accommodations.

10. It became clear that the SDS office was intimidated by the law school and had a conflict of interest between their duty to students with disabilities and their aversion to contradicting the law school.

11. Ms. Omar's requested accommodations do not fundamentally alter the nature of the law school program or any aspect of it, nor does Ms. Omar seek to forego any essential part of the program.

12. Ms. Omar was denied even simple accommodations which she has routinely been granted for years, including, for example, class notes, and lecture recordings, and a private testing room for exams.

13. The law school's frequent response to Ms. Omar's requested accommodations was, "That is not how we do it here."

14. The law school's refusal to consider Ms. Omar's personal circumstances in deciding whether to accommodate her disability runs counter to the ADA's requirement that an individualized inquiry be conducted. See *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 663 (2001), citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, which in turn cites 29 CFR pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on

the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").

15. Under the relevant legal framework, once a student produces evidence of an accommodation that would enable her to meet the educational institution's essential requirements, the burden then shifts to the institution to produce evidence that the requested accommodation would require a fundamental modification of its program or standards.

16. Ms. Omar was advised that the requested accommodations would effect a "fundamental alteration" in the nature of the law school's course of study.

17. The Defendant bears the burden of proof that Ms. Omar's requested accommodations would fundamentally alter the law school's program.

18. Under ABA standard 311(e), generally, a law school that does not offer distance education may grant a student up to one-third of the credit hours required for the J.D. degree for distance education courses; standard 306(c) provides, however, that "[r]emote participation in a non-distance education course by a student as an accommodation provided under law (such as the Americans with Disabilities Act) . . . shall not cause the course to count towards the distance education credit limits in Standard 311(e ) for that student." The Defendant is profoundly confused on this point.

19. Ms. Omar requested virtual or remote learning, which the law school relied on for three years during the pandemic, meaning some recent law students spent their entire law school careers learning exclusively by virtual/remote means.

20. The Defendant cannot rationally determine that virtual/remote learning would require a fundamental modification of the law school's program or standards, after relying on virtual/remote learning throughout the COVID-19 pandemic.

21. Likewise, virtual/remote participation now generally qualifies as full participation, so the defendant cannot rationally deny such a request as a fundamental alteration.

22. An SDS representative told Ms. Omar, "We take medical recommendations into account when we make our personal determination, but we are ultimately the specialists in our field. We decide what's reasonable and what's unreasonable." By contrast, in *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013), the Court stated, "the individual with a disability is most familiar with his or her disability and is in the best position to determine what type of aid or service will be effective," citing U.S. Dept of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, at II-7.1100 (1993). In Argenyi, the Court explained that the ADA and the Rehabilitation Act require a University to "start by considering how [its educational programs] are used by non-disabled [students] and

6

then take reasonable steps to provide [the students] with a like experience. 703 F.3d at 450.

23. The Defendant effectively invited Ms. Omar to quit her attempts to enter the program, stating, "Finally, to the extent that Ms. Omar wishes to withdraw from the program, the Law School is willing to refund her deposit under the circumstances.

## COUNT I -- ADA TITLE II VIOLATION

24. Ms. Omar incorporates the preceding allegations as if fully set forth herein.

25. Ms. Omar is an individual with numerous disabilities, including blindness and chronic mental illness diagnoses. These conditions substantially limit Ms. Omar's major life activities and are "qualified disabilities" under the relevant laws.

26. The ADA was passed as a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.

27. Title II of the ADA prohibits discrimination against qualified persons with disabilities in the provision of public services, programs, and activities, including a public university in its educational programs that are available to students.

28. Persons with disabilities are "qualified" if, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," they meet the essential requirements for the services, programs, or activities.

29. Congress stated in the ADA that Eleventh Amendment immunity would not apply to suits brought under the ADA. 42 U.S.C. 12202.

30. Education is perhaps the most important function of state and local governments.

31. Ms. Omar has suffered injury as a direct result of being disallowed from participating in law school due to the defendant's unlawful discrimination manifested through its failure to grant reasonable accommodations in violation of ADA Title II's requirements.

32. Ms. Omar's injury will be partially redressed by the Court ordering defendant to comply with the relevant laws.

33. Ms. Omar will suffer continued and ongoing discrimination if the defendant is not required immediately to comply with the relevant laws.

34. Ms. Omar has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to her reputation, and

other losses because of the defendant's unlawful acts set forth herein and to be proved at trial.

35. Ms. Omar has retained undersigned counsel for the filing and prosecution of this action. Ms. Omar is entitled to have her attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. 12205.

### COUNT II – SECTION 504 OF THE REHABILITATION ACT OF 1973

36. Ms. Omar incorporates the preceding allegations as if fully set forth herein.

37. Ms. Omar is an individual with numerous disabilities, including blindness and chronic mental illness diagnoses. These conditions substantially limit Ms. Omar's major life activities and are "qualified disabilities" under the relevant laws.

