## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HIND OMAR,

     Plaintiff,

vs.

BOARD OF GOVERNORS OF
WAYNE STATE UNIVERSITY,
in their individual and official capacity,

     Defendant.

Case No. 2:23-cv-11689

Hon. Mark A. Goldsmith
Mag. Anthony P. Patti

_____/

## **DEFENDANT'S ANSWER TO COMPLAINT AND**
## **AFFIRMATIVE DEFENSES**

Defendant, Board of Governors of Wayne State University ("the University"), through its attorneys, BUTZEL LONG, in answer to Plaintiff's Complaint, states as follows:

### JURISDICTION

1.    This action arises from a violation of Title II of the Americans with Disabilities Act, 29 U.S.C. 12131, *et seq.,* section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, *et seq.,* and the Persons with Disabilities Civil Rights Act, Michigan Compiled Laws, Chapter 37. Civil Rights section 37.1101, *et seq.* This Court has original jurisdiction pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1343 and supplemental jurisdiction under 28 U.S.C. 2367.

**ANSWER:** **Admitted only that Plaintiff alleges violations of Title II of the Americans with Disabilities Act ("Title II"), Section 504 of the Rehabilitation Act ("RA"), and the Person's with Disabilities Civil Rights Act ("PWDCRA") and that the Court has original and supplemental jurisdiction over Plaintiff's RA and PWDCRA claims. The University denies any allegation or inference that Plaintiff's allegations have merit or damages are owing. The University further denies that the Court has subject-matter jurisdiction over Plaintiff's Title II claim, as such claim is barred by the Eleventh Amendment.**

## PARTIES

2.      Plaintiff, Hind Omar, is an individual of the full age of majority residing in this judicial district.

**ANSWER:** **Admitted.**


3.      Made [sic] Defendant herein is the Board of Governors of Wayne State University, an eight-member Board elected by Michigan voters, which is responsible for selecting the university presidents, supervising the control and direction of university funds, setting tuition and other fiscal policies, determining compensation for services, and conferring degrees. Wayne State University is a recipient of federal funding and is domiciled in this district.

**ANSWER:** **Admitted.**

2

## VENUE

4.      Venue is appropriate under 28 U.S.C. 1391(b)(l) and (2), as the Defendant is domiciled in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**ANSWER: Admitted only that venue is proper for Plaintiff's RA and PWDCRA. The University denies that any allegation or inference that Plaintiff's allegations have merit or that venue is proper for Plaintiff's Title II claim, barred by the Eleventh Amendment.**

## FACTUAL BACKGROUND

5.      Ms. Omar is disabled at all times material to this Complaint.

**ANSWER: The University is without sufficient information as to the truth or falsity of the allegation in Paragraph 5, and on that basis denies.**

6.      Ms. Omar applied to and was accepted in December of 2022 to attend Wayne State University Law School for the 2023-2024 school year, which begins in fall 2023.

**ANSWER: Admitted.**

7.    Ms. Omar immediately contacted the law school and Student Disability Services (SDS) Office to acquire reasonable accommodations.

**ANSWER: Denied in the manner and form alleged.  Answering further, on or about February 2, 2023, Plaintiff contacted the SDS Office to notify the Office that she had been admitted to the Law School and emailed Dean Welch on or about February 12, 2023 stating that she "looked forward to discussing what accommodations are possible in order to smoothen this transition." The University denies the remaining allegations in Paragraph 7.**

8.    Ms. Omar provided proper medical paperwork and a list of accommodations with an explanation why there are necessary and reasonable for her specific disabilities.

**ANSWER: Admitted only that Plaintiff demanded certain accommodations at different times with partial explanations and provided two letters from her therapist and a one-page diagnosis from Kellogg Eye Center—Michigan Medicine stating "Recommendations: accommodations as needed." The University denies the remaining allegations in Paragraph 8.**

9.     The law school and the SDS office denied the requested accommodations.

**ANSWER: Denied that the University denied all of the accommodations that Plaintiff demanded.**

10.     It became clear that the SDS office was intimidated by the law school and had a conflict of interest between their duty to students with disabilities and their aversion to contradicting the law school.

