## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HIND OMAR,

         Plaintiff,                       Case No. 23-cv-11689
                                               Hon. Robert J. White

v.

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, in their individual
and official capacity,

         Defendant.

| David A. Nacht (P47034) | Brett J. Miller (P68612) |
|---|---|
| NACHTLAW, P.C. | BUTZEL LONG |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 501 Avis Drive, Suite 3 | 150 W. Jefferson – Suite 100 |
| Ann Arbor, MI 48108 | Detroit, MI 48226 |
| (734) 663-7550 | (313) 225-7000 |
| dnacht@nachtlaw.com | millerbr@butzel.com |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## PURSUANT TO FED. R. CIV. P. 56

Defendant Board of Governors of Wayne State University moves this Court, under Fed. R. Civ. P. 56, for entry of summary judgment. In support of the motion, Defendant states:

1.     Plaintiff filed her Complaint on July 14, 2023. ECF No. 1.

2.     For the reasons set forth in the accompanying brief, there is no genuine dispute as to any material fact arising out of the claims stated in Plaintiff's Complaint, and Defendant is entitled to judgment as a matter of law.

3.     On August 27, 2024, counsel for Defendant sought concurrence from Plaintiff's counsel, explaining the nature of the motion and relief they would be seeking; but concurrence was not obtained, necessitating the filing of this motion.

Respectfully submitted,

BUTZEL LONG,
A professional corporation

By:  */s/ Brett J. Miller*
    Brett J. Miller (P68612)
    Attorneys for Defendant
    150 W. Jefferson, Suite 100
    Detroit, Michigan 48226
    (313) 225-7062
    millerbr@butzel.com

Dated:  August 28, 2024

## Statement of the Issues Presented

1.  Whether Omar, who admits she cannot participate in the Socratic method or conduct legal research with citations independently, is "otherwise qualified" to attend law school when these are essential functions of legal education, and whether her rejection of WSU's offered reasonable accommodations in favor of demanding full remote learning renders her unqualified as a matter of law under the Americans with Disabilities Act and related statutes.

2.  Whether WSU failed to provide Omar with necessary accommodations when it offered alternatives addressing her stated limitations but denied her demand for full remote learning, which was not supported by her medical documentation, and when Omar abandoned the interactive process by refusing to discuss alternatives and instead filing a lawsuit without ever attending classes or testing the offered accommodations.

3.  Whether Omar's demand for full remote learning for first-year law courses constitutes a fundamental alteration of WSU's law program, given the interactive nature of legal education, the lack of facilities for hybrid learning, and the potential compromise of educational standards and ABA accreditation requirements.

4.  Whether sovereign immunity bars Omar's state law claims under the Persons with Disabilities Civil Rights Act and her claims for monetary damages and retrospective relief under Title II of the Americans with Disabilities Act in the context of graduate legal education.

**Controlling Authorities**

*Babcock v. Michigan*, 812 F.3d 531(6th Cir. 2016)

*Brumley v. UPS*, 909 F.3d 834 (6th Cir. 2018)

*City of Boerne v. Flores*, 521 U.S. 507 (1997)

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)

*Estate of Ritter v. Univ. of Mich.*, 851 F.2d 846 (6th Cir. 1988)

*Gati v. W. Ky. Univ.*, 762 F.App'x 246 (6th Cir. 2019)

*Johnson v. Cleveland City School Dist.*, 443 F.App'x 974 (6th Cir. 2011)

*Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432 (6th Cir. 1998) **Error! Bookmark not defined.**

*Mote v. City of Chelsea*, 252 F.Supp. 3d 642 (E.D. Mich. 2017)

*Shaikh v. Lincoln Mem'l Univ.*, 608 F.App'x 349 (6th Cir. 2015)

*Southeastern Community Coll. v. Davis*, 442 U.S. 397 (1979)

42 U.S.C. § 12101(a)(7)

# **TABLE OF CONTENTS**

Index of Authorities ............................................................................... i

Introduction ..........................................................................................1

Facts ....................................................................................................2

I.    Omar's Academic and Disability Background and Initial
Law School Attempt.................................................................2

II.   Omar's Reapplication and Admission to WSU Law
School..................................................................................4

III.  Omar's Extensive Accommodation Requests.......................5

IV.  Discussion with SDS of Omar's Accommodation
Requests................................................................................8

V.   Continued Accommodation Discussions and WSU's
Denial of a Remote Learning Program. ...............................9

VI.  Omar Abandons the Interactive Process, Pursues Legal
Action, and Declines to Test Accommodations.................12

Argument............................................................................................13

I.    Omar Cannot Establish a *Prima Facie* Case that WSU
Failed to Accommodate her Disabilities. ............................14

     A.   Omar Was Not "Otherwise Qualified" To Attend
Law School. ..............................................................15

         i.   Omar Cannot Perform Essential Functions of Legal
Education. ......................................................15

         ii.  Omar Rejected Reasonable Accommodations
Offered by WSU...........................................17

     B.   Omar Cannot Establish that WSU Failed to
Provide Her With Necessary Accommodations. ......................19

         i.   Omar's Demanded Accommodations Were Not
Necessary......................................................20

         ii.  Omar Abandoned the Interactive Process. .....................21

II.   Remote Learning for First-Year Courses Fundamentally
Alters WSU's Law Program. ...............................................22

