# EXHIBIT DD

# CRIMINAL LAW
# COURSE SYLLABUS
# WINTER 2024

Daniel Ellman
Assistant Clinical Professor
Director of Externships
Wayne State University Law School
Office 1228
ellmand@wayne.edu
(313) 577 – 1897

<u>Class Hours</u>: Mondays & Wednesdays, 10:35 a.m. – 12 p.m., Room 1535

<u>Office Hours</u>: Wednesdays, 1 p.m. – 4 p.m. (in person, Office 1228)
Thursdays, 9:30 a.m. – 12 p.m. (Zoom)

-------------------------------------------------------------------------------------------------------------------

## I.    Course Description

Welcome to Criminal Law, Winter 2024!  This course presents an introduction to the field of criminal law. At its core, criminal law is about how we use some of law's heaviest artillery – punishment and stigma − to govern behavior.  An individual's contact with the criminal legal system can have serious consequences, not just in terms of the imposition of traditional legal penalties, but also with respect to many other areas of a person's life, including their immigration status, housing options, employment opportunities, voting rights, custody of children, mental health, and substance use. Because criminal law regulates everyday life, knowledge of this subject will benefit you regardless of which career path you choose, and the practical skills we develop in this course will translate to many other areas of legal practice. Ultimately, this course hopes to deepen your appreciation for this field, strengthen your analytical capacities, and develop your personal sense of what it means to be a lawyer.

**Please read this syllabus carefully**.  It is **intentionally long and detailed** to provide you a clear sense of where we are headed and what is expected in this course.  **All students will be responsible for its content**.

## II.    Professional Background, Pedagogical Approach & Overall Goals

Before the start of the term, please read my professional background, also available on the Wayne Law Faculty Biography webpage. I ask you to do this for a few reasons (not personal aggrandizement, I promise).  First, this term I hope to get to know each of you as a student and as a professional.  It is only fair, then, that I be willing to share my own story with you.  Second, many of you may be considering your future career paths.  In addition to covering criminal law, this course aims to help you develop your professional identity.  My path, and those of your other professors, offer only a few examples of the many options out there.  Both this term and afterward, I'm happy to serve as a resource as you consider your trajectory.

1

Third, you will notice that I was previously a public defender. During the term, I will try to incorporate experiences from my practice to bring course material to life.  That said, notwithstanding my own criminal defense experience, this course does not expect you to take any particular perspective on the issues we cover. For instance, just because I was a defense attorney doesn't mean I want or expect you to take a defendant-friendly perspective on any topics we discuss, nor does it mean I necessarily hold those views myself. Fundamentally, this is _not_ a course about what I think. Instead, this is a course that asks _you_ to develop your _own_ thinking and perspectives on this material. Diverse viewpoints are encouraged and will improve the learning experience. Regardless of your position on any given issue, what is required is that you provide sound reasoning for any position you take and that you engage in conversations with tolerance and respect for others. This syllabus develops those ideas in more detail.

Finally, you will notice that I am a clinical professor and the Director of Externships at the Law School. You may be aware that, as a graduation requirement, you must at least take at least one clinic or externship during your time at Wayne. For many students, their 1L summer will be the first opportunity to do so.  As you consider your experiential learning opportunities throughout law school, please feel free to reach out.  The Law School's Experiential Learning website provides more detailed information on the many experiential learning opportunities we offer.

## III.   **Learning Outcomes**

By the end of this course, students should be able to:

- articulate and analyze: the fundamental purposes of criminal law, theories of punishment, role of counsel, core principles such as mens rea and actus reus, elements of substantive crimes, inchoate offenses, and criminal defenses.

- dissect the impact of historical, social, cultural, and racial influences on criminal law;

- read, interpret, analyze, and synthesize criminal statutes and codes; compare and contrast common law and the Model Penal Code;

- demonstrate advanced legal analysis, analogical reasoning, policy-based reasoning, and problem-solving capacities;

- apply principles of statutory construction and interpretation;

- translate legal principles to new situations;

- formulate and articulate persuasive arguments;

- evaluate and critique the ways in which the criminal legal system affects individuals and society; and

- collaborate with classmates; exchange ideas; engage in respectful conversation and debate.

- further articulate a professional identity

2

## IV.     Required Texts

The required casebook ("Casebook") for this course is Lee & Harris, *Criminal Law: Cases & Materials (4th ed.)* (West Academic Publishing).   Any additional supplemental material will be provided on Canvas or through links in the Course Calendar below.

- **Important**: The Final Exam will require use of computer software that does not permit access to the Internet or documents on your computer.   Therefore, if you want to use any course material during the exam, including the Casebook, it is necessary to have a hard copy or print any relevant material. See below for more information on the Final Exam.

## V.     Office Hours & Contact Information

For the Winter 2024 term, I will hold two separate weekly office hours, one in person and the other remote:

- **Wednesdays**: 1 p.m. – 4 p.m. (in person, Office 1228)

- **Thursdays**: 9:30 a.m. – 12 p.m. (Zoom) (use link below)

Join Zoom Meeting

https://wayne-edu.zoom.us/j/94133664928?pwd=RHZwRk1xdjdEUEptVGJ5dHhFY3pLUT09&from=addon

Meeting ID: 941 3366 4928
Passcode: 497143

You may choose to attend either set of office hours.   For either set of office hours, please email me at least 2 business days in advance indicating that you would like to attend office hours and the time you would like to meet.   I will confirm whether the time you requested is available.

If you cannot attend office hours, you may contact me for a separate meeting (ellmand@wayne.edu).   I am also happy to answer questions or concerns by email or phone.   I encourage you to bring any issues to my attention when they arise so we can address them promptly. Please allow reasonable time for a response.

## VI.     Course Structure - Overview

Learning is best accomplished if you have an overall sense of where we are headed, and what we are trying to achieve.   To that end, below is a broad overview of the course content.   As you can see, this course will be divided into 6 parts, each containing subtopics.

- **Part I: Foundations of Criminal Law**
  a. Introduction to Criminal Law
  b. Theories of Punishment; Role of Counsel
  c. Collateral Consequence of a Criminal Case
  d. Theory into Practice 1: Plea Bargaining

- **Part II: Core Legal Principles**
  a. Actus Reus
  b. Mens Rea
  c. Mistakes of Fact & Mistake of Law
  d. Causation & Concurrence

- **Part III: Statutory Offenses**
  a. Theory into Practice 2 (Panel Discussion): Perspectives of Those Impacted (not tested on final exam)
  b. Homicide
  c. Property Offenses

- **Part IV: Inchoate Offenses & Accomplice Liability**
  a. Attempt
  b. Solicitation & Conspiracy
  c. Accomplice Liability

- **Part V: Defenses**
  a. Self-defense
  b. Defense of Others; Defense of Habitation; Defense of Property
  c. Theory into Practice 3 (Panel Discussion): Practitioner Perspectives (not tested on final exam)
  d. Necessity; Duress; Intoxication
  e. Insanity; Entrapment

- **Part VI: Course Conclusion**
  a. Sex Offenses (not tested on final exam)
  b. Final Exam Review

## VII.    Canvas

Canvas will be the online platform used in this course.  It will be used to post any supplemental material and for communication with the class.  Be sure you have access to this course on Canvas (**"Criminal Law – Sec 002) (LEX_6300_2401_002)**.  The Canvas posting details are as follows:

- **Home Page** – The Home Page provides basic information and the Zoom link to remote office hours.

4

- **<u>Announcements tab</u>** - Class announcements will be sent via Canvas and will also appear under the Announcements tab and on the Home Page.  Individual emails to students will <u>not</u> be sent.

- **<u>Files tab</u>** – This tab will include:

    o A copy of this syllabus (if updates are made, you will be informed and the new version will be posted);

    o **<u>Course Readings folder</u>** – contains any supplemental course readings unless otherwise provided in the Course Calendar below;

    o **<u>PowerPoints folder</u>** - PowerPoint slides will be posted <u>after</u> a given lecture;

    o **<u>Practice Questions folder</u>** – The Practice Questions for each lecture are provided in this folder.

**VIII.    <u>Course Readings</u>**

The Course Calendar at the end of this document outlines your assignments for each class. Readings should be completed <u>before</u> class and students should be <u>ready to discuss</u> them during class.

- **<u>Access to Material in Class</u>**: Frequently, we will refer to course material during class. This means you should be able to access the material during class, either by bringing the material itself or having sufficient notes to discuss their content. This is considered part of class preparation.

**IX.    <u>Class Sessions</u>**

Classes will be held on **Mondays and Wednesdays, 10:35 a.m. to 12 p.m., in Room 1535**. Much of our class time will be devoted to analyzing the material contained in the readings and concepts related to it.  Here are a few things to note:

- **<u>Focus Question</u>**: You will notice in the Course Calendar that each class involves a "Focus Question."  These questions encourage you to consider your own perspective on the concepts we study or apply them to real world situations. While you do not need to submit a formal answer to the Focus Question, you should keep it in mind as you read and come prepared to discuss your answer.

- **<u>PowerPoint Slides</u>** - I will use PowerPoint slides to cover course content.  For your reference, after each class, I will post the PowerPoints on Canvas → Files tab → PowerPoints folder.

## X.   Attendance

The ABA Model Rules of Professional Conduct require a lawyer to be "competent, prompt, and diligent."   As this course aims to help you develop into effective lawyers, the same will be expected in this class.  Our class sessions are also where much of the learning will happen.

Accordingly, class attendance in this course is **mandatory**.  For each class, students must also be **punctual**, which means arriving to class **before** it begins.  Attendance will be taken at the beginning of each class.  **It is a student's responsibility to sign the attendance sheet for each class. Failure to sign the attendance sheet may result in an unexcused absence, regardless of whether the student is physically present in the class**.

A. **Absence Policy**: You are permitted **2 absences** (either 2 excused, or 1 excused & 1 unexcused; not 2 unexcused) during the term. Any further absences may result in a one-step lowering of your final grade (e.g., A- to B+).

To request that an absence be considered excused, you must **email me by 5 p.m., the day before a particular class, or as soon as possible after an unanticipated absence**. You should explain the reason for the absence, and I will determine whether it qualifies as a legitimate reason to warrant it being considered an excused absence. I will not contact you to inquire about an absence.  Failure to contact me will result in an unexcused absence.  If your absence is potentially COVID-related, you should contact Assistant Dean of Student Affairs, Tierney Hoffman (tehoffman@wayne.edu).

Under the Law School's attendance policy, students who fail to attend classes regularly may be withdrawn involuntarily from the course following appropriate notice. For purposes of this course, **if you miss more than six classes during the semester, without regard to the reason, I reserve the right to drop you from the course**.

B. **Lateness Policy**: You are permitted **3 unexcused latenesses** during the term; any further unexcused lateness may result in a one-step lowering of your final grade (e.g., A- to B+).

If you anticipate being late to class, you must **email me by 5 p.m. the day before a particular class, or as soon as possible after an unanticipated lateness, explaining the reason for the lateness**. I will determine whether any reason provided qualifies as a legitimate reason to excuse the lateness. I will not contact you to inquire about a lateness. Failure to contact me will result in an unexcused lateness.

C. **Missed Material**: **You are responsible for all material covered in every class**, including missed classes or those to which you arrive late.  If you miss class or arrive late, you should reach out to a classmate to ask that they fill you in on what you missed.  You may also

consult the PowerPoint posted to Canvas for that lecture.  If, after doing so, you are unsure or confused about any of the material covered, feel free to reach out to me for further clarification.

## XI.    <u>Class Participation</u>

It is recognized that everyone learns at a different pace and in a different way, and that we each bring different and valuable life experiences to the classroom discussion of criminal law.  The sharing of differing perspectives leads to better learning, and dynamic conversation can simply make things more fun.  For that reason, class discussion will be an essential element of this course.

This class will combine voluntary participation and "cold calling." **All students are expected to be prepared for every class, and are eligible to be called on during every class**, subject to the following:

- <u>**Voluntary Participation**</u> – Sometimes, I will ask for voluntary participation rather than calling on a student.  Everyone is welcome and encouraged to participate at any point during a class.

- <u>**"On Call" System**</u> **–** As noted above, I will sometimes "cold call," meaning call on a particular student to answer a question.  Every student is expected to be prepared for each class and is eligible to be called on.  That said, please take note of the "Purpose of 'On Call' System & Suggestions" section below.

- <u>**"No Call" List**</u> **–** I understand that, from time to time, it is not possible to be fully prepared.  If you cannot be prepared for a particular session, you may email me by **<u>5 p.m., the day before a particular class</u>**, asking that your name be placed on the "No Call List."  You do not need to provide a reason.  Each student may use the No Call List **at most 2 times** during the semester, although there is no obligation to use it at all.

- <u>**Personal Requests**</u>:  Criminal law inherently deals with many difficult subjects.  While it is important that we engage with those topics to fully understand this area of law, it is also recognized that some issues may strike a personal chord.  If the subject matter scheduled for a particular class makes you too uncomfortable to be able to be called on, please email me **by 5 p.m., the day before that class** indicating as much. (See also "Content Advisory, Safe Space, and Confidentiality" section below). You do not need to provide a reason, other than indicating that the topic is something about which you don't want to be called on.  Please use this option only when it is necessary. Please be aware that opting out of being called on is not opting out of knowing the material.

- <u>**Grading**</u>: For excellence in class participation, I reserve the right to raise a student's final grade by one step (e.g., B+ to A-). I also reserve the right to lower a student's

grade by one step for unpreparedness during class discussions. Active participation includes in-class engagement, such as asking and answering questions, working collaboratively in small groups, commenting on ideas offered by other students, engaging with panelists, and presenting your views on the issues we discuss.