38. Section 504 of the Rehabilitation Act of 1973 is a civil rights law prohibiting discrimination based on disability. It stipulates various protections and procedural safeguards for people with disabilities from being treated unfairly or denied access to services or benefits. Created as legislation to help citizens with impairments, Section 504 applies to all aspects of an individual's life, including education, employment, and access to public services.

39. A covered entity under Section 504 is any private or public entity that receive federal financial assistance, including but not limited to colleges and

universities. The Defendant is a covered entity under Section 504 the Rehabilitation Act.

40. As a civil rights law that prohibits discrimination based on disability, Section 504 means that covered entities must provide individuals with disabilities equal access to their programs, services, and activities. They cannot exclude or otherwise disadvantage individuals with disabilities, and they must make reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to participate. Covered entities must provide reasonable accommodations unless doing so would fundamentally alter the nature of the program, service, or activity or would impose an undue hardship on the entity.

41. Ms. Omar has suffered injury as a direct result of being disallowed from participating in law school due to the defendant's unlawful discrimination manifested through its failure to grant reasonable accommodations in violation of Section 504 of the Rehabilitation Act's requirements.

42. Ms. Omar's injury will be partially redressed by the Court ordering defendant to comply with the relevant laws.

43. Ms. Omar will suffer continued and ongoing discrimination if the defendant is not required immediately to comply with the relevant laws.

44. Ms. Omar has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to her reputation, and

other losses because of the defendant's unlawful acts set forth herein and to be proved at trial.

45. Ms. Omar has retained undersigned counsel for the filing and prosecution of this action. Ms. Omar is entitled to have her attorneys' fees, costs, and expenses paid by Defendant pursuant to 29 U.S.C. 794a.

**COUNT III – MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

46. Ms. Omar incorporates the preceding allegations as if fully set forth herein.

47. Michigan courts view federal civil rights law as persuasive authority in interpreting Michigan civil rights law. *Harrison v. Olde Financial*, 225 Mich App 601, 606 (1997). The Michigan Court of Appeals and the Michigan Supreme Court have noted that the ADA and the PDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PDCRA. *Chiles v. Mach Shop, Inc.*, 238 Mich App 462, 472; 606 N.W.2d 398, 405 (Mich. Ct. App. 1999). Eagle v. Hurley Med. Ctr., Case No. 12-13704, 20 (E.D. Mich. Jun. 27, 2013).

48. Section 102 of the PDCRA provides that the "opportunity to obtain full and equal utilization of . . . educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right" and that "a person shall

accommodate a person with a disability for purposes of . . . education . . . unless the person demonstrates that the accommodation would impose an undue hardship."

49. Section 401 of the Act defines "educational institution" as meaning "a public or private institution or a separate school or department of a public or private institution, includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, school system, school district, or university, and a business, nursing, professional, secretarial, technical, or vocational school, and includes an agent of an educational institution."

50. Section 402 of the Act provides in relevant part that "[a]n educational institution shall not do any of the following:

- a. Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

- b. Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, and privileges of the institution, because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution, or because of the use by an individual of adaptive devices or aids."

51. Under Section 606 of the Act,

"(1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.
(2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation

occurred, or for the county where the person against whom the civil complaint is filed resides or has his or her principal place of business.
    (3) As used in subsection (1), 'damages' means damages for injury or loss caused by each violation of this act, including reasonable attorneys' fees."

52. Ms. Omar has suffered injury as a direct result of being disallowed from participating in law school due to the defendant's unlawful discrimination manifested through its failure to grant reasonable accommodations in violation of the PDCRA's requirements.

53. Ms. Omar's injury will be partially redressed by the Court ordering defendant to comply with the relevant laws.

54. Ms. Omar will suffer continued and ongoing discrimination if the defendant is not required immediately to comply with the relevant laws.

55. Ms. Omar has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to her reputation, and other losses because of the defendant's unlawful acts set forth herein and to be proved at trial.

56. Ms. Omar has retained undersigned counsel for the filing and prosecution of this action. Ms. Omar is entitled to have her attorneys' fees, costs, and expenses paid by Defendant pursuant to PDCRA section 606.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, Hind Omar, respectfully requests that after due proceedings are had there be judgment rendered in her favor against Wayne State University to include the following:

a. a declaration that the defendant is in violation of the ADA, Section 504 of the Rehabilitation Act, and the PDCRA;

b. an order requiring the defendant to grant Ms. Omar's requests for reasonable accommodations and enroll and participate in law school in pursuit of a Juris Doctor degree;

c. an order directing the defendant to evaluate and neutralize its policies, practices, and procedures toward persons with disabilities in accordance with applicable law;

d. an award of all damages to which Ms. Omar is entitled under law and at equity, including compensatory damages, an award of attorneys' fees, costs, and other expenses of this litigation;

e. an award of all other legal, general, and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Jane Doe, by and through her attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues in the above-captioned cause of action.

Respectfully submitted,

/s/ Scott D. Wilson
Scott D. Wilson
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104

Date: July 14, 2023

(734) 663-7550
swilson@nachtlaw.com