**ANSWER: Denied.**

11.     Ms. Omar's requested accommodations do not fundamentally alter the nature of the law school program or any aspect of it, nor does Ms. Omar seek to forego any essential part of the program.

**ANSWER: Denied.**

12.     Ms. Omar was denied even simple accommodations which she has routinely been granted for years, including, for example, class notes, and lecture recordings, and a private testing room for exams.

**ANSWER: Denied.**

13.   The law school's frequent response to Ms. Omar's requested accommodations was, "That is not how we do it here."

**ANSWER:  Denied.**


14.   The law school's refusal to consider Ms. Omar's personal circumstances in deciding whether to accommodate her disability runs counter to the ADA's requirement that an individualized inquiry be conducted.  See *PGA Tour, Inc. v. Martin,* 532 U.S. 661,663 (2001), citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, which in tum cites 29 CFR pt. 1630, App. § 1630.2U) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").

**ANSWER: Denied that the University failed to consider Plaintiff's personal circumstances. The University neither admits nor denies the remaining allegations as they set forth conclusions of law**. **To the extent an answer is required, the University denies.**


15.   Under the relevant legal framework, once a student produces evidence of an accommodation that would enable her to meet the educational institution's essential requirements, the burden then shifts to the institution to produce evidence

6

that the requested accommodation would require a fundamental modification of its program or standards.

**ANSWER:  The University neither admits nor denies the allegations as they set forth conclusions of law**. **To the extent an answer is required, the University denies.**

16.    Ms. Omar was advised that the requested accommodations would effect a "fundamental alteration" in the nature of the law school's course of study.

**ANSWER: Admitted only that the University denied Plaintiff's demand to be a fully remote student who could also not be called on by instructors during class as such "accommodations" would fundamentally alter the nature of the Law School program.**

17.    The Defendant bears the burden of proof that Ms. Omar's requested accommodations would fundamentally alter the law school's program.

**ANSWER:  The University neither admits nor denies the allegations as they set forth conclusions of law**. **To the extent an answer is required, the University denies.**

18.     Under ABA standard 311(e), generally, a law school that does not offer distance education may grant a student up to one-third of the credit hours required for the J.D. degree for distance education courses; standard 306(c) provides, however, that "[r]emote participation in a non-distance education course by a student as an accommodation provided under law (such as the Americans with Disabilities Act) ... shall not cause the course to count towards the distance education credit limits in Standard 311(e ) for that student." The Defendant is profoundly confused on this point.

**ANSWER:  No response is required as this allegation purports to quote and/or summarize ABA standards, which speak for themselves. To the extent an answer is required, Defendant denies any allegations inconsistent with the written ABA standards. Defendant denies any "confusion" and denies any allegations or inference that Plaintiff is entitled to any damages or that Defendant acted unlawfully toward Plaintiff.**

19.     Ms. Omar requested virtual or remote learning, which the law school relied on for three years during the pandemic, meaning some recent law students spent their entire law school careers learning exclusively by virtual/remote means.

**ANSWER:  Admitted only that Plaintiff demanded to be a fully remote student and that during heights of the COVID-19 pandemic, the University's Law**

**School utilized remote learning. The University denies the remaining allegations in Paragraph 19.**

20.     The Defendant cannot rationally determine that virtual/remote learning would require a fundamental modification of the law school's program or standards, after relying on virtual/remote learning throughout the COVID-19 pandemic.

**ANSWER:  Denied.**

21.     Likewise, virtual/remote participation now generally qualifies as full participation, so the defendant cannot rationally deny such a request as a fundamental alteration.

**ANSWER:  Denied.**

22.     An SDS representative told Ms. Omar, "We take medical recommendations into account when we make our personal determination, but we are ultimately the specialists in our field.  We decide what's reasonable and what's unreasonable."  By contrast, in *Argenyi v. Creighton Univ.,* 703 F.3d 441,446 (8th Cir. 2013), the Court stated, "the individual with a disability is most familiar with his or her disability and is in the best position to determine what type of aid or service will be effective," citing U.S. Dept of Justice, The Americans with Disabilities Act

Title II Technical Assistance Manual, at II-7.1100 (1993). In *Argenyi*, the Court explained that the ADA and the Rehabilitation Act require a University to "start by considering how [its educational programs] are used by non-disabled [students] and then take reasonable steps to provide [the students] with a like experience. 703 F.3d at 450.