III.   Sovereign Immunity Bars Omar's State Law Clams and
        Claims for Monetary Damages and Retrospective Relief...................24

Conclusion ..............................................................................................25

Certificate of Service ...............................................................................26

# INDEX OF AUTHORITIES

**Cases**

*Ability Center of Greater Toledo v. City of Sandusky*,
 385 F.3d 901 (6th Cir. 2004) ................................................................14

*Babcock v. Michigan*,
 812 F.3d 531 (6th Cir. 2016) ................................................................14

*Brumley v. UPS*,
 909 F.3d 834  (6th Cir. 2018) ...............................................................21

*City of Boerne v. Flores*,
 521 U.S. 507 (1997) .............................................................................24

*DiCarlo v. Potter*,
 358 F.3d 408 (6th Cir. 2004) ................................................................14

*Doe v. Univ. of Ky.*,
 5:20-cv-0057-GFVT-MAS, 2021 U.S. Dist. LEXIS 149900
 (E.D. Ky. Aug. 9, 2021) .......................................................................22

*Estate of Ritter v. Univ. of Mich.*,
 851 F.2d 846 (6th Cir. 1988) ................................................................24

*Gati v. W. Ky. Univ.*,
 762 F'Appx. 246 (6th Cir. 2019) ................................ 17, 18, 19, 22, 23

*Johnson v. Cleveland City School Dist.*,
 443 F'Appx. 974 (6th Cir. 2011) ..........................................................14

*Kaltenberger v. Ohio Coll. of Podiatric Med.*,
 162 F.3d 432 (6th Cir. 1998) ......................................................... 15, 22

*Kleiber v. Honda of Am. Mfg., Inc.*,
 485 F.3d 862 (6th Cir. 2007) ................................................................21

*Kreipke v. Wayne State Univ.*,
 807 F.3d 768 (6th Cir. 2015) ................................................................24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) .............................................................................13

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*,
   119 F.3d 453 (6th Cir. 1997) ...................................................................14

*Mote v. City of Chelsea*,
   252 F.Supp. 3d 642 (E.D. Mich. 2017) ...............................................14

*Rittenhouse v. Bd. of Trustees of So. Illinois University*,
   628 F. Supp.2d 887 (S.D. Ill. 2008) .....................................................25

*Saqr v. Univ. of Cincinnati*,
   No. 1:18-cv-542, 2019 U.S. Dist. LEXIS 26467 (S.D. Ohio Feb. 20, 2019),
   a report and recommendation adopted by the court,
   2019 U.S. Dist. LEXIS 41137 (S.D. Ohio March 14, 2019) ....................... 24, 25

*Shaikh v. Lincoln Mem'l Univ.*,
   608 F'Appx. 349 (6th Cir. 2015).............................................................15

*Southeastern Community Coll. v. Davis*,
   442 U.S. 397 (1979) ..............................................................................22

*Talley v. Family Dollar Stores of Ohio, Inc*.,
   542 F.3d 1099 (6th Cir. 2008)................................................................17

*Yaldo v. Wayne State Univ.*,
   266 F. Supp. 3d 988 (E.D. Mich. 2017) ...............................................15

**Statutes**
42 U.S.C. § 12101(a)(7)..............................................................................22

42 U.S.C. §12131(2) ...................................................................................15

**Rules**
Fᴇᴅ. R. Cɪᴠ. P. 56(a)...................................................................................13

## Introduction

Wayne State University (WSU) Law School went above and beyond to accommodate Hind Omar. Despite her subpar LSAT score and GPA, WSU admitted Omar and accepted most of accommodation demands, offering reasonable alternatives for the rest. Yet Omar insisted on acquiescence to all of her unreasonable accommodation demands, including a "research assistant" to do her citations, modification of the Socratic method, and full remote learning for first-year courses—a demand disconnected from her stated disabilities that would fundamentally undermine WSU's interactive in-person legal education. Her actions reveal a profound unwillingness to engage in good faith. When presented with WSU's thoughtfully designed alternatives—crafted to facilitate her full participation while maintaining essential program elements—Omar abandoned the interactive process. She filed this lawsuit without ever attending a class or testing WSU's proposed accommodations.

Omar's claims fail for three primary reasons: *First*, she cannot establish a *prima facie* case of failure to accommodate because (a) She was not qualified to attend law school, as evidenced by her own admissions that she could not perform essential functions of legal education; and (b) Even if she were qualified, WSU did not fail to provide her with necessary reasonable accommodations. Her demanded accommodations were not necessary or reasonable, and she abandoned the interactive process before allowing WSU to fully explore potential solutions.

1

*Second*, Omar's demand for a fully remote program is untenable because it would fundamentally alter the law program, compromising its educational integrity.

*Third*, sovereign immunity bars Omar's state law claims and claims for monetary and retrospective relief.

Throughout this process, WSU has demonstrated an unwavering commitment to providing reasonable accommodations, while Omar has insisted on specific concessions without regard for their necessity or impact on the educational program. The Court should recognize WSU's good-faith efforts and Omar's failure to engage constructively in the accommodation process and dismiss the case.