## XII.   **Purpose of "On Call System" & Suggestions**

I was in law school once. I know that being called on in class can be an unnerving experience. In this course, it is important to understand that the purpose of calling on students is **not** to embarrass, intimidate, or put you on the spot. Rather, the purpose is to invite your input and work through an issue together, thereby helping us all internalize and understand the material more completely.  Here are some suggestions to encourage comfortable, active, and productive participation:

o   **Being "unprepared" is different than being "uncertain."**  Being "unprepared" means you have not sufficiently reviewed the material before class. Being "uncertain" means that, despite reviewing the material, you are just not sure of the answer to a particular question.  Being unprepared is not acceptable in this course. However, being uncertain is not only acceptable, but even expected at times.  Many legal issues are not cut-and-dry but are instead subject to interpretation and debate. That's part of what makes the law interesting.  So, if I ask a question and you are uncertain of the answer, just give it your best shot based on what you know.  We'll work through it together.

o   **Share your ideas, take risks, and help your neighbors.** All students are encouraged to share their ideas. Mistakes are not only understandable and acceptable but are also an essential part of the learning process.  Class discussions are most productive when students are willing to take risks in posing or answering questions and commenting on others' ideas.  A student will never be marked down or criticized for making a well-meaning mistake or misunderstanding a concept during class discussion.  Also, I encourage you to help another student if it seems like they are struggling.  I consider students in the class to be "co-counsels," who can freely assist others.

o   **Maintain tolerance & respect at all times.** Meaningful and constructive dialogue is encouraged in this class, which requires mutual respect, willingness to listen, and consideration of opposing points of view. Tolerance of individual differences and alternative viewpoints will be maintained at all times.  The Law School's Faculty Mission Statement will be implemented:

*"Tolerance of and respect for others despite differences . . . are fundamental for and indispensable to a democracy. They are, moreover, essential qualities for those who would enter the legal profession. Disrespect toward and*

8

> *disparagement of others on the basis of characteristics of identity is inconsistent with the ideals of the profession and with the qualities of character necessary to legal practice.*
>
> -   WSU Law School Faculty Mission Statement

## XIII.   <u>Computer and Phone Use</u>

Computers may be used during class for **legitimate educational purposes only**, such as taking notes or referring to relevant material.  Any other use, such as emailing, social networking, reading the news, surfing the internet, and playing games are not considered legitimate classroom purposes and will detract from our classroom discussion.  **Phone use is prohibited during class**.

A student who violates this policy may be excused from class, resulting in an unexcused absence.  Points may also be deducted from your final grade for violation of this policy.

## XIV.   <u>Course Assignments</u>

### A.  <u>2 Panelist Questions (Required) (Each 5% of final course grade) (10% total)</u>

This term, I hope you experience criminal law as more than just cases in a textbook. The criminal legal system involves real people and real consequences.  To bring the material to life, during the term, we will hold **two panel discussions** involving individuals with personal and/or professional experience in the system. The panels will offer real-life insight into the issues we study, enabling deeper examination of the subject matter.  These panels are also chance for you to interact with the speakers, ask questions, investigate personal areas of interest, and further explore your future career paths.

Active participation and interaction with these panelists will be critical in creating vibrant and fruitful conversation.  To facilitate dynamic discussion, before each panel, every student is required to **submit 1 "Panelist Question"** that you would want to ask the speaker(s) during that class. **The question must be submitted by 11:59 p.m., the day *before* a given class**.[1]

The topic of your question is open-ended.  It can be based on the readings, course themes, personal interests, or the backgrounds of the panelists.  It can be directed at one panelist or a general question for all panelists if there are more than one.  <u>Time will be provided during class to ask your questions; it is expected that students arrive to class prepared to ask their questions, though it is likely we won't have time for every student to ask a question.</u>

   o   **<u>Due Dates</u>**:

      ▪   **<u>Panelist Question 1</u>: 11:59 p.m., Feb. 13**

---

[1] For instance, our first panel discussion will be held on February 14 (Lecture 11).  Each student must submit a question by 11:59 p.m., February 13.

- ▪ **Panelist Question 2**: 11:59 p.m., March 31

  - o **Format**: You should type your Panelist Question in a Word document. Include your name, the lecture number, and "Panelist Question" the top left corner of the document. Then simply type your question in the document. Here is an example:

    > Daniel Ellman
    > Lecture 11
    > Panelist Question
    >
    > [Text of Your Question]

  - o **Submission**:  You should submit the Word document containing your question on Canvas, in the Assignments tab, under the relevant assignment.  For instance, for Lecture 11, you should submit your question for that class on Canvas → Assignments tab → "Lecture 11: Panelist Question."

  - o **Grading**: Each Panelist Question is worth **5%** of the final grade in this course (100-point scale).  Together, then, the 2 Panelists Questions are worth 10% of your overall course grade (10 points out of 100).

    The substance of your panelist question is not graded.  However, **submission** of a Panelist Question for each panel is **mandatory**.  Each Panelist Question will receive a grade of **either 5/5 or 0/5**.  A Panelist Question submitted on time will be given a grade of 5/5.  A Panelist Question submitted late will be given a 0/5. If you are unable to submit a Panelist Question on time, you must **email me by 5 p.m. on the date the question is due**, indicating the reason you can't complete the question. If an emergency prevents you from contacting me in advance, you should contact me as soon as possible afterward.  I will determine whether the reason offered qualifies as a legitimate one to warrant an extension on the assignment. I will not contact you to inquire about a missing Panelist Question.  Failure to contact me will result in a grade of 0/5 for that Panelist Question.

- B. **Final Exam (Required) (90% of final course grade) -** The final exam will be an in-class, 3-4 hour, open-book exam.  It will contain multiple-choice questions, as well as one or more short answer or essay questions.

  - o **Exam Content**: Except for the material on sex offenses, which will not be tested, all material and concepts covered in the course may be tested on the exam, including

matters in the assigned readings that are not specifically discussed in class, and matters discussed in class for which there are no specific readings.

o **Open Book/Access to Material**: The exam will be open book, which means you will be allowed to use the Casebook, course materials supplied to the class (including PowerPoints), and any outlines and other materials that you have **substantially** participated in creating. You will not be allowed to use commercially prepared outlines, or materials created by others without your substantial participation.

- As noted above, on the exam software, you will **not** be permitted to access the Internet or any electronic files on your computer while writing the exam. Therefore, any permissible material you plan to use **must be printed in hard copy**. Additional details regarding the availability of laptop exams will be provided later in the semester.

*All that said, circumstances may change to require a change to the format of the exam. If that occurs, I will inform you as soon as possible.*

## C. **Practice Questions (Optional, but Encouraged)**

Understandably, many students do not want to wait until the end of the term (i.e., the final exam) to assess their understanding of the material. Students also want insight into what final exam questions might look like. To address these concerns, sample multiple-choice and essay questions are provided as indicated here:

o **Sample Multiple-Choice Questions**: For each lecture, a "Practice Question" is provided, as noted in the Course Calendar below. The Practice Questions can be found on Canvas (Files → Practice Questions → Sample Multiple Choice Questions).

o **Sample Essay Questions**: Sample essays are also provided. The sample essays can be found on Canvas (Files → Practice Questions → Sample Essay Questions)

Unlike assigned readings, which are mandatory, students are not required to complete these questions, but are encouraged to so to enhance their learning experience. The Practice Questions do not need to be submitted and are not an element of the course grade. Because the answers to the questions are provided, we will not review them during class. However, if you want to discuss a particular question with me, I'm happy to do so. You can reach out by email or attend office hours. You are also encouraged to work with classmates on the Practice Questions if you wish.

## XV. **Content Advisory, Safe Space, & Confidentiality**

Because of the subject matter of this course, certain classes and readings may contain material that is distressing to you or your classmates for any number of reasons.  For instance, you, or people close to you, may have been involved in the criminal legal system in some way, including as a victim, a witness, or a person accused of a crime.  Such experiences may inform your perspectives on the topics we will discuss.  Nevertheless, some find it difficult to maintain the full and open discussion necessary to this course if attention shifts from the merits of the laws and policies to personal experiences.  To balance between these pressures, this course follows two ground rules.

- **First**, please make every effort in class discussion to avoid personal narratives. One method for doing so is to express the substance of your views without the personal narrative (e.g., "Some people are falsely accused, and I think that is an important consideration to take into account when. . ." *instead of* "I have a friend who was falsely accused of assaulting someone, and so I don't think the court gave enough weight to …."). Alternatively, and especially if you decide that specific facts or some other reason requires a more detailed narrative, you can still *depersonalize* that narrative using a common lawyering technique: the hypothetical case (e.g. "Hypothetically, if, in the middle of the night, a police officer bursts into the home of a woman who the officer suspects committed a crime, while she is sleeping and unarmed, and shoots her to death in her bed, I think the officer is most appropriately charged with second-degree murder because….").

- **Second**, if for some reason sharing a personal narrative is unavoidable or one is shared inadvertently, statements of all participants in this course, including panelists, are to be treated as private, confidential, and "off the record" to the extent permitted by law and WSU policies.

Also, if any material is too difficult for you to discuss in class, please refer to the "Personal Request" information contained in the "Class Participation" Section above.

## XVI.   <u>Course Grading</u>

This course will be graded on a 100-point scale.  Each Panelist Question will be worth 5 points (5%) of the final course grade.  Thus, in total, the Panelist Questions will be worth 10 points (10%) of the final course grade.  The remaining 90 points (90%) will be based on the Final Exam.  Additionally, as explained above, a grade adjustment may be made based on class participation or the absence/lateness policy.

## XVII.   <u>Recording Lectures</u>

By default, our lectures will **<u>not</u>** be recorded.  This policy is designed is to promote open and comfortable conversation.  However, a situation may arise in which a lecture may need to be recorded. You are deemed to have consented to these recording by having enrolled in the course. I will inform you if a particular lecture will be recorded. Recordings are considered confidential and will not be

distributed, other than to students in this course. You may not allow any person who is not enrolled in the course to have access to these recordings. At the end of the course, all recordings will be deleted. If anyone has an issue with this recording policy, please discuss it with me.

## XVIII.   ABA Requirements

ABA Standard 310 governs the number of hours of work required to earn course credit. For a three-credit course, Standard 310 requires 135 hours of coursework, including 45 hours of in-class instruction. (An "hour" of in-class instruction is defined as 50 minutes.) We will have 26 classes that are 85 minutes in length, as well the final exam. That computes to approximately 47 hours of in-class instruction, leaving approximately 88 hours of out-of-class work. It is anticipated that each student will spend (on average) a minimum of 2.5 hours doing the reading for each session. Another part of out-of-class work is preparing for the final examination. It is anticipated that, separate from regular reading, each student will spend at least 30 hours prior to and during the reading period studying for the final examination.

## XIX.   Academic Integrity: Student Code of Conduct & Artificial Intelligence

Just as professional integrity will be required in your legal practice, academic integrity is likewise required in this course.   Accordingly, the University's Student Code of Conduct will be enforced.   Additionally, the use of artificial intelligence in any form to complete a submitted assignment, specifically Panelist Questions and the Final Exam, is strictly prohibited. A violation of these policies may result in a grade reduction, a failing grade in the course, and/or other forms of academic discipline.   If you have any questions about these policies, you are encouraged to ask.

## XX.   Student Disability Services

Wayne Law is committed to providing equitable access to learning opportunities for all students, including those with documented disabilities (e.g., mental health, attentional, learning, chronic health, sensory, or physical) under the Americans with Disability Act (ADA).   Please contact the Office of Student Affairs at 313-577-3997 or lawsao@wayne.edu to schedule an appointment with the Assistant Dean for Student Affairs to receive confidential counseling about the process for requesting reasonable disability accommodations and exam variances.   Accommodations are not provided retroactively, and students must register in advance with the WSU Student Disability Services Office.   To learn more about disability services provided under the ADA, please visit the Wayne Law website and click on "Disability Accommodations" on the Students page (https://law.wayne.edu/students/accommodations).   You may also contact the WSU Student Disability Services Office directly at 313-577-1851 or studentdisability@wayne.edu.

## XXI.   Covid-19 Information

The Covid-19 pandemic continues to present challenges and unpredictability. It is anticipated that the Law School will be operating in person during the upcoming term, with this syllabus designed under that assumption.  If any updates need to be made to the syllabus, you will be notified, and the revised syllabus will be shared with you on Canvas.

All students are expected to familiarize themselves with mandatory campus health and safety guidelines, including those related to vaccination and masks, available at: https://wayne.edu/coronavirus.  University policy requires all students to be in compliance with the vaccine mandate.  In addition, students must complete a campus daily health screener (https://forms.wayne.edu/covid-19-screening/) every day before coming to campus.

**XXII.**  **Well-Being**

In this profession, it is very important to be mindful of your well-being.  If we hope to be a good lawyer for others, we must first take care of ourselves.  If you have any questions or need any assistance during the term, please feel free to reach out to me or other support networks at the Law School.  We are here to help.

**XXIII.**  **Questions**

If you have any questions, please ask when they arise.  I am happy to answer them.  Please do not wait to ask questions, as belated attempts at clarification will not be helpful or acceptable.