**ANSWER: Defendant lacks knowledge of which "SDS representative" Plaintiff is referring to and thus can neither admit nor deny these allegations. Defendant is not required to respond to the remaining allegations as they set forth conclusion of law.  To the extent an answer is required, the University denies.**

23.    The Defendant effectively invited Ms. Omar to quit her attempts to enter the program, stating, "Finally, to the extent that Ms. Omar wishes to withdraw from the program, the Law School is willing to refund her deposit under the circumstances."

**ANSWER: Denied in the manner and form alleged.  Answering further, in response to Plaintiff's counsel's email starting "Ms. Omar must pay deposits very soon," the University's counsel's email explaining why Plaintiff's demand to be a fully remote law student was not a reasonable accommodation ended by stating, "Finally, to the extent that Ms. Omar wishes to withdraw from the**

**program, the Law School is willing to refund her deposit under the circumstances." The University denies the remaining allegations in paragraph 23.**

## COUNT I -ADA TITLE II VIOLATION

24.     Ms. Omar incorporates the preceding allegations as if fully set forth herein.

**ANSWER:  The University repeats its answers to Paragraphs 1 through 23, as if fully set forth herein.**

25.     Ms. Omar is an individual with numerous disabilities, including blindness and chronic mental illness diagnoses.  These conditions substantially limit Ms. Omar's major life activities and are "qualified disabilities" under the relevant laws.

**ANSWER:  The University is without sufficient information as to the truth or falsity of the allegation that Plaintiff has numerous disabilities that substantially limit her major life activities and are "qualified disabilities," and on that basis denies the allegations in Paragraph 25.**

26.    The ADA was passed as a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.

**ANSWER: The University neither admits nor denies the allegations as they set forth conclusions of law. To the extent an answer is required, the University denies.**

27.    Title II of the ADA prohibits discrimination against qualified persons with disabilities in the provision of public services, programs, and activities, including a public university in its educational programs that are available to students.

**ANSWER: The University neither admits nor denies the allegations as they set forth conclusions of law. To the extent an answer is required, the University denies.**

28.    Persons with disabilities are "qualified" if, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," they meet the essential requirements for the services, programs, or activities.

**ANSWER: The University neither admits nor denies the allegations as they set forth conclusions of law. To the extent an answer is required, the University denies.**

29. Congress stated in the ADA that Eleventh Amendment immunity would not apply to suits brought under the ADA. 42 U.S.C. 12202.

**ANSWER: Denied.**

30. Education is perhaps the most important function of state and local governments.

**ANSWER: Admitted only that education is an important function of state and local governments. The University denies any allegation or inference that post-graduate professional school like law school is a fundamental right for purposes of a sovereign immunity analysis.**

31. Ms. Omar has suffered injury as a direct result of being disallowed from participating in law school due to the defendant's unlawful discrimination manifested through its failure to grant reasonable accommodations in violation of ADA Title II's requirements.

**ANSWER: Denied.**

32.   Ms. Omar's injury will be partially redressed by the Court ordering defendant to comply with the relevant laws.

**ANSWER:** **Denied.**

33.   Ms. Omar will suffer continued and ongoing discrimination if the defendant is not required immediately to comply with the relevant laws.

**ANSWER:** **Denied.**

34.   Ms. Omar has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to her reputation, and other losses because of the defendant's unlawful acts set forth herein and to be proved at trial.

**ANSWER:** **Denied.**

35.   Ms. Omar has retained undersigned counsel for the filing and prosecution of this action.  Ms. Omar is entitled to have her attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. 12205.

**ANSWER:** **Admitted only that it appears that Plaintiff retained the undersigned counsel. The University denies the remaining allegations in Paragraph 35.**

14

## COUNT II - SECTION 504 OF THE REHABILITATION ACT OF 1973

36.     Ms. Omar incorporates the preceding allegations as if fully set forth herein.

**ANSWER:  The University repeats its answers to Paragraphs 1 through 35, as if fully set forth herein.**

37.     Ms. Omar is an individual with numerous disabilities, including blindness and chronic mental illness diagnoses.  These conditions substantially limit Ms. Omar's major life activities and are "qualified disabilities" under the relevant laws.