## Facts

### I.   Omar's Academic and Disability Background and Initial Law School Attempt.

Omar's journey applying to and attending law school began in 2020, following her return to Michigan with her husband. Ex. A, Pl's Dep., 10, 29; Ex. B. Three years prior, she had graduated from the University of Michigan with a Bachelor of Arts in political science, earning a 3.4 GPA. Ex. B. Despite completing an in-person internship at the Truman National Security Project in Washington, D.C. as part of her studies, Omar had not held a paying job since at least 2017 and decided to apply law school. Ex. A at 20, 42-43; Ex. C.

With an LSAT score of 140, Omar faced significant challenges in gaining admission to law school in 2020. Ex. B; Ex. D. WSU Law School, ranked the 55th

2

best U.S. law school, with its competitive median LSAT score of 162 and median GPA of 3.83, Ex. D, rejected her application, Ex. A at 47. Her applications to Cooley Law School and the University of Toledo's Law School's part-time program, however, were accepted. *Id*. at 29, 35, 42. She opted to attend the University of Toledo. *Id*. at 31. At the time, she was living in the Ypsilanti/Ann Arbor area with her husband, who was attending the University of Michigan's Ross Business School, Ex. B, Ex. E, and their newborn daughter, Ex. A at 146. The COVID-19 pandemic had forced the University of Toledo Law School, like many law schools, to temporarily transition to a fully remote model, allowing Omar to attend class in fall 2021 from home while caring for her child. *Id*. at 29. Complications with her disability-based scholarship from the State of Michigan forced her to pause her studies. *Id*. at 29-32.

Throughout Omar's education, beginning in primary school, she has relied on extensive accommodations for her retinoid pigmentosa, a degenerative eye disease that has rendered her legally blind since childhood. Ex. A at 13-15, 17-20; Ex. F. She uses assistive technology, such as digital screens with zoom capabilities, to read, Ex. A at 70, which she has been allowed to use in class throughout her education and has also been accommodated at WSU, which she attended in-person before transferring, and the University of Michigan with various accommodations, including private testing spaces and extended time for exams and assignment, and note-taking assistance. *Id*. at 17-20. During her last year at the University of Michigan,

3

the extent of Omar's accommodations grew to including the political science depart-
ment's provision of a librarian to assist with a 30-page final paper by conducting
research, compiling data, identifying relevant excerpts, scanning information, and
completing citations. *Id*. at 24-26. Omar came to anticipate and demand these exten-
sive supports and more, without due consideration for how they might compromise
the integrity of her education and preparation for the legal profession.

During her brief tenure at the University of Toledo Law School, Omar re-
ceived accommodations in the form of extended time for exams and assignments,
verbal identification for class participation, and access to recorded lectures through
Zoom. *Id*. at 37. She was in the process of requesting note-taking assistance when
she left the program. *Id*. at 37-38. Additionally, Omar sought accommodation re-
garding the Socratic method/cold-calling practices, expressing anxiety about refer-
encing materials quickly and answering specific questions about the readings in front
of peers. *Id*. at 38-41. This request was not addressed before her departure. *Id*.

## II.     Omar's Reapplication and Admission to WSU Law School.

After resolving her scholarship issues, Omar applied to fully remote master's
programs at Arizona State University and Oklahoma University, *id*. 43-45, while
also reapplying to law schools for fall 2022 admission, *id*. at 44. Her goal was to
become a disability advocate litigator. *Id*. WSU Law School waitlisted and ulti-
mately rejected Omar's second application. *Id*. at 47.

On August 26, 2022, WSU's Law School's Dean of Admissions Kathy Fox contacted Omar by email, offering to discuss how she could improve her application for the fall 2023 class. Ex. G. They met on September 8, 2022, where Dean Fox suggested retaking the LSAT. *Id*. In her follow-up, Omar explained that despite receiving accommodations such as large print material, double time, a reader, and a scribe for the LSAT, she found the test and its administrators discriminatory and refused to retake the exam to improve her 2021 score of 150. *Id*. Dean Fox inquired with WSU representatives about potential assistance for Omar's LSAT challenges. *Id*. Omar reapplied that same month without a new LSAT score. *Id*. at 50. In December, WSU admitted her for fall 2023 without requiring an improved LSAT score, *id*. at 52-53, and awarded her the inaugural Pitt Family Scholarship for Individuals with Physical Disabilities covering tuition, fees, books, supplies, and living expenses up to the federally allowed maximum, *id*. at 56, Ex. Y.[1]

## III. Omar's Extensive Accommodation Requests.

On August 12, 2022, while waitlisted at WSU Law School, Omar contacted the Student Disabilities Services Office (SDS), which assists students with disabilities in obtaining educational accommodations. Ex. H, Frost Dep., 12-13. She requested accommodations for her visual limitations due to retina pigmentosa and a recently diagnosed anxiety condition from fall 2021. Ex. I, WSU 30; Ex. A at 16.

---

[1] The Pitt Scholarship is offered only to law students with disabilities.