<span style="color:red">**COURSE CALENDAR**</span>

\* In this Course Calendar, "Casebook" refers to the required textbook: Lee & Harris, *Criminal Law: Cases & Materials (4th ed.)* (West Academic Publishing). Apart from material in the Casebook, any assigned material in this Course Calendar may be found on Canvas (e.g., Files - Course Readings folder or Practice Questions folder), or through the links provided below. Any assigned sections of the Model Penal Code (M.P.C.) can be found in the appendix of the Casebook.\*

|  | **PART I**<br>**FOUNDATIONS OF CRIMINAL LAW** |
|---|---|
| **Monday, Jan. 8** | **Lecture 1**<br><br>**INTRODUCTION TO CRIMINAL LAW**<br><br>**Focus Question:** Why did you come to law school? What do you hope to get out of this course to further your professional goals and aspirations?<br><br>**Introductory Survey:**<br><br>• Before the first class, please complete the Introductory Survey using the link below. The survey is designed to help me get to know you as a student.  Completion of the survey is required and is considered an element of class participation.<br><br>https://waynestate.az1.qualtrics.com/jfe/form/SV_4HZD7B7n9Dd1lXg<br><br>**Reading:**<br>• Course Syllabus (this document)<br>• Barthélemy, Hélène. "How an Unusual Team Helps Extricate Bronx Residents from NYC's Justice System." *The Nation.* 9 Nov. 2015.<br>• Casebook, pp. 1-6, 38-40, 886-891<br><br>**Practice Question (Optional):**<br><br>• "Multiple Choice Practice Question – Lecture 1 – Introduction to Criminal Law" |

| Wednesday, Jan. 10 | **Lecture 2** |
|---|---|
| | <div align="center">**THEORIES OF PUNISHMENT; ROLE OF COUNSEL**</div> |
| | **Focus Question:** Consider today's video and reading assignments. If you had to define the role of a prosecutor in two sentences or less, how would you do it? If you had to define the role of a defense attorney in two sentences or less, how would you do it? |
| | **Reading:** |
| | <ul><li>Watch "A Prosecutor's Vision for a Better Justice System." (Adam Foss). *Ted Talk*. Available at:<br><br><div align="center">https://www.youtube.com/watch?v=Wg7cxCrfqTc</div></li></ul> |
| | <ul><li>Watch: "True Believers in Justice: A Young Public Defender's Struggle." Available at:<br><br><div align="center">https://www.youtube.com/watch?v=rR7uYjbiS4c</div></li></ul> |
| | <ul><li>"Chapter 2: Principles of Criminal Punishment." Dressler, Joshua. *Understanding Criminal Law*, *9th Edition*. Carolina Academic Press (2022) (excerpt). (Read only: pp. 13-20, 25-26)</li></ul> |
| | <ul><li>Casebook, pp. 6-12; 45-48<ul><li>*Regina v. Dudley and Stephens*</li></ul></li></ul> |
| | **Practice Question (Optional):** |
| | <ul><li>"Multiple Choice Practice Question– Lecture 2 – Theories of Punishment, Role of Counsel"</li></ul> |
| Monday, Jan. 15 | <div align="center">**NO CLASS – MARTIN LUTHER KING DAY**</div> |
| Wednesday, Jan. 17 | **Lecture 3**<br><br><div align="center">**COLLATERAL CONSEQUENCE OF A CRIMINAL CASE**</div><br>**Focus Question:** Do you think the individuals featured in *People Change* knew about the consequences of their criminal cases? What does that teach us about our responsibility as attorneys? |

16

| | |
|---|---|
| | **Reading:**<br><br>  &bull;  Watch: "*People Change*."  Available at:<br><br>       https://vimeo.com/101411535<br><br>  &bull;  *Padilla v. Kentucky*, 559 U.S. 356 (2010) (<u>Read only</u>: majority opinion)<br><br>  &bull;  Casebook pp 908-914 (Pinard, Michael.  "Collateral Consequences of Criminal Convictions: Confronting Issues of Race and Dignity.")<br><br>**Practice Question (Optional):**<br><br>  &bull;  "Multiple Choice Practice Question – Lecture 3 – Collateral Consequences of a Criminal Case" |
| **Monday, Jan. 22** | **Lecture 4**<br><br>                **THEORY INTO PRACTICE 1:**<br>                  **PLEA BARGAINING**<br><br>**Focus Question:** As today's readings demonstrate, in the criminal legal system, the prosecutor wields tremendous power and discretion.  Do you think that is how things should work, or should the prosecutor's power and discretion be more limited?  Why?<br><br>**Reading:**<br><br>  &bull;  Watch: "Michigan Man Who Had Never Been to Iraq Was Deported There.  He Couldn't Get Insulin and Died." *NBC News*.  Available at:<br><br>    https://www.nbcnews.com/news/us-news/michigan-man-who-had-never-been-iraq-was-deported-there-n1040426<br><br>  &bull;  "Prosecuting Collateral Consequences." Jain, Eisha. *Georgetown Law Journal* 104:1197 (2016). (<u>Read only</u>: pp. 1198-1210).<br><br>  &bull;  During today's class, we will engage in an ungraded simulation in which you assume the role of either a defense attorney or a prosecutor and negotiate against your classmates in a simulated exercise. To prepare for the simulation:<br><br>      o  Students with last names beginning with letters A-L, read "*People v. Baez – Defense Attorney*"<br><br>      o  Students with last names beginning with letters M-Z, read |

17

| | |
|---|---|
| | *"People v. Baez – Prosecutor"*<br><br>Note: If you are assigned the role of defense attorney, please don't read the assignment for the prosecutor, and vice versa.  That would undermine the purpose of the exercise.<br><br>**Practice Question (Optional):**<br><br>    • "Multiple Choice Practice Question – Lecture 4 – Theory into Practice 1" |
| | <div align="center">**PART II**<br>**CORE LEGAL PRINCIPLES**</div> |
| **Wednesday, Jan. 24** | **Lecture 5**<br><br><div align="center">ACTUS REUS 1:<br>VOLUNTARY ACT REQUIREMENT;<br>PROSCRIPTION AGAINST THOUGHT CRIMES</div><br>**Focus Question:**  One way to be an effective and efficient lawyer is to develop processes that work for you.  In other words, process is important.<br><br>To this point in law school, you've spent a lot of time preparing for class.  What is your specific process to prepare for a given class.  Do you take notes?  Do you take notes in the same way each time?  Does it depend on the lecture or the class?  Why is that your process?  If you don't have a process, or it's changed over time, why?<br><br>**Readings**:<br><br>    • Casebook, pp. 147-161<br>        o *Wisconsin v. Mitchell*<br>        o *Martin v. State*<br>        o *State v. Decina*<br><br>    • M.P.C. § 2.01<br><br>**Practice Question (Optional):**<br><br>    • "Multiple Choice Practice Question – Lecture 5 – Actus Reus 1" |
| **Monday, Jan. 29** | **Lecture 6**<br><br><div align="center">ACTUS REUS 2:<br>LIABILITY FOR OMISSIONS;<br>PROHIBITION AGAINST "STATUS CRIMES"</div> |

**Focus Question:** When building a case, it is important to identify the strongest aspects of your case and the weakest aspects of your case.

Imagine you were the prosecutor in *Beardsley* before the case was decided. You are arguing to the court that the defendant should be found guilty.

- What is the best factual detail in this case for you?  In other words, what is the fact that will make you win?

- What is the worst factual detail in this case for you? In other words, what is the fact that court make you lose?

Repeat this exercise for *Commonwealth v. Pestinikas.*

**Readings**:

- Casebook, pp. 161-167, 170-180
  - *People v. Beardsley*
  - *Commonwealth v. Pestinikas*
  - *Robinson v. California*

**Practice Question (Optional):**

- "Multiple Choice Practice Question – Lecture 6 – Actus Reus 2"

| | |
|---|---|
| **Wednesday, Jan. 31** | **Lecture 7**<br><br>MENS REA 1<br>CATEGORIES OF MENS REA |

**Lecture 7**

MENS REA 1
CATEGORIES OF MENS REA

**Focus Question:** Consider the following situation, which is based on the facts of a real case:

The defendant was found intoxicated, sleeping in the driver's seat of a legally parked car. The car was parked outside a bar in an urban location. The keys were in the ignition and the engine was on. It was summer. The defendant was charged with operating a motor vehicle under the influence of alcohol. The specific language of the relevant state statute reads:

"No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol."

Imagine you were the prosecutor or defense attorney trying this case.  What is the single most important word in this statute that will determine whether the defendant is guilty or not?  How would you figure out the meaning of that word?

19

| | |
|---|---|
| | **Readings**:<br><br>    • Casebook, pp. 197-199; 211-217<br>        o *Regina v. Cunningham*<br>        o *State v. Fugate*<br>        o *United States v. Jewell*<br><br>    • "Chapter 10: Mens Rea." Dressler, Joshua. *Understanding Criminal Law, 9th Edition*. Carolina Academic Press (2022) (<u>Read only</u>: pp. 125-134).<br><br>    • Model Penal Code Section 2.02<br><br>**Practice Question (Optional)**:<br><br>    • "Multiple Choice Practice Question – Lecture 7 – Mens Rea 1" |
| **Monday, Feb. 5** | **Lecture 8**<br><br><center>**MENS REA 2:**<br>**TRANSFERRED INTENT; SPECIFIC/GENERAL INTENT;**<br>**STRICT LIABILITY OFFENSES**</center><br>**Focus Question:** In *Scott*, the court analyzed the transferred intent doctrine. For each scenario below, determine whether the defendant (D) can be convicted of:<br>    1. Murder<br>    2. Attempted murder (defined as: an act taken with the intent to kill another person, but the failure to do so)<br>    3. Both<br>    4. Neither<br><br>    • <u>**Scenario 1: "Bad Aim" Situation**</u><br>        o D shoots at A with intent to kill.  D misses and kills B.<br>        ➢ With respect to victim A, what can D be convicted of? With respect to victim B, what can D be convicted of?<br><br>    • <u>**Scenario 2: "True Aim" Situation**</u><br>        o D, with intent, shoots and kills A. B is nearby but not harmed.<br>        ➢ With respect to victim A, what can D be convicted of? With respect to victim B, what can D be convicted of?<br><br>**Readings**:<br><br>    • Casebook, pp. 217-233<br>        o *People v. Scott*<br>        o *People v. Atkins* |

|  | o *Morissette v. United States* |
|  | **Practice Question (Optional):** |
|  | • "Multiple Choice Practice Question – Lecture 8 – Mens Rea 2" |
| **Wednesday, Feb. 7** | **Lecture 9** |
|  | **MISTAKES OF FACT & MISTAKE OF LAW** |
|  | **Focus Question:** In *Navarro*, the court found that the defendant's mistake did not need to be reasonable to serve as a viable defense. Why? |
|  | **Readings**: |
|  | • Casebook, pp. 253-269, 289-292.<br>  o *People v. Navarro*<br>  o *Bell v. State*<br>  o *People v. Marrero*<br>  o *Lambert v. California*<br><br>• M.P.C. Section 2.04 |
|  | **Practice Question (Optional):** |
|  | • "Practice Question – Lecture 9 – Mistake of Fact and Law" |
| **Monday, Feb. 12** | **Lecture 10** |
|  | **CAUSATION & CONCURRENCE** |
|  | **Focus Question:** Based on your understanding of actual causation, consider these hypos: |
|  | • **Scenario 1: Accelerating a Result** |
|  | D1 shoots V in the stomach, which alone would have caused V to die within 5 hours.  At the same time, D2 shoots V in the head, which alone would have caused V to die within 2 hours. Instead, because of both the shots, V dies in 5 minutes. |
|  | Under the but-for test, is D1 an actual cause of V's death? What about D2? |
|  | • **Scenario: Concurrent Sufficient Causes** |
|  | D1 shoots V in the heart. At the same time, D2 shoots V in the head. If just |

21

|  | D1's shot had occurred, V would have died in 1 hour. If just D2's shot had occurred, V would have died in 1 hour. V dies in 1 hour. |
|---|---|
|  | Under the but-for test, is D1 an actual cause of V's death? What about D2? |
|  | **Readings**: |
|  | • Casebook, pp. 301-302; 310-312; 316-318<br>   o *State v. Govan*<br>   o *Thabo Meli v. Reginam* |
|  | **Practice Question (Optional):** |
|  | • "Multiple Choice Practice Question – Lecture 10 – Causation and Concurrence" |
|  | <div align="center">**PART III**</div><div align="center">**SUBSTANTIVE OFFENSES**</div><br>**Note**: As we turn to substantive offenses, please be particularly aware of the information in the "Content Advisory, Safe Space, & Confidentiality" Section of this syllabus. |
| **Wednesday, Feb. 14** | **Lecture 11**<br><br><div align="center">THEORY INTO PRACTICE 2:</div><div align="center">PANEL DISCUSSION - PERSPECTIVES OF THOSE IMPACTED</div><div align="center">[NOT TESTED ON FINAL EXAM]</div><br>**Panelist Question**: Your Panelist Question is due on Canvas at **11:59 p.m., Tuesday, Feb. 13** (the day *before* this class) (See details in syllabus above)<br><br>**Panelists**: Nicholas Buckingham (Campaign Director, Michigan Liberation); Adam Grant (Executive Director, A Brighter Way)<br><br>**Focus Question:** Come prepared with at least 1 question you want to ask of the today's panelist.  Time will be provided for students to ask questions, and it is expected that students ask their questions.<br><br>**Readings**:<br><br>• Professional Biography: "Nicholas Buckingham."  Available at:<br><br>   https://www.linkedin.com/in/nicholas-buckingham-64b2a1138/ |