**ANSWER:  The University is without sufficient information as to the truth or falsity of the allegation that Plaintiff has numerous disabilities that substantially limit her major life activities and are "qualified disabilities," and on that basis denies the allegations in Paragraph 37.**

38.     Section 504 of the Rehabilitation Act of 1973 is a civil rights law prohibiting discrimination based on disability. It stipulates various protections and procedural safeguards for people with disabilities from being treated unfairly or denied access to services or benefits. Created as legislation to help

citizens with impairments, Section 504 applies to all aspects of an individual's life, including education, employment, and access to public services.

**ANSWER:  The University neither admits nor denies the allegations as they set forth conclusions of law. To the extent an answer is required, the University denies.**

39.    A covered entity under Section 504 is any private or public entity that receive federal financial assistance, including but not limited to colleges and universities. The Defendant is a covered entity under Section 504 the Rehabilitation Act.

**ANSWER: The University neither admits nor denies the allegations as they set forth conclusions of law. To the extent an answer is required, the University denies.**

40.    As a civil rights law that prohibits discrimination based on disability, Section 504 means that covered entities must provide individuals with disabilities equal access to their programs, services, and activities. They cannot exclude or otherwise disadvantage individuals with disabilities, and they must make reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to participate. Covered entities must provide reasonable

accommodations unless doing so would fundamentally alter the nature of the program, service, or activity or would impose an undue hardship on the entity.

**ANSWER: The University neither admits nor denies the allegations as they set forth conclusions of law. To the extent an answer is required, the University denies.**

41.     Ms. Omar has suffered injury as a direct result of being disallowed from participating in law school due to the defendant's unlawful discrimination manifested through its failure to grant reasonable accommodations in violation of Section 504 of the Rehabilitation Act's requirements.

**ANSWER: Denied.**

42.     Ms. Omar's injury will be partially redressed by the Court ordering defendant to comply with the relevant laws.

**ANSWER: Denied.**

43.     Ms. Omar will suffer continued and ongoing discrimination if the defendant is not required immediately to comply with the relevant laws.

**ANSWER: Denied.**

44.     Ms. Omar has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to her reputation, and other losses because of the defendant's unlawful acts set forth herein and to be proved at trial.

**ANSWER:  Denied.**

45.     Ms. Omar has retained undersigned counsel for the filing and prosecution of this action.  Ms. Omar is entitled to have her attorneys' fees, costs, and expenses paid by Defendant pursuant to 29 U.S.C. 794a.

**ANSWER: Admitted only that it appears that Plaintiff retained the undersigned counsel. The University denies the remaining allegations in Paragraph 45.**

## COUNT III - MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

46.     Ms. Omar incorporates the preceding allegations as if fully set forth herein.

**ANSWER:  The University repeats its answers to Paragraphs 1 through 45, as if fully set forth herein.**

18

47.     Michigan courts view federal civil rights law as persuasive authority in interpreting Michigan civil rights law. *Harrison v. Olde Financial,* 225 Mich App 601,606 (1997). The Michigan Court of Appeals and the Michigan Supreme Court have noted that the ADA and the PDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PDCRA. *Chiles v. Mach Shop, Inc.,* 238 Mich App 462, 472; 606 N.W.2d 398, 405 (Mich. Ct. App. 1999).  Eagle v. Hurley Med. Ctr., Case No. 12-13704, 20 (E.D. Mich. Jun. 27, 2013).

**ANSWER: The University neither admits nor denies the allegations as they set forth conclusions of law**. **To the extent an answer is required, the University denies.**


48.     Section 102 of the PDCRA provides that the "opportunity to obtain full and equal utilization of ...  educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right" and that "a person shall accommodate a person with a disability for purposes of ... education ... unless the person demonstrates that the accommodation would impose an undue hardship."

**ANSWER: Denied that Paragraph 48 accurately quotes Section 102 of the PWDCRA.**

49.     Section 401 of the Act defines "educational institution" as meaning "a public or private institution or a separate school or department of a public or private institution, includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, school system, school district, or university, and a business, nursing, professional, secretarial, technical, or vocational school, and includes an agent of an educational institution."