Omar reported that her therapist recommended "completely remote law school attendance" to avoid anxiety caused by classroom interactions and campus navigation difficulties. Ex. I; Ex. F.[2] SDS specialist Sadfah Shohatee immediately advised Omar that, based on her experience with the Law School, a demand for remote learning would be challenging given the curriculum. Ex. I. Omar's additional requests included a "research assistant" to aid in "scanning material" and "creating citations," a modification to cold calling (such as being asked only "general questions" or answering questions during office hours), extended time for exams and assignments, a private testing environment, laptop use in the classroom, lecture notes in advance (presumably from professors), recorded lectures, verbal descriptions of board content, note-taking support, and all materials in digital format. *Id.* Shohatee and Omar planned to meet again later in the month, pending Omar's acceptance, to continue discussing and potentially finalize accommodations related to her limitations. *Id.*

Following her December admission, Omar contacted Shohatee on February 2, 2023, to discuss accommodations for the fall 2023 semester as a part-time student. *Id.* (WSU 31). Shohatee sent Omar the standard SDS registration form. *Id.*; Ex. H at 12-13. They reviewed Omar's proposed accommodations and agreed to follow up in April after course registration. Ex. I. However, Omar expedited the process by

---

[2] Omar's therapist's letter states Omar "require[s] the attendance of law school to be remote part-time [referring to the part-time program]." Ex. F.

reaching out to Dean Fox, who directed her to Dean Brandi Welch, the Assistant Dean for Student Affairs at WSU Law School, responsible for facilitating law student accommodations. Ex. J, Welch Dep., 6; Ex. K.

Omar and Dean Welch met via Zoom in late February to discuss Omar's accommodation requests. Ex. L; Ex. J at 15-16. Dean Welch, having never encountered requests for a research assistant or full remote attendance, informed Omar that these were unprecedented accommodations, and in response to the research assistant request, explained that the Law School expected first-year students to conduct research. Ex. J at 16. Omar apparently interpreted this discussion as resistant to what she perceived to be the accommodations she was entitled to according to the ADA and ABA. Ex M, 3-4. On March 5, 2023, Omar submitted a detailed spreadsheet listing her demanded accommodations, alternatives, and justifications, some of which appeared inconsistent with her stated limitations. Ex. N.

Omar's primary request was for fully remote education, appearing first on her spreadsheet. *Id*. Her justifications included:  extended study time, need for bulky assistive technology, difficulty with simultaneous listening and note-taking, anxiety management, and commute reduction. *Id*. She also requested modifications to the Socratic method, limiting in-class questions to general topics or moving specific inquiries to office hours, and a research assistant, for which she failed to provide alternatives or clarify which essential law school tasks the assistant would take on. *Id*.

Additional requests included recorded lectures, extended time for exams and assignments, digital in-class materials, access to instructor or peer notes, use of personal computer and assistive technology, and private exam space. *Id*.

## IV.   Discussion with SDS of Omar's Accommodation Requests.

Omar also sent her detailed accommodation spreadsheet to Shohatee in SDS, who followed standard procedure by scheduling a discussion. Ex. O. On March 10, 2023, Shohatee and Omar had a conversation, which Omar recorded without Shohatee's knowledge, occasionally muting herself to consult with her husband. Ex. M.[3]

Omar urgently sought accommodation confirmation before committing her deposit. *Id*. at 2. When Shohatee began reviewing the spreadsheet, Omar interjected, criticizing her prior interaction with Dean Welch. *Id*. at 2-5. Shohatee explained that full remote learning was atypical post-COVID and had never been offered in the law program, except temporarily for specific situations like mobility issues, providing an example of a student with a broken leg. *Id*. at 6-8. Despite informing Omar that the Law School considered remote learning a fundamental alteration of the program,[4] Shohatee assured her they were open to discussing alternative accommodations based on her limitations. *Id*. 6-9, 22-23.

---

[3] WSU can provide the Court the audio of the recordings upon request.
[4] This decision resulted from collaboration between SDS and the Law School. Ex. H at 15.

Omar showed no willingness to discuss alternatives to her demand for fully remote classes *Id*. at 9-10. Shohatee maintained that Omar's medical documentation did not support transitioning the entire program to remote learning and that the Law School could accommodate her disabilities without it. *Id*. at 11-13. Omar did not dispute Shohatee's characterization of her request, and continued arguing that ABA Standards and the COVID-era remote classes proved it wouldn't fundamentally alter the program. *Id*. at 13-21.

Shohatee explained that cold-calling modifications depended on individual courses and would require further discussion post-registration. *Id*. at 23-26. Omar opposed allowing professors to dictate this accommodation. *Id*. at 26-27. Shohatee clarified they weren't rejecting modifications outright. *Id*. 27-29. On the research assistant request, Omar cited her University of Michigan experience, claiming that she could not skim articles. *Id*. at 30-34. Shohatee suggested alternatives like additional time or peer collaboration. *Id*. As Shohatee addressed other accommodations, Omar abruptly ended the conversation, remarking to her husband "wow, they didn't even try." *Id*. at 34-38.

## V.    Continued Accommodation Discussions and WSU's Denial of a Remote Learning Program.

Omar pursued accommodation discussions with Shohatee and Welch jointly. Ex. J at 34-35; Ex. P. Unsatisfied with the denial of full remote learning, Omar escalated to Cherise Frost, Director of SDS. Ex. H at 14. Omar provided Frost with

her spreadsheet and her interpretation of laws and ABA guidelines that she believed mandated remote classes. Ex. I (WSU 35-36).