22

|  |  |
|---|---|
|  | • Professional Biographies: "Adam Grant" Available at:<br><br>https://abrighterway.org/about/meet-our-team/<br><br>and<br><br>https://www.linkedin.com/in/adam-grant-a7b9261a1/<br><br>• Read "Michigan Liberation; 2023 Campaigns."  Available at:<br><br>https://miliberation.org/2022-campaigns/<br><br>• Read. "A Brighter Way" – "Services", "Mentoring" and "Impact Stories" (relevant links below):<br><br>https://abrighterway.org/services/<br><br>https://abrighterway.org/what-we-do/mentoring/<br><br>https://abrighterway.org/what-we-do/impact-stories/<br><br>• Listen to: "Adam 1.1" podcast. Available at:<br><br>https://podcasters.spotify.com/pod/show/abrighterway<br><br>**Practice Question**<br>• No Practice Question for Today's Class (material not tested on final exam) |
| **Monday, Feb. 19** | **Lecture 12**<br><br>HOMICIDE 1:<br>INTRODUCTION; DEGREES OF HOMICIDE<br><br>**Focus Question: (Panel Debrief)** – What did you find most impactful about the panel discussion held during our last class? How did the panel affect your view of criminal law and the criminal legal system?<br><br>**Readings**:<br><br>• Casebook, pp. 319-330; 335-342<br>  ○ *State v. Brown*<br>  ○ *Gilbert v. State*<br><br>• M.P.C. Sections 210.0 – 210.5 |

| | |
|---|---|
| | **Practice Question (Optional):**<br><br>• "Multiple Choice Practice Question – Lecture 12 – Homicide 1" |
| **Wednesday, Feb. 21** | **Lecture 13**<br><br><div align="center">**HOMICIDE 2:**<br>**DEPRAVED HEART MURDER; FELONY MURDER**</div><br>**Focus Question:** The cases in this unit are intense and may be difficult to read. In your legal practice, it will be important to recognize how your work affects you personally, both to ensure your own well-being and to ensure you can provide effective representation to those you serve.<br><br>Take a moment to consider how the cases in this unit have affected you, if at all. Alternatively, or additionally, consider how you anticipate the work you do as a lawyer might affect you in the future. How do you plan to address any effects your work might have?<br><br>**Readings**:<br><br>• Casebook, pp. 377-380; 401-402; 409-412; 420-432<br>  ○ *Commonwealth v. Malone*<br>  ○ *Hines v. State*<br>  ○ *Rose v. State*<br>  ○ *State v. Canola*<br><br>**Practice Question (Optional):**<br><br>• "Practice Question – Lecture 13 – Homicide 2" |
| **Monday, Feb. 26** | **Lecture 14**<br><br><div align="center">**HOMICIDE 3:**<br>**VOLUNTARY & INVOLUNTARY MANSLAUGHTER**</div><br>**Focus Question:** One evening, a 22-year-old man went to happy hour with a few work colleagues. He had too many shots and got drunk. On his way home, he drove the wrong way on a major highway and crashed head-on into an oncoming car, killing a passenger in that car. He was prosecuted for involuntary manslaughter which, under the applicable state statute, carries a minimum of 3 years in prison and a maximum of 14 years in prison.<br><br>If you were the prosecutor making the defendant a plea offer, what would your offer be? What factors would you consider in making that offer? What else |

would you want to know? Consider the roles of a prosecutor and the theories of punishment that we've previously discussed.

**Readings**:

- Casebook, pp. 342-353, 360-362; 370-377; 389-390; 395-401
  - *People v. Ambro*
  - *People v. Berry*
  - *State v. Dumlao*
  - *State v. Williams*

- M.P.C. 210.3

**Practice Question (Optional):**

- "Multiple Choice Practice Question – Lecture 14 – Homicide 3"

| | |
|---|---|
| **Wednesday, Feb. 28** | **Lecture 15**<br><div align="center">**PROPERTY CRIMES 1:**<br>**LARCENY, EMBEZZLEMENT, FALSE PRETENSES**</div><br>Midterm Course Evaluation – During today's class, students will be provided and complete an informal course evaluation assessing the course to this point. No preparation is needed to complete the evaluation.<br><br>**Focus Question:** In 2022, the American Bar Association (ABA) instituted a new standard that law schools "shall provide substantial opportunities to students for…the development of a professional identity." ABA Standard 303(c) (emphasis added).<br><br>- What does "professional identity" mean to you?<br>- To this point, how has law school helped you develop your professional identity?<br>- Looking ahead, how will you use the remaining time in law school to develop your professional identity?<br><br>**Readings**:<br><br>- Casebook, pp. 573-585<br>  - *Commonwealth v. Mills*<br><br>- M.P.C. Section 223.0 and 223.1<br><br>**Practice Question (Optional):**<br><br>- "Multiple Choice Practice Question – Lecture 15 – Property Crimes 1" |

| | |
|---|---|
| **Monday, Mar. 4** | **Lecture 16**<br><br>**PROPERTY CRIMES 2:**<br>**BURGLARY, ROBBERY**<br><br>**Focus Question:** In *Crocker*, the prosecution made a mistake. What was the mistake? What does this teach us about good lawyering?<br><br>**Readings**:<br><br>&bull; Casebook, pp. 585-602<br>  o *United Staves v. Eichman*<br>  o *State v. Thibeault*<br>  o *Crocker v. State*<br>  o *Miller v. Superior Court*<br><br>**Practice Question (Optional):**<br><br>&bull; "Multiple Choice Practice Question – Lecture 16 – Property Crimes 2" |
| | **PART IV**<br><br>**INCOATE OFFENSES & ACCOMPLICE LIABILITY** |
| **Wednesday, Mar. 6** | **Lecture 17**<br><br>**ATTEMPT**<br><br>**Focus Question:** In the Bronx, New York, if a defendant is charged with a Class A misdemeanor (punishable by up to a year in jail), they are entitled to a jury trial. "Attempt" of a Class A misdemeanor is a Class B misdemeanor (punishable by up to 90 days in jail). A defendant charged with a Class B misdemeanor is not entitled to a jury trial, and instead will be tried in front of a judge (i.e., a bench trial). For example, a defendant charged with larceny, a Class A misdemeanor, would be tried in front of a jury. A defendant charged with "attempted" larceny, a Class B misdemeanor, would be tried in front of a judge.<br><br>In the Bronx, it has historically been the practice of the Bronx District Attorney's Office to reduce a Class A misdemeanor to a Class B misdemeanor right before trial. Traditionally, it has been easier to secure a conviction in front of a judge, rather than a jury.<br><br>What are your thoughts on this practice? Is it appropriate? If you were a Bronx prosecutor, would you do it? Why or why not? |

26

| | |
|---|---|
| | **Reading:**<br><br>• Casebook, pp. 801, 807-816; 822-824<br>    o *State v. LaTraverse*<br>    o *People v. Harris*<br><br>• M.P.C. Section 5.01<br><br>**Practice Question (Optional):**<br><br>• "Multiple Choice Practice Question – Lecture 17 – Attempt" |
| **Monday,<br>Mar. 11** | <div align="center">**NO CLASS – SPRING BREAK**</div> |
| **Wednesday,<br>Mar. 13** | <div align="center">**NO CLASS – SPRING BREAK**</div> |
| **Monday,<br>Mar. 18** | **Lecture 18**<br><br><div align="center">**SOLICITATION; CONSPIRACY**</div><br>**Focus Question - <span style="color:red">Check-in</span>:** In this profession, self-care is very important. Studies show that, overall, lawyers have challenges taking care of themselves, which can affect their personal stability and their ability to effectively perform their work.<br><br>At the beginning of class, you will be given time to just chat with a partner. You can discuss anything you want: how your term is going, Spring Break, or anything else you want to talk about.  This is a time to relax, reflect, and take a moment.<br><br>**Reading:**<br><br>• Casebook, pp. 853-865; 873-878<br>    o *State v. Pacheco*<br>    o *People v. Swain*<br>    o *United States v. Mothersill*<br><br>• M.P.C. Sections 5.02 and 5.03<br><br>**Practice Question (Optional):** |

| | |
|---|---|
| | • "Multiple Choice Practice Question – Lecture 18 – Solicitation, Conspiracy" |
| **Wednesday, Mar. 20** | **Lecture 19**<br><br><div align="center">ACCOMPLICE LIABILITY (COMPLICITY)</div><br>**Focus Question - <span style="color:red">Professor Panel</span>:**  During today's class, students will be given the opportunity to ask Professor Ellman any questions they might have about his background and professional experiences. Students are not required to submit a question in advance of class, or ask one during class, but are encouraged to come prepared with a question about anything they find interesting or relevant to their own careers or our classwork this term.<br><br>**Reading:**<br><br>• Casebook, pp. 833-837; 841-852<br>    o *Pace v. State*<br>    o *Wilson v. People*<br>    o *Roy v. United States*<br><br>• M.P.C. – Section 2.06<br><br>**Practice Question (Optional):**<br><br>• "Multiple Choice Practice Question – Lecture 19 – Accomplice Liability" |
| | <div align="center">**PART V**<br>**DEFENSES**</div> |
| **Monday, Mar, 25** | **Lecture 20**<br><br><div align="center">SELF-DEFENSE</div><br>**Focus Question:** As discussed earlier in the course, in 2022, the ABA instituted a new standard that requires law schools to "provide education to law students on bias, cross-cultural competency, and racism."  ABA Standard 303(c).  Interpretation 303-6 explains that it is "the obligation of lawyers to promote a justice system that provides equal access and eliminates bias, discrimination, and racism in the law." |

28

With that standard as a lens, consider defense counsel's trial strategy in *Goetz*. Supposedly to recreate the crime scene, defense counsel brought in "four young Black Guardian Angels, fit and muscular, dressed in T-shirts" to act as the individuals who were shot by defendant Goetz. In reality, the individuals shot were four young black men, two carrying screwdrivers at the time of the incident. Throughout the trial, defense counsel also referred to the four young men as "savages," "predators," and "vultures."

On appeal, the New York Appellate Division (New York's intermediate appellate court) held that the appropriate test to evaluate whether the defendant could use deadly force in self defense was whether the defendant's beliefs and actions were "reasonable to *him*." However, the New Your Court of Appeals (New York's highest appellate court), reversed, holding that the proper standard was whether the defendant's conduct "was that of a *reasonable man in his situation*."

Apply these legal standards to the trial strategy used by Goetz's defense counsel. Was the strategy permissible under either legal standard, both, or neither?

**Reading:**

- Casebook, pp. 603-611; 617-618; 914-917 ("Implicit Bias in the Courtroom")
  - *People v. Goetz*

- M.P.C. Section 3.04

**Practice Question (Optional):**

- "Multiple Choice Practice Question – Lecture 20 – Self-Defense"

| Wednesday, Mar. 27 | **Lecture 21** <br><br> **DEFENSE OF OTHERS;** <br> **DEFENSE OF PROPERTY; DEFENSE OF HABITATION** <br><br> **Focus Question:** Under common law, an occupant of a dwelling can use any force necessary, including deadly force, if they reasonably believe the force was necessary to prevent imminent, unlawful entry (the Castle Doctrine). <br><br> You are a legislator in a jurisdiction considering whether to adopt the Castle Doctrine into your state's criminal code. Would you? If so, why? If not, what adjustments would you make? In answering the question, consider the cases of Renisha McBride and *People v. Brown*. |
|---|---|

|  | **Reading:**<br><br>• Watch: "Dearborn Heights man sentenced to 15-30 years in 2013 porch shooting death of Renisha McBride.  Available at:<br><br>https://www.clickondetroit.com/news/local/2022/06/22/dearborn-heights-man-resentenced-to-15-30-years-in-2013-porch-shooting-death-of-renisha-mcbride/<br><br>• Foley, Aaron. "Michigan Porch Shooter Found Guilty of Second-Degree Murder." *Reuters*.  7 Aug. 2014.<br><br>• Casebook, pp. 637-654<br>   o *People v. Young*<br>   o *People v. Brown*<br>   o *People v. Ceballos*<br><br>**Practice Question (Optional):**<br><br>• "Practice Question – Lecture 21 – "Defense of Others; Defense of Habitation, Defense of Property" |
|---|---|
| **Monday, Apr. 1** | **Lecture 22**<br><br><div align="center">**THEORY INTO PRACTICE 3:**<br>**PANEL DISCUSSION: PRACTITIONER PERSPECTIVES**<br><span style="color:red">**[NOT TESTED ON FINAL EXAM]**</span></div><br><span style="color:red">**Panelist Question**</span>**:** Your Panelist Question is due on Canvas at **11:59 p.m., Sunday, March 31** (the day *before* this class) (See details in syllabus above)<br><br>**Panelists:** Hon. Qiana Lillard (3rd Circuit Court (Wayne County)); Sian Hengeveld, (Chief of Trials and Courts; Macomb County Prosecutor's Office) Tom Tomko (Macomb County Public Defender)<br><br>**Focus Question:**<br><br>**Reading:**<br><br>• Professional Biography – Judge Qiana Lillard.  Available at:<br><br><div align="center">https://ballotpedia.org/Qiana_Lillard</div><br>• Professional Biography – Sian Hengeveld:<br><br>*Ms. Hengeveld has been an assistant prosecutor at the Macomb County Prosecutor's Office for over 20 years.  She is currently the Chief of Trials and* |

| | |
|---|---|
| | *Circuit Court, the Deputy Chief of the Major Crimes Unit, and the Chief of Training. Prior to that, Ms. Hengeveld was in the Child Protection Unit for 6 years, the Chief of Consumer Fraud Unit for 5 years, and was assigned to several circuit courts and the District Court rotation.*<br><br>• Hall, Christina. "Macomb County Names New Public Defender to Represent Those Who are Indigent." *Detroit Free Press*. 16 Oct. 2020.<br><br>• Watch: Judge Victoria Pratt, "How Judges Can Show Respect;" Available at:<br><br>https://www.ted.com/talks/victoria_pratt_how_judges_can_show_respect?language=en<br><br>**Practice Question**<br>• No Practice Question for Today's Class (material not tested on final exam) |
| **Wednesday, Apr. 3** | **Lecture 23**<br><br>NECESSITY; DURESS; INTOXICATION<br><br>**Focus Question:** In *United States v. Contento-Pachon*, do you agree with the majority or the dissent? Why?<br><br>• Casebook, 657-659; 676-681; 687-698<br>  o *United States v. Contento-Pachon*<br>  o *Montana v. Egelhoff*<br>  o *Commonwealth v. Smith*<br><br>• M.P.C. 2.09 and 3.02<br><br>**Practice Question (Optional):**<br><br>• "Multiple Choice Practice Question – Lecture 23 – "Necessity, Duress, Intoxication" |
| **Monday, Apr. 8** | **Lecture 24**<br><br>INSANITY; ENTRAPMENT<br><br>SET Evaluations – During today's class, students will be given time to complete the course SET Evaluations provided by the Law School.<br><br>**Focus Question:** In this course, we have practiced explaining legal terms in a |

way that would be understandable to the average person ("Wall St. to Main St.").  Being able to communicate clearly and effectively will be a critical skill in your future legal practice.