**ANSWER: Admitted only that Plaintiff accurately quotes Section 401 of the PWDCRA.**

50.     Section 402 of the Act provides in relevant part that "[ a]n educational institution shall not do any of the following:

    a. Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

    b. Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, and privileges of the institution, because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution, or because of the use by an individual of adaptive devices or aids."

**ANSWER: Admitted only that Plaintiff accurately quotes Section 402 of the PWDCRA.**

51.     Under Section 606 of the Act,

"(1) A person alleging a violation of this act may bring a civil action
for appropriate injunctive relief or damages, or both.
(2) An action commenced pursuant to subsection (1) may be brought
in the circuit court for the county where the alleged violation
occurred, or for the county where the person against whom the civil
complaint is filed resides or has his or her principal place of business.
(3) As used in subsection (1), 'damages' means damages for injury or
loss caused by each violation of this act, including reasonable
attorneys' fees."

**ANSWER:** **Admitted only that Plaintiff accurately quotes Section 606 of the**

**PWDCRA.**

52.     Ms. Omar has suffered injury as a direct result of being disallowed from

participating in law school due to the defendant's unlawful discrimination

manifested through its failure to grant reasonable accommodations in violation of

the PDCRA's requirements.

**ANSWER:** **Denied.**

53.     Ms. Omar's injury will be partially redressed by the Court ordering

defendant to comply with the relevant laws.

**ANSWER:** **Denied.**

21

54.     Ms. Omar will suffer continued and ongoing discrimination if the defendant is not required immediately to comply with the relevant laws.

**ANSWER:** **Denied.**

55.     Ms. Omar has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to her reputation, and other losses because of the defendant's unlawful acts set forth herein and to be proved at trial.

**ANSWER:** **Denied.**

56.     Ms. Omar has retained undersigned counsel for the filing and prosecution of this action.  Ms. Omar is entitled to have her attorneys' fees, costs, and expenses paid by Defendant pursuant to PDCRA section 606.

**ANSWER: Admitted only that it appears that Plaintiff retained the undersigned counsel. The University denies the remaining allegations in Paragraph 56.**

## AFFIRMATIVE AND OTHER DEFENSES[1]

---

[1] By asserting a matter as a defense, Defendant does not intend to assume any burden of persuasion on any matter for which Plaintiff would otherwise have that burden. Rather, these matters are pleaded to avoid any allegation of waiver.

Defendant, through its attorneys, BUTZEL LONG, states its Affirmative and Other Defenses to Plaintiff's Complaint.

1.     Plaintiff has failed to mitigate Plaintiff's alleged damages, if any.

2.     The Complaint fails, in whole or in part, including the nature of damages requested, to state claims upon which relief can be granted.

3.     Plaintiff's claims are barred, in whole or in part, because of immunity conferred by the Eleventh Amendment to the United States Constitution and/or because of sovereign immunity.

4.     Plaintiff is not otherwise qualified for law school.

5.     Plaintiff has failed to properly file Notice before the Michigan Court of Claims as required by MCL 600.6431.

6.     Plaintiff's claims in the Complaint may be barred, in whole or in party, by the doctrines of unclean hands, equitable, collateral, and/or judicial estoppel and/or res judicata.

7.     Plaintiff is not entitled to a jury trial for any state law claim for which the Michigan Court of Claims would have exclusive jurisdiction, and any request for a jury for any such claim should be stricken.

8.     Plaintiff's claims are barred in whole or in part by one of the affirmative defenses set forth in Fed. R. Civ. Pro. 8(c).

Defendant reserves the right to assert such further affirmative defenses as may

become apparent during the course of discovery in this case. Until Defendant avails itself of discovery, it will not know for certain whether all of the aforementioned affirmative defenses will be raised by motion before or at trial, but Defendant asserts them now in an effort to give Plaintiff notice of such defenses.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: */s/ Brett J. Miller*
      Brett J. Miller (P68612)
      Sarah L. Nirenberg (P77560)
      150 W. Jefferson – Suite 100
      Detroit, MI 48226
      (313) 225-7000
      millerbr@butzel.com
Dated:  September 21, 2023          nirenberg@butzel.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2023, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Brett Miller*
      Brett Miller (P68612)

100415201