On March 15, 2023, Omar, her husband, and Frost met via Zoom. Ex. I (WSU 36); Ex. Q. Omar disclosed recording the conversation for note-taking purposes. Ex. Q at 1. In so many words, she reiterated her belief that the Law School should simply adopt her requested accommodations. *Id*. at 2-3. When Frost attempted to discuss Omar's limitations and barriers, Omar redirected the conversation to her demanded accommodations, particularly full remote learning, as she and her husband insisted that the law demanded remote learning. *Id*. at 3-5, 22-36, 41-46.

Omar erroneously claimed that ABA standards and the ADA supported her request for remote learning. *Id*. at 23-32. ABA standards do not determine ADA reasonable accommodations. Ex. R (Standard 306(c)). They set a 30-hour limit on remote learning credits, waived for disability accommodations. *Id*. This waiver doesn't make remote learning an automatic ADA accommodation; it merely prevents additional accreditation requirements for such accommodations.

As it related to the other accommodations, Omar requested professor-provided class recordings, as opposed to recording classes with her own device. *Id*. at 10. Frost noted she would need to investigate classroom recording capabilities. *Id*. at 11-12. Regarding cold-calling modifications, Omar again cited extended response

times and anxiety management as justifications. *Id*. at 17-19. The zoom call ended with Frost agreeing to get back to Omar. *Id*. at 52-53.

Following her conversation with Omar, Frost consulted an ABA representative about remote learning requirements. Ex. S. The ABA responded that their standards require "accommodation consistent with applicable law," deferring to ADA guidelines for individual cases. *Id*.

On March 30, 2023, Frost informed Omar that WSU had determined full remote learning was not a reasonable accommodation, as it would fundamentally alter the program by limiting instructor-student interaction. Ex. I (WSU 39); Ex. T, 1-2. Omar maintained her position for a fully remote program and requested a written denial. Ex. T at 3. Frost attempted to discuss alternative accommodations, including assistive technology in the classroom, modified cold-calling practices, lecture recordings, and potential Bureau of Services for Blind Persons (BSBP) services. *Id*. at 7-14. Omar failed to engage in any discussion about alternatives, and instead requested time to process the denial of the remote learning demand, stating that it was "a lot for [her] to process, and not the outcome that [she] was anticipating, so [she] just want[ed] to take a little time to think." *Id*. at 15. They scheduled a time to follow up the following week. *Id*.

Following the call, Omar emailed Dean Welch, reiterating her belief that her requested accommodations were ADA-mandated and requesting a written denial

11

statement and citing to inapplicable regulations regarding accessibility of facilities, not student accommodations. Ex. U.[5] Frost summarized their conversation via email, confirming WSU's commitment to implementing reasonable alternative accommodations. Ex. W. Omar postponed further discussions pending a detailed explanation for the denial of a fully remote program. *Id*.

## VI. Omar Abandons the Interactive Process, Pursues Legal Action, and Declines to Test Accommodations.

Instead of continuing discussions about alternative accommodations, Omar engaged legal representation, Scott Wilson, who contacted WSU's general counsel's office on April 10, 2023. Ex. X. On April 26, 2023, although not legally required, Frost sent Omar a detailed email outlining the reasons for denying her request for a fully remote learning program. Ex. Z. The email stated that the Law School determined that remote learning would fundamentally alter the course of study due to the interactive nature of the Socratic method used in many courses, the lack of facilities for HyFlex instruction,[6] the requirement for in-person experiential education courses, and the potential compromise of educational standards and ABA accreditation requirements. *Id*. It also confirmed that WSU granted most of Omar's

---

[5] On April 5, 2023, Omar made the same request to Frost. Ex. V.

[6] HyFlex learning lets students choose to attend class in-person, join online live, or watch recordings later, aiming to offer the same education through different methods. Jeanne Samuel, What is HyFlex, Hyflex Learning, https://hyflex-learning.com/what-is-hyflex/ (last visited Aug. 26, 2024).

accommodation requests and offered alternatives for the few not granted outright.[7]
These included modifying cold-calling to a specific week with opt-out options, and
BSBP assistance for limited research and transportation. *Id*.; Ex. Z.

Omar ignored Frost's email. Her attorney continued negotiations with WSU's
general counsel's office, protected by FRE 408. Ex. BB. WSU advised Omar to re-
engage with SDS in the interactive process. *Id*. Rather than following this advice,
Omar filed suit on July 14, 2023. ECF No. 1. On August 21, 2023, she accused SDS
and Dean Welch via email of discrimination and failing to engage in the interactive
process, citing their refusal to accept her demanded accommodations. Ex. CC. By
refusing to attend classes, Omar forfeited the opportunity to assess her actual accom-
modation needs or test the adequacy of the Law School's offered accommodations.[8]

## Argument

Defendant is entitled to summary judgment as a matter of law because, for the
reasons stated below, taking the facts in the light most favorable to Omar, there is
no genuine issue of material fact for trial. FED. R. CIV. P. 56(a). *E.g., Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

---

[7] Ex. GG is attached as a demonstrative chart of Omar's requested accommodations,
WSU's responses, and offered alternatives.