To further develop this skill, be able to define the following 2 tests for insanity in a way that the average person could understand:

> *M'Naghten* Test

> M.P.C. Test

- Casebook, 698-710; 742-752
  - o *United States v. Freeman*
  - o *People v. Jamieson*

- M.P.C. 4.01, 4.02, and 4.03

**Practice Question (Optional):**

- "Multiple Choice Practice Question – Lecture 24 – "Insanity, Entrapment"

---

**PART VI**
**CONCLUSION**

---

**Wednesday, Apr. 10**

**Lecture 25**

SEX OFFENSES
[NOT TESTED ON FINAL EXAM]

- Because of the nature of today's topic, the material for this class will not be tested on the Final Exam.

- For the same reason, there will be no cold calling or requesting volunteers during today's class.

**Focus Question: Check-In:** We are nearing a time in the semester when things can feel stressful and overwhelming (if they didn't already).  As we've done before, at the beginning of class, you will be given time to just chat with a partner.  You can discuss anything you want: how your term has gone, what you're looking forward to this summer, or anything else you want to talk about. This is a time to relax, reflect, and take a moment.

**Reading:**

| | |
|---|---|
| | • Casebook, pp. 435-440; 481-482; 552-564<br>    ◦ *Lawrence v. Texas*<br><br>**Practice Question**<br>• No Practice Question for Today's Class (material not tested) |
| **Monday, Apr. 15** | **Lecture 26**<br><br>                  **FINAL EXAM REVIEW**<br><br>Today's class will consist of a review for the Final Exam.  Please come prepared with any questions you have about the exam.<br><br>**Focus Question:** What is the most valuable thing you've taken away from this course? This could include a piece of knowledge, practical skill, conversation with a classmate, interaction with a panelist, or any other aspect of this class. How will that thing be influential as you consider your future path as a lawyer?<br><br>**Reading:**<br><br>• Review "Final Exam Instructions" (posted to Canvas in advance of class)<br><br>• Review "Sample Essay Question 1" |

33

Fall 2023

# CONTRACTS A
## LEX 6200

Professor Sarah Abramowicz (she/her)
email: sabramowicz@wayne.edu
office: Room 3234

| Section 3: | Tuesdays & Thursdays, 10:35 - 12:00 | Room 1545 |
| Section 2: | Tuesdays & Thursdays, 1:50  -  3:15 | Room 1535 |

Contacting Me:
The best way to reach me is by email, at sabramowicz@wayne.edu. Please feel free to email me with any questions you have, including about the reading, the class discussions, or any other aspect of the course.

Office Hours
Office hours will take place in my office, Room 3234. I will hold drop-in office hours Thursdays from 9:15-9:45 and Thursdays from 12:15-1:15. I will also be available to meet in my office Wednesdays from 12:30-1:30 if you email me to let me know that you will be coming by.

I am very glad to schedule meetings at other times by appointment, either in person or on Zoom. I will gladly work with you to find a time to meet that fits your schedule.

The best way to make an appointment is to email me at sabramowicz@wayne.edu. I am always glad to meet and to discuss any questions you have, whether about this course or about law school in general.

For those who schedule Zoom office hours, the Zoom link will be posted on this syllabus and on the Canvas course page. Please note that if we should need to hold class online at any point, there will be one link for Zoom office hours and a different link for Zoom class sessions.

Covid Compliance:
All students are expected to familiarize themselves with mandatory campus health and safety guidelines available at https://wayne.edu/coronavirus.  University policy requires all students to be in compliance with the vaccine and booster mandates.

Recording of Sessions:
I will record class sessions for students who are unable to attend class for Covid-related reasons. By enrolling in this class, you are consenting to such recording. If you have privacy-

related concerns about recording, please contact John Rothchild (jrothchild@wayne.edu), the University's Chief Privacy Officer.

You may not record the class yourself without permission, and you may not allow any person who is not enrolled in the course to view these recordings.  Prior to receiving a recording, you must send me an email with the following text, followed by "I agree" and your signature (typing your name is fine):

> "I agree that I will not share any recording of a classroom session with any other person, unless I have written permission from the faculty member teaching the course. I understand that any violation of this rule may constitute academic misbehavior under the Wayne State University Student Code of Conduct."

Recordings are available only for Covid-related absences or for accommodation purposes arranged through Student Affairs. For accommodations, please contact Student Affairs as described below. In the event that any class must be held on Zoom, that class will automatically be recorded.

Required Texts:
- *Contracts, Cases and Materials*, Farnsworth, Sanger, Cohen, Brooks, and Garvin Ninth Edition (Foundation Press).
- *Restatement 2d Contracts & US UCC Article 2*, Byrne (ed.), 6th Edition (Institute of International Banking Law & Practice, Inc.).

Please bring both of these texts to every class session.

Optional Texts:
If you find you would like additional resources to expand upon or help clarify the material covered in the required texts and class discussions, I can recommend the following:
- *Contracts*, Farnsworth, Fourth Edition (Aspen) (earlier editions are fine, too).
- *Concepts and Case Analysis in the Law of Contracts*, Chirelstein (Foundation Press).

Other Optional Texts:
When you encounter a legal term that you are unfamiliar with, you should look it up in a law dictionary, such as Black's Law Dictionary. Black's Law Dictionary is available on Westlaw. But it might be useful to have a copy of your own. The small paperback edition should suffice - it is not necessary to purchase the expensive hardcover edition.

Canvas:
I have set up a course page on Canvas. The course page is for both Section 2 and Section 3. If at any point the materials differ, that will be clearly indicated. Course materials will be posted to Canvas throughout the semester. Materials posted to Canvas will include the syllabus and any updates to the syllabus. They will also include the Powerpoint slides that I use in class - I will post these at the end of the day after each class is finished.

**It is prohibited to read copies of the Powerpoint slides posted in previous years. If you have obtained a student outline or student notes from a former student that incorporates slides from previous years, please stop using those materials immediately. It is also prohibited to distribute the slides to students outside of this class, either this year or in the future.**

I will use Canvas whenever I need to contact you. Email will be sent your Wayne email address, so please make sure to check that regularly.

Class Preparation:
All students are expected to prepare for every class by reading the assigned materials closely and to have copies of the readings accessible at every class session.  Students are expected to complete the assigned readings and to spend time analyzing the readings and going over the questions in the notes.

Adequate preparation for class will require at least two hours of weekly study for every hour of class time. Adequate preparation for the final exam will require 25-30 hours above and beyond ordinary preparation for class. Over the course of the term, the total time you will spend in class will be 2210 minutes, plus 180 minutes in the final exam. You will spend 4680 minutes on class preparation, plus 1500-1800 minutes on exam preparation.

Class Attendance:
Regular and punctual attendance is required for every regularly scheduled class session. Attendance will be taken in every class.

Because of Covid, it is essential that we take care not to put each other at risk. If you are feeling unwell, or if you have reason to believe that you have Covid, you should stay home. If that happens, I will send you a copy of the class recording and will gladly meet to discuss the material you missed.

If you miss more than seven regularly scheduled class sessions for any reason other than serious illness or suspected Covid, I reserve the right to lower your grade. If you miss more than eight regularly scheduled classes, I reserve the right to exclude you from the exam and deny course credit. This should be more than adequate to accommodate religious observance and family and other emergencies.

Extended emergencies sometimes arise. If you have an extended emergency situation, please contact me to make accommodations. You should contact the Dean of Students as well.

In the event that a class is cancelled and a make-up session is scheduled, while you are expected to attend any scheduled make-up sessions, missing the make-up session does not count as an absence from the course.

Class Participation:
I will conduct class by calling on students at random, as well as by taking volunteers. You must be prepared for every class, which means that you must have completed and studied the

3

readings assigned for that class day as well as all preceding readings. You may be asked to discuss readings assigned earlier in the semester as well as the readings assigned for a particular class session.

If you will not be prepared for class, you must notify me by email in advance at least one hour before the start of class. If you notify me in advance of class that you have not prepared, I will not call on you. If in two separate class sessions I call on you and you are not prepared and have not notified me in advance, then your grade will be lowered by one notch, as described below.

Grading:
The primary basis for your grade will be your score on the final exam. The final exams will be graded in accordance with the Law School Academic Regulations, which mandate grading on a curve.

The second possible factor in grading is class participation. If, on two different occasions, I call on you and you are not prepared, and you have not notified me in advance that you would not be prepared, then your grade will be lowered by one notch (for example, from a B+ to a B). (As long as you are prepared when you are called on, your grade will not be lowered for class participation.)

If you do an exceptional job in class participation, and, in addition, volunteer with some regularity, your grade may be raised one notch (for example, from a B+ to an A-), insofar as the curve permits. **Because of the curve, some students who are eligible to have their grades raised will not see a change in grade.** The final exams are anonymous. When I submit the final exam scores, I will also submit a list of students who are eligible for a raised grade. Once I receive the names of the students attached to the exams, I will raise as many grades as I can while keeping the curve intact. So, for example, where the number of students with a B+ exam grade who are eligible for a raised grade exceeds the number of remaining spots available in the A- grading range, then students at the lower end of the B+ range might not receive a grade bump despite being eligible for one.

Final Exam:
At the end of the Fall semester, you will take a final exam, which will be the primary basis of your grade in the course. You may take your final exam on a laptop computer or you may write your exam answers in a bluebook. **You will not be permitted to access the Internet or any other electronic files while writing your exam answers. If you use a laptop, you will install exam software that blocks access to the Internet and to your other electronic files during the exam. This means that you will not have access to electronic textbooks during the exam.**

The final exam will be partial open-book. You may use hard copies of your required textbooks, hard copies of class slides and other materials that I distribute, and hard copies of any written material prepared by you, such as your class notes and an outline. **Please note that you will need hard copies of any materials you bring to the exam. You will not have access to electronic materials during the exam, including electronic textbooks.**

4

During the final exam you may not use commercial outlines, nutshells, hornbooks, or any similar material, or material prepared by other students without your substantial participation.

Practice Mid-term:
To help you get accustomed to taking a law-school exam and to encourage you to review the material as we go along, I will administer a practice midterm in mid-October. The practice midterm is mandatory, but it will not be graded, and will not count toward your final grade.

Artificial Intelligence (AI) Tools/Systems
I am here to help you to be successful in my class and am happy to meet with you to discuss any course assignments, study strategies, and other academic matters. I want you to be able to think critically, be analytical, and be creative in your work in my class. Since the goal is for you to develop your critical thinking skills, ideas, and critical perspectives on the class materials, the use of any artificial intelligence (AI) content creation tool/system (e.g., Jasper, ChatGPT, Bard, etc.) is not permitted. **Using AI in any shape or form will constitute a violation of the Student Code of Conduct and may subject you to charges of academic misconduct.** If you have difficulty with an assignment, contact me, attend office hours, and/or seek support from the Law School's Office of Student Affairs.

Student Disability Services:
Wayne Law is committed to providing equitable access to learning opportunities for all students, including those with documented disabilities (e.g., mental health, attentional, learning, chronic health, sensory, or physical) under the Americans with Disabilities Act (ADA).  Please contact the Office of Student Affairs at 313-577-3997 or lawsao@wayne.edu to schedule an appointment with the Assistant Dean for Student Affairs to receive confidential counseling about the process for requesting reasonable disability accommodations and exam variances.  Accommodations are not provided retroactively, and students must register in advance with the WSU Student Disability Services Office.  To learn more about disability services provided under the ADA, please visit the Wayne Law website (https://law.wayne.edu/students/accommodations).  You may also contact the WSU Student Disability Services Office directly at 313-577-1851 or studentdisability@wayne.edu.

Learning Outcomes:
• Students will acquire familiarity with and understanding of legislation and case law applicable to various aspects of contract law.
• Students will demonstrate and apply their familiarity with and understanding of applicable legislation and case law through in-class participation and completion of a practice midterm and a graded final exam that reflects their understanding and synthesis of this material.
• Students will develop skills in critical analysis by close engagement with texts (cases, statutes, and model laws) as demonstrated through in-class participation and the final exam.
• Students will develop and demonstrate the ability to apply the rules of contract law to hypothetical situations through in-class participation, a practice midterm, and a graded final exam.

<u>Assignments:</u>
The portions of the syllabus that follow are preliminary, and are subject to change. Whenever the syllabus is updated, I will post a new copy of the assignments portion of the syllabus to Canvas. You can set your Canvas settings so that you are automatically notified whenever I post a new update.