[8] Omar had learned of her pregnancy in March 2023, with a due date in December
2023, coinciding with her refusal to attend classes. Ex. A at 114-115. Concurrently,
she was enrolled in a fully remote master's program at the University of Oklahoma,
which she deferred until spring 2024. *Id*. at 43-44, 115, Ex. AA.

## I.   Omar Cannot Establish a *Prima Facie* Case that WSU Failed to Accommodate her Disabilities.

The Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (§ 504), and the Persons with Disabilities Civil Rights Act (PWDCRA) share similar language, purpose, and scope. Consequently, the analysis for a failure to accommodate claim remains consistent across these statutes, with applicable case law being uniform. *Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459-60 (6th Cir. 1997)). *See also Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 908 (6th Cir. 2004); *Mote v. City of Chelsea*, 252 F.Supp. 3d 642, 649 (E.D. Mich. 2017) (noting that because the PWDCRA substantially mirrors the ADA, "resolution of a plaintiff's ADA claims will generally, though not always, resolve plaintiff's PWDCRA claim.").

To establish a *prima facie* case for a failure to accommodate claim, Omar must prove five elements:  (1) she is disabled within the meaning of the ADA, § 504, and the PWDCRA; (2) she is otherwise qualified, with or without reasonable accommodation; (3) WSU knew or had reason to know about her disability; (4) she requested an accommodation; and (5) WSU failed to provide the necessary accommodation. *Johnson v. Cleveland City School Dist.*, 443 F.App'x 974 (6th Cir. 2011). *See also DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)."

Omar's claims fail because she cannot establish two crucial elements: that she is qualified and that WSU failed to provide her with reasonable accommodations.

## A.     Omar Was Not "Otherwise Qualified" To Attend Law School.

Under Title II of the ADA, a "qualified individual with a disability" must "meet the eligibility requirements for...participation in programs...provided by a public entity." 42 U.S.C. §12131(2). Omar must demonstrate she could satisfy the Law School's necessary requirements, or that any reasonable accommodation would enable her to meet these requirements. *Shaikh v. Lincoln Mem'l Univ.*, 608 F.App'x 349, 353 (6th Cir. 2015). *See also*, *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998); *Yaldo v. Wayne State Univ.*, 266 F. Supp. 3d 988, 1011 (E.D. Mich. 2017). Omar fails to meet the "otherwise qualified" reason because:  (i) she cannot perform essential functions of legal education, and (ii) she rejected reasonable accommodations offered by WSU.

### i.     Omar Cannot Perform Essential Functions of Legal Education.

Despite Omar's admission following her third application, her communications with SDS and Dean Welch reveal her inability to perform essential program requirements, even with accommodation. These requirements are fundamental to legal education and directly prepare students for the rigors of legal practice:

*First*, while discussing her limitations with SDS and Dean Welch, Omar made clear that she could not participate in the interactive nature of first-year courses,

15

which involved class participation through the Socratic method/cold-calling because she could not reference her materials and immediately answer the question. Ex. M at 18-19; Ex. Q at 17. This method, used in U.S. law schools since the late 19th century, is essential for developing skills crucial to legal practice:  (a) Critical thinking:  Challenges students to analyze legal issues under pressure; (b) Oral advocacy:  Develops clear, persuasive articulation of legal arguments; (c) Real-time analysis:  Simulates courtroom pressure and client interactions; (d) Case dissection:  Trains students to identify key issues and understand judicial reasoning.[9] Omar's proposed alternatives—answering questions in office hours or limiting question scope, Ex. N—fail to replicate these essential aspects. In practice, attorneys must respond to judges' questions in open court, address clients' concerns promptly, and think on their feet. The Socratic method directly prepares students for these professional demands and contributes to all students' learning. Notably, Omar would require this accommodation even if she were fully remote just as she had requested from University of Toledo as a remote student. Ex. A at 114; *see supra* Facts I.

*Second*, because she cannot skim materials, Ex. M at 31, Omar required a research assistant for citations, an essential skill for legal practitioners and a graded

---

[9] *See* Exhibit DD with syllabi for various first year courses discussing the importance of class participation, including voluntary participation and the "on call" system/cold-calling (Criminal Law, pp. 7-9; Contracts A, pp. 3-4; Constitutional Law I, p. 3; Civil Procedure, p. 5).

component of the first-year research and writing course, Ex. EE, that cannot be out-sourced to a "research assistant." Proper citation is crucial in legal practice for sev-eral reasons: (a) Ethical obligation:  Accurate attribution of legal sources is an ethical requirement; (b) Credibility:  Proper citations bolster an attorney's credibility with the court; and (c) Legal reasoning: Citations demonstrate the logical progression of legal arguments. Reliance on others for this fundamental task indicates Omar is not qualified to meet program requirements or prepare for the demands of legal practice.

The Law School's curriculum is meticulously designed to develop these es-sential skills, preparing graduates for the demands of legal practice. Omar's admis-sions establish that she is seeking that WSU remove these essential elements demon-strating her lack of qualification to participate in the Law School.