What follow are, first, a list of the material that we will cover over the course of the semester, and, second, a calendar of assignments. At the end of the day each Thursday I will post to Canvas an assignments calendar updated to include the next week's readings. At times the assignment will be to review the previous week's readings. At each class session, we will pick up where we left off in the previous class, and you are responsible for and expected to be able to discuss all previously assigned reading, in addition to the reading assigned for that class. If you wish to read ahead, you can do so; we will proceed through the readings in the order indicated below.

**Chapter 1. Legal Bases for Recognizing and Enforcing Promises**
    **Section 1. Promissory Liability: An Introduction**: pp. 1-10; pp. 43-48
    **Section 3. Consideration as a Basis for Enforcement**
        (A) Fundamentals of Consideration: pp. 48-67
        (B) The Requirement of an Exchange - Action in the Past: pp. 68-80
        (C) The Requirement of a Bargain: pp. 80-83; 93-94
        (D) Promises as Consideration: pp. 94-105; *Eastern Airlines v. Gulf* (to be posted on Canvas); pp. 111-118
        (E) Consideration and At-Will Employment: pp. 83-93
    **Section 4. Reliance as a Basis for Enforcement**: pp. 118-135, 141-142
    **Consideration, Revisited:**[*] **The Pre-Existing Duty Rule**: pp. 438-443; 445-448; 451-455
    **Section 5. Restitution as an Alternative Basis for Recovery**: pp. 142-152

**Chapter 2. Creating Contractual Obligations**
    **Section 1. The Nature of Assent**: pp. 161-184
    **Section 2. The Offer**: pp. 184-204
    **Section 3. The Acceptance**: pp. 204-228
    **Section 4. Termination of the Power of Acceptance**:
        (A) Lapse of an Offer: pp. 228-231
        (B) Revocation of Offers: pp. 231-246
        (C) Death of an Offeror: pp. 246-248
        (D) Consequences of Rejection: pp. 248-249
        (E) The "Mailbox Rule" - Contracts by Correspondence: pp. 249-256
    **Section 5. Acceptance Varying Offer: Contract Formation and Contract Terms**
        (A) The Common Law Approach and the Mirror Image Rule: pp. 257-260
        (B) The Battle of the Forms: pp. 260-262
        (C) UCC § 2-207 - Transcending the Mirror Image Rule: pp. 262-264
        (D) Contract Formation under Article 2: pp. 264-271
        (E) Determining Contract Terms under Article 2: pp. 271-281

---

[*] from Chapter 4, Section 2(A)

6

(F) Contract First, Terms Later: UCC 2-207 or a New Method of Contract
Formation?: pp. 281-296
**Section 6. Precontractual Liability**: pp. 297-304
**Section 7. The Requirement of Definiteness:** pp. 323-324; 326-327

**Chapter 4. Policing the Bargaining Process**
**Section 1. Capacity**: pp. 415-35
**Section 2. Overreaching**
**(A) Pressure in Bargaining**: pp. 435-38; 449-51; 455-61; 461-68
**(B) Concealment and Misrepresentation**: pp. 468-81; pp. 483-86

**Chapter 6. Limits on the Bargain and its Performance** [assigned pages TBD]
**Section 1. Unfairness**
**Section 2. Standard Form and Adhesion Contracts**
**Section 3. Unconscionability**

**Chapter 3. Statutes of Frauds**
**Section 1. Introduction**
**Section 2. Contracts Within the Statute of Frauds**
(A) Duration of Performance - The One-Year and Lifetime Clauses
(B) Interests in Real Property
(C) The Suretyship Clause
**Section 3. Satisfying the Statute of Frauds**
**Section 4. The Statute of Frauds and the Sale of Goods**
**Section 5. Exceptions to the Statute of Frauds**

| Date | Assignment (All readings are from your casebook, unless otherwise indicated. You should also read all relevant provisions in the Restatement, Second and the UCC.) |
|---|---|
| Tuesday, August 29 | pp. 1-10 |
| Thursday, August 31 | pp. 48-61, 43-48 |
| Tuesday, September 5 | |
| Thursday, September 7 | |
| Tuesday, September 12 | |
| Thursday, September 14 | |
| Tuesday, September 19 | |
| Thursday, September 21 | |
| Tuesday, September 26 | |
| Thursday, September 28 | |
| Tuesday, October 3 | |
| Thursday, October 5 | |
| Tuesday, October 10 | |
| Thursday, October 12 | |
| *Tuesday, October 17* | *break - no class* |
| Thursday, October 19 | |

| | |
|---|---|
| Tuesday, October 24 | |
| Thursday, October 26 | |
| Tuesday, October 31 | |
| Thursday, November 2 | |
| Tuesday, November 7 | |
| Thursday, November 9 | |
| Tuesday, November 14 | |
| Thursday, November 16 | |
| Tuesday, November 21 | |
| *Thursday, November 23* | *Thanksgiving - no class* |
| Tuesday, November 28 | Statute of Frauds (read Statute of Frauds chapter, but skip the cases - read only the notes and problems that follow; if you would like to read two cases, I recommend *C.R. Klewin, Inc*. at p. 349, and *Monarco v. Lo Greco* at p. 397) |
| Thursday, November 30 | Last Class (unless we need to schedule an additional make-up class) |

CONSTITUTIONAL LAW I
PROFESSOR LUND
FALL 2023

<u>SYLLABUS</u>

**I.    WELCOME:**

Welcome to law school and our Constitutional Law I class.  I'm pleased to be with you this year—the first year of law school is always a rewarding and challenging year, a time of great growth and learning.  I know (from experience!) that law school can be intimidating, especially at first.  So my goal is to create a class environment that's challenging but supportive.  I want you to think hard about constitutional law (and it is a difficult subject), but I'll help you get there.  Some of you may have many lawyers in your family; some of you may be the first in your family to go to college.  But no matter who you are, or what your background is, if you put in the time and effort, you can succeed here.

**II.    THE BASICS:**

| | |
|---|---|
| *Class Hours:* | MW 1:50-3:15 |
| *Classroom*: | Rm. 1535 |
| *Office Hours*: | MW 3:30-4:30, or by appointment |
| *Office:* | Rm. 3101 (on the 3rd floor, turn right coming off the elevator) |
| *Email*: | lund@wayne.edu |

*Reaching Me.*  My office hours are above, but also feel free set up appointments that work better for you—we can do it by Zoom or in-person, depending on what's mutually convenient.  I enjoy getting to know to students, so please do drop by sometime in the semester just to chat, whether it's about the class, law school, law practice, or just life in general.  Of course, unsurprisingly, the fastest and easiest way of reaching me is by email.

*Canvas*.  There is a Canvas site for this course.  All the course materials—like the syllabus, class slides, assignments, past exams, and so on—will be posted there throughout the semester.

*Lunches*.  It's nice to get to you know you a bit better than class permits.  So if you're interested, I've created a signup sheet so we can have lunch together on Wednesdays before class.  We'll do them at Tony V's on Cass, across the street from the law school, starting at 12:15 p.m.  I'll pay for these, but (1) don't go crazy, and (2) no alcohol—sorry, just a general policy.  Sign up just once, so everyone can take turns.  And also you don't have to do this—you won't receive extra points or secret tips for the exam—it's just a chance for us to get to know each other better, if you're interested in that sort of thing.  Sign-up here is here:

https://docs.google.com/document/d/1trsaw9yl60ZtgK18OtZBbh3vKTHLZ65go8kNL_SCIro/edit

## II.   MATERIALS:

Erwin Chemerinsky, *Constitutional Law* (Wolters Kluwer, 6th ed. 2020) will be the casebook for the class.  I'm sorry that the casebook is so expensive.  This casebook has been around for a couple of years, so there should be used copies available for those inclined.  You don't want to buy an older version of the casebook, though, because too much has changed since the last edition.

## III.   OVERVIEW:

This is an introductory course in Constitutional Law.  The Constitution was created when this country came into existence back in 1787.  The same Constitution, with some amendments, is still (amazingly!) around today.  It is the governing law in this country.  All other bodies of law derive their authority from the Constitution and must comply with its limitations.

Rather than being primarily about constitutional *rights*, most of the class is about constitutional *structure*.  This will be less familiar to you.  We will not be talking in this class about freedom of speech, or freedom of religion, or peoples' right to equal protection.  Those topics are covered in Constitutional Law II and other upper-level classes.  In this class, we will be talking about how the Constitution allocates power between several entities, most importantly, (1) Congress (the federal legislative branch), (2) the President (who is head of the federal executive branch), (3) the Supreme Court and lower federal courts (the federal judicial branch), and (4) state governments (like Michigan) and their legislative, executive, and judicial branches.

None of these four groups have unlimited power.  All of them are restrained, in various ways, by the others.  This class studies the powers held by each of these units of government, the restraints that each of them impose on the others, and the conflicts where these powers and restraints come into play.

One important thing: This class is different than your other first-year classes.  (I sometimes teach Contracts and Torts; I am pretty confident about this.)  Other first-year classes are *presentist*.  By that, I mean they are largely focused in the present.  In Contracts, for the most part, you study the law of Contracts as it exists today—here in 2020, with only occasional references to the past.  But Constitutional Law is different.   This class is largely *historical*.   Many important developments happened in the 18th and 19th centuries, and it would be impossible to understand modern Constitutional Law without them.  We will eventually get to the present for all of the subjects we talk about, but we will also be spending a lot of time in the past.  It will be fun!  The past has a lot of lessons to teach us!  In any event, don't be too surprised at all historical material.  And if history was not your major in college, don't worry.  (It wasn't mine either!)

**IV.   COURSE LEARNING OUTCOMES:**

At the completion of this course, students should be able to:

1)      closely read judicial decisions—being able to evaluate their internal logic, recognize the rules they establish for future cases, and think critically about the values underneath them;

2)      apply those judicial decisions to new factual situations, as lawyers typically do in legal practice;

3)      understand the basic history of Constitutional Law in America;

4)      understand the doctrinal principles of modern Constitutional Law in America;

5)      understand, and be able both to defend and criticize, the various justifications offered in Constitutional Law cases.

**V.   EVALUATION:**

1)      *Final Examination*

Grades will be based principally on a three-hour examination at the end of the semester. The first part of the exam will involve multiple-choice and short-answer questions. This first part will also be closed book, meaning that you will only be permitted to bring in a writing utensil. You will not be permitted to use a laptop on this first part, because you will be writing directly on the exam booklet which itself will have space for you to write. The second part of the exam will consist of essay questions. The second part will be open book, meaning that you will be permitted to use your casebook, your notes, and any other materials you yourself have prepared for this class. (These, however, will be the only materials you will be permitted on the open book section of the exam.) You will be permitted to use a laptop on the essay part of the exam.

Also note that the EBB software, used by the law school for exams, does not allow students to access any electronic materials during exams, including electronic casebooks. So, for the open-book part for the exam, you will hard copies of any materials you want for the exam.

2)      *Class Participation*

The other part to your grade is class participation. Throughout the class, I'll be calling on you, (using the on-call list, discussed below), asking you questions. You don't have to have all the right answers. (If everyone always had all the right answers, then I'd wonder if I was necessary at all.) So you don't have to have the right answers. Instead, the key thing is that you have done the reading, thought about the material, and come excited to think and talk about it.

There is an on-call list for this class. So, for each class, I will call only on students whose names are listed on the on-call list for the day—although, to be sure, student volunteers are welcome at any time. If you are on the on-call list for a class, you should be prepared to be discuss that day's material (from where we left off the previous class).

Below average class participation can move your grade down one-third of a letter grade, and above average class participation can move it up one-third of a letter grade.

3)      *Class Attendance, Timeliness, and Emergency Situations*
*Attendance.*  Pursuant to law school accreditation rules, attendance will be taken.  A roll sheet will be distributed each class, which you are expected to sign.  If you miss more than 4 classes, your grade will be lowered by one-third step (i.e., from B to B-).  If you miss more than 6 classes, you will be excluded from sitting for the final exam.  The reason for the absences is irrelevant under this policy: If you are required to miss a class, for whatever reason, that counts as one of the permitted absences.

*Timeliness.*  There are always situations beyond our control, but please try to be on time.  It throws the class off when people arrive late.  Repeated tardiness can also affect your grade.

*Emergency Situations.*  Finally, if you have an emergency situation necessitating accommodation, which happens from time to time, please contact me (and also contact the Dean of Students).

4)      *Time Expectations*
Consistent with the credit hour requirements of American Bar Association Standard 310 and the Law School's Credit Hours Policy, you should expect to spend the following time on this course:

> 180 minutes of classes per week (for the thirteen weeks of class)
> 300 minutes of reading per week (for the thirteen weeks of class)
> 180 minutes in a final examination
> 1800 minutes in preparation for the final examination

You should consider these bare minimums for the class.  I expect most students will spend more time preparing for the exams (to give just one example).


## VI.   MISCELLANEOUS:

*Recordings.*  Class sessions will be recorded.  Recordings will not generally be made available. They will only be available to students enrolled in the course, who have good reason for missing the class in question.  If you receive a recording, you may not allow any other person to view it.

*Technology/IT.*  If you need assistance with technology (equipment or software) in order to participate fully in class, please email LawIT@wayne.edu.

*Accommodations.*  Wayne Law is committed to providing equitable access to learning opportunities for all students, including those with documented disabilities (e.g., mental health, attentional, learning, chronic health, sensory, or physical) under the Americans with Disabilities Act (ADA).  Please contact the Office of Student Affairs at (313) 577-3997 or lawsao@wayne.edu to schedule an appointment with the Assistant Dean for Student Affairs to receive confidential counseling about the process for requesting reasonable disability accommodations and exam variances.  Accommodations are not provided retroactively, and students must register in advance with the WSU Student Disability Services Office.  To learn more about disability services provided under the ADA, please visit the Wayne Law website

(https://law.wayne.edu/students/accommodations).    You may also contact the WSU Student Disability Services Office directly at 313-577-1851 or studentdisability@wayne.edu.