### ii.    Omar Rejected Reasonable Accommodations Offered by WSU.

Further, while Omar was entitled to suggest accommodations, she cannot compel WSU to accept her proposals if WSU offers alternative reasonable accom-modations. *See Gati v. W. Ky. Univ.*, 762 F.App'x 246, 252 (6th Cir. 2019) (*citing Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1108 (6th Cir. 2008)). When a university offers reasonable accommodations that address a student's stated limitations, and the student rejects these accommodations, the student is no longer considered a "qualified individual" as a matter of law. *Id.*

17

The Sixth Circuit's decision in *Gati* is instructive. There, a graduate student with a spinal injury requested to take required courses remotely or at a nearby satellite campus to avoid a long commute. The university instead offered on-campus housing as a reasonable accommodation. When the plaintiff rejected this offer, the court found he was no longer qualified under the ADA. *Id*. at 252.

Omar's case closely parallels *Gati*. WSU offered Omar a comprehensive set of reasonable accommodations designed to address her stated limitations:

- Provision of assistive technology in the classroom, eliminating transportation concerns.[10] Ex. Z; Ex. T at 8;

- Access to a distraction-reduced study environment in the undergraduate library's assistive technology lab. Ex. Z;

- On-campus housing to mitigate commuting difficulties. *Id*.

- Transportation assistance, a service Omar acknowledged her scholarship provided. *Id*.; Ex. A at 41-42.

- Permission to leave the classroom for breaks to manage anxiety, coupled with lecture recording privileges and access to other students' notes to account for missed content. Ex. Z;

---

[10] WSU could have addressed Omar's concerns by strategically positioning assistive technology in the rear of the classroom to alleviate her anxiety about being watched and judged. Ex. A at 71. Additionally, WSU offered lecture recordings and access to other students' notes to supplement any hearing difficulties. *Id*. at 73; Ex. Z.

- Modification of cold-calling that might include notice of cold-calling for a particular week or ability to opt-out at times, *id*.; and

- Collaboration with BSBP for campus orientation to reduce anxiety stemming from unfamiliarity with the environment. *Id*.

These accommodations directly addressed Omar's stated rationales for requesting remote learning, offering reasonable alternatives that would allow her to participate fully in the program while maintaining its essential elements. It is undisputed that Omar rejected these accommodations by failing to respond to them and instead initiating this lawsuit. *See supra* Facts VI. This rejection, analogous to the plaintiff's actions in *Gati*, renders Omar unqualified as a matter of law. WSU fulfilled its obligation to offer reasonable accommodations that would enable Omar to meet the program's requirements. By rejecting these offers and insisting on her preferred accommodations, Omar has placed herself outside the protection of the law as a qualified individual.

**B.** **Omar Cannot Establish that WSU Failed to Provide Her With Necessary Accommodations.**

Omar's claim that WSU failed to provide necessary accommodations fails for two reasons: (i) the specific accommodations she demanded were not necessary to address her disabilities, and (ii) she abandoned the interactive process, preventing WSU from fully exploring potential accommodations.

### i.      Omar's Demanded Accommodations Were Not Necessary.

WSU agreed to provide Omar with the majority of her requested accommodations. It only declined four specific requests in their exact form:  full remote class attendance, elimination of the Socratic method/cold-calling, a research assistant, and a private examination space. Ex. GG.[11]

Crucially, Omar's demand for remote learning was not necessary to alleviate her visual impairment or mental health limitations as a part-time student. Her justification—that remote learning would allow more study time due to her slower pace,[12] Ex. N—is undermined by WSU's offer of on-campus housing, which would similarly eliminate commute time. Moreover, Omar's other rejected accommodations were not necessary:

• Research assistant:  Omar admitted this was unnecessary for first-year coursework, only potentially needed for future law review participation. Ex. A at 117-120.

• Socratic method modifications:  Omar acknowledged she had "no problem looking super blind or referencing [her] material" in class, requesting modifications primarily to avoid inconveniencing peers. *Id*. at 40, 105.

---

[11] Notes from peers was not solidified. WSU discussed professors reaching out to students when classes began. Ex. M, 35-36. Because Omar would be able to record the lectures, however, notes from peers was not necessary. Ex. Z.

[12] If Omar is unable to keep pace with coursework even with reasonable accommodations, this further demonstrates she is not qualified for the program.

- Private examination room: WSU could have accommodated her needs within a shared space by positioning her large screen appropriately, with private rooms available if a scribe was required. Ex. J at 17.

### ii.   Omar Abandoned the Interactive Process.

The interactive process is a crucial component of the ADA's accommodation framework. As the Sixth Circuit has noted, "The interactive process requires communication and good-faith exploration of possible accommodations." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). The ADA does not obligate an institution to make on-the-spot accommodations of the plaintiff's choosing. *Brumley v. UPS*, 909 F.3d 834, 840 (6th Cir. 2018). Instead, the interactive process is meant to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id*.

WSU is not liable for failing to provide a reasonable accommodation where Omar abandoned the interactive process. *Id*. WSU demonstrated its willingness to engage in the interactive process:

- SDS provided repeated assurances that they were willing to accommodate Omar's needs through alternative means. Ex. M at 6-9, 22-23; Ex. Z.

- WSU offered numerous alternative accommodations that addressed Omar's stated concerns. Ex. Z.

21

- WSU remained open to further discussion on modifying the Socratic method/cold-calling. *Id*.; Ex. M at 23-26.