*COVID-19 Guidelines.*   All students are expected to familiarize themselves with mandatory campus health and safety guidelines—including vaccination and masks—available at https://wayne.edu/coronavirus.   University policy requires all students to be in compliance with vaccine and booster mandates.

*Artificial Intelligence.*   The use of artificial intelligence content creation tools/system (e.g., ChatGPT, Jasper) is permitted in this class under the following conditions:

> (1) You consult me first on your plan for using AI with the assignment. I may offer you an alternative approach.
>
> (2) You state explicitly at the beginning of the assignment when, why, and how you have used AI. This includes the prompts you used to generate the results. You also need to specify what elements of the AI-generated text you have used.
>
> (3) If your AI output includes data/information, you are responsible for verifying accuracy and providing sources.
>
> (4) If I detect AI plagiarism in your assignment, you will be found to be in violation of the Student Code of Conduct and charges of academic misconduct will be brought.

# READINGS

The following are the readings for the class.  At the end of each class, I will inform you of what the reading is for the following class.  A good rule of thumb, though, is that you will be reading about 20 pages per class.  But don't be fooled.  Think of law as a foreign language, and the 1L year as an immersion course.  These readings will take longer than you expect.

**Introductory Class:**
Orin Kerr, *How to Read a Legal Opinion* (handout)
*Ariz. State Legislature v. Ariz. Indep. Redist. Comm'n* (handout)

**Chapter 2:**   **The Federal Legislative Power**
Pgs. 119-130, 155-179, 187-204, 207-236, 240-248, 133-155, 248-263

**Chapter 3:**   **The Federal Executive Power**
Pgs. 275-284, 292-319, 328-332, 339-358

**Chapter 1:**   **The Federal Judicial Power**
Pgs. 39-73, 79-114

**Chapter 4:**   **Federalism (The Power of the States vis a vis the Federal Government)**
Pgs. 419-444, 444-445, 457-461, 477-479, 480-501

**Chapter 6:**   **Substantive Due Process**
Pgs. 581-592, 599-606

**Chapter 8:**   **Substantive Due Process (Revisited)**
(depending on time)

# Professor Paul Dubinsky
# Civil Procedure A
# Fall Semester 2023
# Syllabus & Class Rules

**<u>Learning Goals and Expected Outcomes</u>**:

  This course seeks to develop both a base of knowledge and a set of skills. As to the former, the focus will be on the early stages of a civil lawsuit, including the jurisdiction of federal courts, venue, joinder of parties and claims, equitable relief, preliminary relief, differences between state procedure and federal procedure, and federalism.  We will study later stages of civil litigation in Civil Procedure B. As to skills, we will develop 1) extracting relevant information from judicial opinions, 2) analyzing pleadings, 3) applying and distinguishing precedents, 4) interpreting federal rules, statutes, and constitutional provisions, 5) making strategic decisions in the context of litigation, and 6) communicating with clients. Civil procedure is a two-semester course: Civil Procedure A in the fall and Civil Procedure B in the winter.

**<u>Texts:</u>**

  Please purchase the **_paper copy_** (not the electronic version) of each of the books below.  Be sure to buy the right edition.

1.  Subrin, et. al., *Civil Procedure: Doctrine, Practice, and Context* (6th ed. 2020) (Wolters Kluwer). Used copies are widely available on the Internet. I will refer to this as the "casebook" or "**Subrin**." It contains the edited cases, commentary, questions, and practice exercises that will be a large part of the course teaching materials.

2.  Friedenthal, et. al., *2023-24 Civil Procedure Supplement* (West Academic). This book contains procedural rules and statutes that apply to litigation in federal courts. I refer to the Federal Rules of Civil Procedure as the "**FRCP**." The book also contains the Advisory Committee Notes to the FRCP and other useful materials.

3.  Joseph Glannon, *Civil Procedure: Examples and Explanations* (9th ed. 2023) (Aspen Publishing).  I will refer to this book as "**E&E**." Used copies are likely not available. This book contains good practice exercises.  It also has useful diagrams and short summaries of the subject matter we will study.

4.  Jonathan Harr, *A Civil Action* (any edition). Used copies are widely available. I will refer to this as "**ACA**." This book is an engaging account of a case concerning water pollution in the city of Woburn, Massachusetts. The title of the case at the heart of the book is "*Anderson v. Cryovac*." I will refer to the case as "**Woburn**." We will use this book in the winter semester.

Occasionally, I assign cases in addition to or in substitution for those in Subrin. I do this to teach cases more recent than 2020 (the publication date of the casebook) or because past students have found an edited case in Subrin not especially clear or useful. I also want to give you the experience of reading some cases in full rather than solely in the edited form contained in the casebook.

Be sure to check all Canvas postings under "Modules" and "Pages."

**Time Commitment/Compliance with ABA Standard 301:**

In compliance with the credit hour requirements of the American Bar Association ("ABA") (Standard 310) and the Law School's Credit Hours Policy, I expect you to spend at least the following amounts of time on this course:

In class: 2 hours and 50 minutes per week; preparation for class: 9 hours per week; preparation for the final exam: 15 hours total; taking the final exam: 3-4 hours. Depending on the difficulty of a case, you may need to read it more than once. You likely will need to read the assigned FRCP and statutes many times.

**Office Hours:**

My office is located on the third floor of the Library Building, room 3363. My secretary is Ms. Olive Hyman, olivehyman@wayne.edu.

In Person:

Tuesday:[1]  noon to 1 p.m. and 3:30 p.m. to 4:30 p.m.
Thursday:  noon to 1 p.m. and 3:30 p.m. to 4:30 p.m.

On Zoom:[2]

Monday: 9:00 to 11:00 a.m.
Friday:   noon to 2:00 p.m.

**Final Examination & Grading**

There will be an in-class final examination. The exam in Civil Procedure B (winter semester) will be open book. The exam date will be posted at

---

[1] On some Tuesdays and Thursdays, I will need to attend faculty meetings during the lunch hour. For that reason, it is best to contact me either in person or by email to schedule an office-hours meeting on that day.  I will have expanded office hours during the week before the final exam.
[2] Please email me to schedule a specific day and time when you would like to meet online.  I will confirm that date and time is available and then send you a Zoom link. Please notify me in advance if you need to cancel or reschedule so that another student can have that meeting time.

https://law.wayne.edu/academics/resources/schedule. I encourage you to use a laptop to write your answers, though you may write them by hand. Although the fall final exam will be closed book, I will provide you with clean copies of the relevant FRCPs and statutes. You do not need to memorize these, though you need to be very familiar with them. The exam may include material from any of the reading assignments, anything discussed in class, and anything on Canvas. Your grade on the exam will be based in part on the mandatory grading curve to be used by professors in all first-year courses.  Please note that the Law School's exam software does not permit you to access your hard drive or use the Internet during the examination. See https://law.wayne.edu/academics/resources/schedule. For that reason, you may want to purchase the hard copy of the Subrin casebook rather than the electronic copy because the final exam in Civil Procedure B will be "open book."

Your grade *for the course* will be based on your final exam grade, where your final exam grade sits on the mandatory curve,[3] and some other factors. For students who demonstrate excellent preparation for class and performance in class, I sometimes make the course grade one step higher than the final exam grade, for example from B+ to A-. I sometimes make downward adjustments, for example from B+ to B, in the case of students poorly prepared for class, frequently absent, late, or disruptive (e.g., ridiculing others or carrying on private conversations or texting). Please refer to the Law School's academic regulations referenced above and the University's Code of Conduct, https://doso.wayne.edu/conduct/pdf/student-code-of-conduct.pdf

The grade for an exam submitted late may be lowered more than one step or, in some cases, the exam will not be accepted, and the student will need to repeat the course.

I will provide additional details about the final exam at the appropriate time during the semester. I will also post on Canvas some of my previous exams.

I welcome your questions during class and otherwise. My job is to help you learn. I take that responsibility very seriously. Please be advised, however, that sometimes I cannot call on you right away because I need to cover certain material within the scheduled class period or because answering a question at a particular juncture will interrupt the flow of class or take us on too far a tangent. If I do not get to your question during class, please follow up either right after class or during office hours.

For additional information about final exams at Wayne State, see https://law.wayne.edu/academics/resources/schedule

**Policy on Artificial Intelligence:**

Because a major goal of the law school is to develop your critical thinking skills and ideas, the use of any artificial intelligence (AI) content-creation tool or system (e.g., Jasper, ChatGPT, or Bard,) is not permitted. Using AI in any shape or form in any work submitted for a

---

[3] I have posted on Canvas the Law School's mandatory curve for first year courses.

course will constitute a violation of the Student Code of Conduct (see reference above) and may subject you to penalties.

**Policy on Class Recordings**:

I do not regularly record in-person class meetings or meetings during office hours. You may not do so either without my permission. If I need to move a class online (e.g., because of inclement weather, my being sick, or a university health mandate), I will record the class on Zoom. I will make such recordings available to students who did not attend the class for good reason. I will not make recordings available to students who missed the class without a good reason or who have accumulated 3 or more unexcused absences. By requesting a recording, you agree not to allow anyone else to view the recording. Be sure to check your Wayne email and Canvas frequently for course announcements, especially when inclement weather is in the forecast.

If you have privacy-related concerns about the recording of classes, please contact Professor John Rothchild (jrothchild@wayne.edu), the University's Chief Privacy Officer.

**Absence, Arriving Late, or Leaving Early:**

The American Bar Association ("ABA") requires all law schools and faculty members to monitor student attendance. I do this by taking a phone photo at the beginning of class. I subsequently will delete these photos. My rules on absences are as follows: If you anticipate being absent or late or needing to leave early, please email me in advance of class or as soon as practicable afterwards. Absences caused by illness, religious observance, unavoidable work responsibilities, and family or other emergencies will be excused absences.

Students with more than 3 unexcused absences during the semester may have their final grade lowered one step, see explanation above. Students who miss more than 6 classes during the semester, **for whatever reason**, may be dropped from the class and will need to take the course again at some future time.

Because of the extraordinary variety of religious affiliations of the University student body and staff, the Academic Calendar makes no provisions for religious holidays. However, it is University policy to respect the faith and religious obligations of the individual. Students with classes or examinations that conflict with their religious observance are expected to notify instructors well in advance, so that mutually agreeable alternatives can be arranged.

**Campus Health and Safety**:

You should familiarize yourself with campus health and safety guidelines, including those pertaining to vaccination and masks. You can find these guidelines at https://wayne.edu/coronavirus. Take precautions not to expose your classmates to illness.

**University Disability Policy**:

4

The University is committed to providing equitable access to learning opportunities for all students, including those with documented disabilities (e.g., mental health, attentional, learning, chronic health, sensory, or physical) under the Americans with Disabilities Act (ADA).  Please contact the Office of Student Affairs at 313-577-3997 or lawsao@wayne.edu to schedule an appointment with the Assistant Dean for Student Affairs to receive confidential counseling about the process for requesting reasonable disability accommodations and exam variances.  Accommodations are not provided retroactively. Other support services provided by the Office for Student Affairs can be found at https://law.wayne.edu/academics/resources/support To learn more about disability services under the ADA, see https://law.wayne.edu/students/accommodations. Students must register in advance with the WSU Student Disability Services Office.  You may contact the WSU Student Disability Services Office directly at 313-577-1851 or studentdisability@wayne.edu

## Seating

On the first day of the semester, choose where you want to sit for the whole semester. Bear in mind where you will best be able to see and hear. Seating is on a first-come, first-served basis. Avoid sitting at the very back of the room if seats are available closer to the podium.

## Methods of Instructions

I employ several methods, such as lecture, question-and-answer discussion, at home practice exercises, and in-class exercises. To make for a reasonable reading load, I sometimes lecture to provide you with background to the assigned readings.  Be prepared for me to call on you at random to answer questions about the assigned readings and their real-world application. Studying to become a lawyer is an active learning process that calls for much more than memorization. Most of our in-class time will be devoted to learning how to ***interpret and apply*** rules, statutes, and cases.

Occasionally, I will not manage to discuss all the assigned readings during the class for which they are assigned. This may be because I sense a need to slow the pace of class or because there are many inciteful student questions to which I want to respond at length. When this occurs, I will turn to the uncovered material at the start of the next class. Be sure to refamiliarize yourself with this material before the next class meeting.

I am aware that students learn at different speeds. Sometimes you may find the pace slow and sometimes brisk. I will try to make sure no one feels lost but for the class also to be challenging. Time permitting, consider reading a class or two ahead on the syllabus.

I encourage you to take careful class notes and to reread those notes before the next class meeting. From time to time, I will ask questions that require you to refer to material covered during prior classes.

Early in the semester, please look at the entire list of reading assignments below; it is a roadmap for what we will do this semester. I will not devote equal time to every assigned reading. The amount of time I spend on a reading assignment reflects my judgment at to its

importance and difficulty. I sometimes spend relatively little time on a case that seems to me relatively straightforward, but feel free to ask questions about it or ask me to discuss it in more detail.

I have a soft speaking voice. I use a microphone when one is available and working. If you have trouble hearing me, feel free to tell me that, either during class or afterward. I welcome the feedback. Also, consider selecting a seat at the front of the classroom.