Despite these good-faith efforts by WSU, Omar unilaterally terminated the interactive process. *See supra* Facts VI. This decision prevented WSU from fully exploring potential accommodations and refining its offerings to meet Omar's needs while maintaining the integrity of its educational program. Her insistence on specific accommodations, despite reasonable alternatives being offered, does not constitute a failure to accommodate under the law. After all, she is not entitled to the specific accommodations of her choosing just because she is unsatisfied. *See Doe v. Univ. of Ky.*, 5:20-cv-0057-GFVT-MAS, 2021 U.S. Dist. LEXIS 149900, at *12 (E.D. Ky. Aug. 9, 2021) (*citing Gati*, 762 F.App'x at 252).

## II.     Remote Learning for First-Year Courses Fundamentally Alters WSU's Law Program.

While anti-discrimination statutes aim to provide "equality of opportunity" and "full participation" for disabled individuals in society, 42 U.S.C. § 12101(a)(7), they do not require educational institutions to lower or substantially modify their standards to achieve this goal. *Southeastern Community Coll. v. Davis*, 442 U.S. 397, 413 (1979). Courts, recognizing their limitations in evaluating curriculum content and emphasis, afford significant deference to a university's judgment and discretion in determining whether an accommodation fundamentally alters its educational offerings. *Kaltenberger*, 162 F.3d at 436.

22

Omar's assertion that her request for all first-year courses to be remote is reasonable does not make it so. *Gati*, 762 F.App'x at 251. WSU, after careful consideration, determined that such an accommodation would fundamentally alter its program for several reasons:

*First*, while styled as lectures, first-year law courses are highly interactive, employing the Socratic method and fostering spontaneous discussions that inspire collaboration and active learning. Ex J at 35; Ex. DD. This environment is crucial for developing critical thinking and oral advocacy skills essential to legal practice. *Id*. As the only remote participant, Omar's ability to hear and participate would be significantly limited. *Id*.

*Second*, WSU's classrooms are not equipped for hybrid learning. They lack screens for in-person students to view remote participants; software to notify professors of remote students' questions or participation requests; cameras to display the instructor and other speaking students to remote participants; microphones to capture audio from all in-class participants. Ex. Z.[13]

*Third*, HyFlex learning, which combines in-person and remote students, requires significant alterations to teaching plans and strategies, particularly in discussion-based or student-led classes. Ex. FF.

---

[13] Explaining that the Law School's classrooms are not set up for HyFlex learning.

Omar's request for full remote learning in first-year courses would require WSU to substantially modify its curriculum and teaching methods, fundamentally altering the nature of the law school program. Such a change goes beyond reasonable accommodation and would compromise the quality and integrity of the educational experience for all students.

III.    **Sovereign Immunity Bars Omar's State Law Clams and Claims for Monetary Damages and Retrospective Relief.**

The Eleventh Amendment of the U.S. Constitution immunizes WSU, as an arm of the State, from state law claims asserted in federal court. *Estate of Ritter v. Univ. of Mich.*, 851 F.2d 846, 849 (6th Cir. 1988); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015), mandating dismissal of Omar's PWDCRA claim. Moreover, while the Sixth Circuit has not directly addressed this issue in the context of graduate education, persuasive caselaw suggests that WSU is also immune from claims under Title II of the ADA for monetary damages and retrospective relief.

In *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2019 U.S. Dist. LEXIS 26467, at *9 (S.D. Ohio Feb. 20, 2019), a report and recommendation adopted by the court, 2019 U.S. Dist. LEXIS 41137 (S.D. Ohio March 14, 2019), the magistrate-judge provided a comprehensive review of conflicting decisions on this issue, ultimately upholding immunity for the University of Cincinnati against a Title II ADA claim brought by a medical student. The court applied the "congruence and proportionality" test from *City of Boerne v. Flores*, 521 U.S. 507, 520-521 (1997) to

24

determine whether the abrogation of sovereign immunity was valid for Title II claims not implicating the Fourteenth Amendment. Crucially, the *Saqr* court was persuaded by arguments emphasizing the distinction between general educational programs and professional school education. *Saqr*, 2019 U.S. Dist. LEXIS 26467, at *20-24. This distinction proved pivotal in determining the validity of sovereign immunity abrogation. The court concluded that the abrogation of immunity is not valid for Title II ADA claims alleging denial of access to medical school. *Id*.

This Court should adopt the reasoning of *Saqr* and *Rittenhouse v. Bd. of Trustees of So. Illinois University*, 628 F. Supp.2d 887 (S.D. Ill. 2008), which similarly found immunity against a Title II claim filed by a law school student and dismiss Omar's ADA claim for monetary damages and retrospective relief because Congress did not abrogate immunity for Title II failure to accommodate claims in law school.

### Conclusion

For those reasons, the Court should dismiss Omar's lawsuit with prejudice.

Respectfully submitted,

BUTZEL LONG, A professional corporation

By: */s/ Brett J. Miller*
    Brett J. Miller (P68612)
    Attorneys for Defendant
    150 W. Jefferson, Suite 100
    Detroit, Michigan 48226
    (313) 225-7062
Dated:  August 28, 2024                millerbr@butzel.com

25

## Certificate of Service

I hereby certify that on August 28, 2024, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Brett J. Miller*　　　　　　
　　Brett J. Miller (P68612)