*You are responsible for reading all the information above, which I refer to as the "class rules." Please read it carefully. If you have a question during the semester about these rules, chances are that the answer is in this document, but if you believe I have overlooked something, please ask me.*

# Reading Assignments

**YOU MUST DO ALL ASSIGNED READINGS <u>BEFORE</u> THE DATE ON WHICH THEY ARE SCHEDULED FOR DISCUSSION.** That includes footnotes unless otherwise indicated. Bear in mind that practicing law requires very careful reading and differs considerably from the reading assignments in college. Please bring to class the readings assigned for that class. Bring the FRCP book to every class.

For reasons I will explain in class, I do not follow the order in which the casebook presents the material. Many professors around the country do not do so either.

**Aug. 29**

<u>Class #1</u>        **Introduction to the Course and the Field**

Subrin, pp. 1-10 ("An Introduction to Civil Procedure"), pp. 237-47 ("The Stages and Essential Concepts of a Civil Litigation")

# I.    Personal Jurisdiction

**Aug. 31**
**Class #2        Personal Jurisdiction Based on Territoriality, Domicile, or Minimum Contacts**

Subrin, pp. 684-88 (*International Shoe v. Washington*)

**Sep. 5**
**Class #3        Legal Persons and General Jurisdiction, Part 1**

   Sample Casebrief: *International Shoe* case
   Subrin, pp. 810-15 (*Goodyear Dunlop Tires Operations v. Brown*)
   FRCP 12(b)(1)


**Sep. 7**
**Class #4        Legal Persons and General Jurisdiction, Part 2**

   Subrin, pp. 818-28, 830-34 (*Daimler, AG v. Bauman, NSF Railway v. Tyrrell*)
   Review Question 4 on p. 828


   <u>For class discussion</u>:  Compare the holding in *Goodyear* with that in *Daimler*. Which
   case is formulated more clearly and completely?  The majority gives more than one
   reason for its ruling in *Daimler*.  What are the various reasons? How do these compare
   with the reasons given in *Goodyear*?

**Sep. 12**
**Class #5        Specific Jurisdiction and State Jurisdictional Statutes**

   Reread *International Shoe*
   Subrin, pp. 730-43, 762-71 (*J. McIntyre Machinery v. Nicastro*, *Burger King v
   Rudzewicz*)
   Review questions 2, 3, and 9 on pp. 745-46
   Review question 5(A) and 5(B) on p. 772
   Questions to Ponder 1 on p. 746
   Question to Ponder 2 on p. 773

   Michigan's limited jurisdiction long-arm statutes: Michigan Consolidated Laws ("MCL")
600.705 and 600.715
http://www.legislature.mi.gov/(S(perk1pgbsgrwewmgh3avy5eq))/mileg.aspx?page=GetObject&
objectname=mcl-600-705

http://www.legislature.mi.gov/(S(perk1pgbsgrwewmgh3avy5eq))/mileg.aspx?page=getobject&o
bjectname=mcl-600-715

**Sep. 14**
**Class #6        Specific Jurisdiction and the Place of the Injury**

   Subrin, pp. 710-12, 715-20 (*Calder v. Jones*; *Walden v. Fiore*)
   Questions to Ponder 1 and 2 on pp. 713-14
   Review Questions 1 & 2 on p. 720

Subrin: pp. 749-59 (*Bristol-Myers Squibb v. Superior Court*)
Review Notes and Questions 1, 3-6 on pp. 759-60

**Sep. 19**
**Class #7**        **The Relationship Among the Defendant, the Forum, and the Claim**

On Canvas: *Ford Motor Co. v. Montana Eighth Judicial District*, 141 S. Ct. 1017 (2021)
Types of Torts (Canvas Pages)

**Sep. 21**
**Class #8**        **Jurisdiction Based on Consent or Waiver**

Subrin, pp, 836-40 and review q's 1 - 4, 6, and 10 on pp. 841-43
On Canvas, *Mallory v. Norfolk Southern Railroad* (S. Ct. 2023)
E&E, pp. 7-8

Problem re MI law firm and personal jurisdiction (Canvas Pages)


## II.    Pleadings


**Sep. 26**
**Class #9**        **Introduction to the Federal Rules of Civil Procedure ("FRCP");**
                    **Elements of a Complaint and How to Serve Process**

Catherine T. Struve, *The Paradox of Delegation: Interpreting the Federal Rules of Civil Procedure* (read pp. 1099-1119) (you can skim the footnotes)
**https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=2188&context=faculty_scholarship**

FRCP 8(a) and (d)
FRCP 4 (a), (b), (c), (h), (l), and (m)

Subrin pp. 1142-51 (*Carpenter v. Dee*). Focus on the complaint, pp. 1147-51.
E&E, pp. 355-59

Michigan Court Rule ("MCR") 2.105, https://casetext.com/rule/michigan-court-rules/michigan-court-rules/chapter-2-michigan-rules-of-civil-procedure/subchapter-2100-commencement-of-action-service-of-process-pleadings-motions/rule-2105-process-manner-of-service

Exercise: Iowa Writer's Workshop (Canvas Pages)

**Sep. 28**
**Class #10:**     **The Plausibility Pleading Standard; Procedural Motions in Federal Court in Responding to the Complaint**

Subrin, pp. 251-53, 275-84 (*Ashcroft v Iqbal*)

FRCP 12(a)(1), FRCP 12(b)(2), 12(b)(5), 12(b)(6), 12(e), 12(f), 12(g), and 12(h)

*Walsh v U.S. Bank, N.A*., (Sections I-III of majority opinion) 851 N.W. 2d 598 (Minn. 2014) at https://casetext.com/case/walsh-v-us-bank

**Oct. 3**
**Class #11**     **Waiving Service of Process/Notice/ and the Answer: Defenses, Affirmative Defenses, Special Pleading Rules, and Pleading in the Alternative**

FRCP:  4(d), 8(b) – (d), 9(b), and sample waiver request after FRCP 4
Subrin, pp. 846-51 (*Mullane v Central Hanover Bank & Trust*)
      Review Questions 3-7 on pp. 851-52
Subrin, pp. 60-69 (*Jones v Flowers*)

      Definition of an affirmative defense:
https://www.law.cornell.edu/wex/affirmative_defense
      Explanation of pleading in the alternative:
https://www.law.cornell.edu/wex/alternative_pleading

**Oct. 5**
**Class #12**     **Improper Pleading: Lack of Reasonable Inquiry and Pleading for an Improper Purpose**

FRCP 11(a)-(c)
28 U.S.C. 1927, https://www.law.cornell.edu/uscode/text/28/1927
Subrin, pp. 365-75 (*Chaplin v. DuPont Advance Fiber Systems*)
On Canvas: *King v. Whitmer* (6th Cir. 2023),
https://www.opn.ca6.uscourts.gov/opinions.pdf/23a0134p-06.pdf
      1993 Advisory Committee Note to FRCP 11
      Exercise re: Identifying the elements of a claim (Canvas Pages)

**Oct. 10**
**Class #13**     **Amending the Complaint and the Answer**

FRCP: 15
Subrin, pp. 315-19
*Moore v. Baker*, 989 F.2d 1129 (11th Cir. 1993), at
https://law.justia.com/cases/federal/appellate-courts/F2/989/1129/461218/

*Bonerb v. Richard J. Caron Foundation*, 159 F.R.D. 16 (W.D.N.Y. 1994), at
https://casetext.com/case/john-bonerb-plaintiff-v-the-richard-j-caron-foundation-aka-andor-chit-chat-westfield-defendant
   E&E pp. 391-98

   FRCP 15 Practice Exercises: (Canvas Pages)


## III.  Subject Matter Jurisdiction

**Oct. 12**        **Class Canceled. Make-Up on Dec. 1st**
**Class #14**      **Federal Question Jurisdiction**


   U.S. Constitution, article III, section 2, clause 1, https://www.archives.gov/founding-docs/constitution-transcript

   28 USC 1331

   Subrin, pp. 865-72 through note 3 (*Louisville & Nashville RR v. Mottley*)

   E&E pp. 81-93 ("Arising Under" and the *Mottley* test); Questions 1-3, 4a, 5, 7, 9-11 on
   pp. 94-95 but not "An Early Question" on p. 90.


   **CLASS WILL NOT MEET ON OCTOBER 17th.**  See the Law School's academic
   calendar, https://law.wayne.edu/academics/resources/calendar#definition-101428


**Oct. 19**
**Class #15**      **Diversity Jurisdiction**

   E&E, pp. 105-110, 112-14, 126-30, examples 1-3, 5, and 8 on pp. 110-11
   and 12 on pp. 115-16

   Subrin, pp. 884-88 (skip "Unincorporated Associations"),
   pp. 895-98 (*Hackman v. One Brands*)
   Review Questions 2-5 on p. 893
   Review Question 3 on p. 899
   Questions to Ponder 2 & 3 on pp. 899-900


**Oct. 24**
**Class #16**      **Removal from State Court to Federal Court**

   Subrin, pp. 920-27 (including review questions and Exercise No. 9)


10

E&E, pp. 139-43
Subrin, pp. 901-14
E&E, pp. 319-25

K-Mart Problem (Canvas Pages)

**Oct. 26**
**Class #17        Supplemental Jurisdiction**

28 U.S.C. 1367
Subrin, pp. 915-17, review questions 2, 3, 4 on pp. 917-18.
E&E, pp. 319-28. Pay careful attention to the diagrams on pp. 320-21 and 324-25
Internet: *Artis v. Dist. of Columbia*, 138 S. Ct. 594 (2017),
https://www.oyez.org/cases/2017/16-460
Practice Exercise 37 on pp. 919-20

# IV.   Joinder

**Oct. 31**
**Class #18        Joinder of Claims; Permissive Joinder of Parties**

FRCP 13, 18, 20, and 82 AND FRCP 21
Subrin, pp. 377 (bottom) -93 (top) (*Cooper v Fitzgerald*, *Podhorn v. Paragon Group*)
Review Questions: #1-4 on pp. 385-87 and #2 on p. 390
E&E, pp. 263-68 (top) (look closely at the diagrams)

**Nov. 2**
**Class #19        Joinder of Parties: Third-Party Claims**

FRCP 14
Subrin, pp. 393-97 (*Gross v. Hanover Insurance Co*.)
E&E pp. ~~271-75~~ 281-85
Meaning of "indemnify," https://www.law.cornell.edu/wex/indemnify
Casefile in *Carpenter v. Dee*, pp. 1159-65 (amended complaint), pp. 1175-81 (third party
complaint and cross claims)
Practice exercise No. 13 on pp. 392-93
1948 Advisory Committee Note to FRCP 14

**Nov. 7**
**Class #20        Necessary and Indispensable Parties, Intervention**

FRCP 19 & 24

Subrin, p. 398-411 (*Temple v. Synthes Corp*. *Daynard v Ness*, et. al),
*Downing v. Global Direct LLC*, https://caselaw.findlaw.com/court/us-1st-circuit/1602380.html

Review question on top of p. 416

E&E, pp. 292-97 and examples 2-5 on pp. 299

Subrin, pp. 413-15 (*U.S. v Northern Indiana Public Service Co.*) and 416 ("statutory authority to intervene")

E&E, pp. 300-05

## Nov. 9
## Class #21        Federal Venue Rules

28 U.S.C. 1391 (the general federal venue statute) and 28 U.S.C. 1400, 18 U.S.C. 1965 (examples of subject-specific venue statutes)

Subrin, pp. 853-54

E&E: pp. 157-74

*Fourco Glass v. Transmirra Products,* 353 U.S. 222 (U.S. 1957), https://supreme.justia.com/cases/federal/us/353/222/

*Uffner v La Reunion Francaise,* 244 F.3d 38 (2001), *https://caselaw.findlaw.com/court/us-1st-circuit/1421146.html*

Solidstrip exercise

## Nov. 14
## Class #22        Change of Venue and Multidistrict Litigation ("MDL")

Subrin 854-62 (*Piper Aircraft v. Reyno)* and review questions 1-6, 28 U.S.C. 1404, 28 U.S.C. 1406, 28 U.S.C. 1407

Texas FNC statute -- http://codes.findlaw.com/tx/civil-practice-and-remedies-code/civ-prac-rem-sect-71-051.html

Tuazon exercise

## V.    Equitable Relief and Preliminary Relief

## Nov. 16
## Class #23        The History of Equity and Equitable Remedies

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 305-320 only (1982) (focus on pp. 311-13), https://supreme.justia.com/cases/federal/us/456/305/

*eBay, Inc. v MercExchange, L.L.C.*, 547 U.S. 388 (2006), https://www.oyez.org/cases/2005/05-130

Acorn non-compete exercise

**Nov. 21**
**Class #24**      **Preliminary Relief: In rem Jurisdiction, Quasi in rem Jurisdiction, and Prejudgment Attachment**

FRCP 64
Subrin: pp. 788-96 (*Shaffer v Heitner*)
Review q's 1-3, 6, 7 on pp. 796-97
Subrin: pp. 107-15 (*Fuentes v. Shevin*); Review q's 1-3 on p. 114
Michigan Consolidated Laws ("MCL") 600.751,
http://www.legislature.mi.gov/(S(lab3ubw5qmrxura24hqbvgi0))/mileg.aspx?page=getobject&objectname=mcl-600-751

**THANKSVING HOLIDAY**

**Nov. 28**
**Class #25**      **Preliminary Injunctions and Temporary Restraining Orders**

FRCP 65
Subrin, pp. 116-27 (*Winter v NRDC*)
Review Questions 1-4 on p. 127
Practice Exercise No. 2 on pp. 127-29
*Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080 (2017),
https://casetext.com/case/trump-v-intl-refugee-assistance-project

In-class oral argument

**Dec 1st (Make-up #1)**
**Class #26**      **Practice Exam Question**

Winter 2023, Question 3

**Dec 7th (Make-up #2) Question and Answer**