## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HIND OMAR,

     Plaintiff,

v.

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, in their individual
and official capacity,

     Defendant.

Case No. 23-cv-11689
Hon.  George Carem Steeh

| | |
|---|---|
| DAVID A. NACHT (P47034) | Brett J. Miller (P68612) |
| NACHTLAW, P.C. | Sarah L. Nirenberg (P77560) |
| Attorneys for Plaintiff | BUTZEL LONG, |
| 501 Avis Drive, Suite 3 | Attorneys for Defendant |
| Ann Arbor, MI 48108 | 150 W. Jefferson – Suite 100 |
| (734) 663-7550 | Detroit, MI 48226 |
| dnacht@nachtlaw.com | (313) 225-7000 |
| | millerbr@butzel.com |
| | nirenberg@butzel.com |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES** Plaintiff Hind Omar (herein after "Omar" or "Plaintiff") by and through her attorneys, Nachtlaw, P.C., and submits her Motion for Summary Judgment ("Motion"). In support of her Motion, Plaintiff states as follows:

1.    For reasons set forth in Plaintiff's Brief in Supports of Motion for Summary Judgment, Plaintiff respectfully moves for summary judgment on each of Plaintiff's claims in this lawsuit.

2.     No material issue of fact is in dispute regarding Plaintiff's claims of disability, request for reasonable accommodation, and the Board of Governors of Wayne State University (herein after "WSU" or "Defendant") failure to accommodate under Title II of the Americans with Disabilities Act, 28 U.S.C. 12131, *et seq.,* Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, *et seq.*, and the Persons with Disabilities Civil Rights Act, Michigan Compiled Law, Chapter 37. Civil Rights section 37.1101, *et seq.*

3.     No reasonable juror can conclude that Defendant did not discriminate against Plaintiff by failing to reasonably accommodate her.

4.     Accordingly, Plaintiff respectfully moves the Court for summary judgment on each of Plaintiff's claims pursuant to the Federal Rule of Civil Procedure 56 and this Court's Local Rules.

5.     Plaintiff further relies on the following Brief in Support.

6.     Pursuant to the Local Rules, undersigned counsel sought concurrence from Defendant's counsel as to this Motion, which was declined.

**WHEREFORE**, Plaintiff respectfully requests the Court grant her Motion and enter judgment in her favor.

Respectfully submitted,

**NACHTLAW, P.C.**

By: */s/ David A. Nacht*

2

David A. Nacht (P47034)
Attorneys for Plaintiff

Dated: August 28, 2024

## PROOF OF SERVICE

The undersigned certifies that on this 28th day of August 2024, a copy of the foregoing Motion was filed via the Court's CM/ECF system, which will cause an electronic copy to be served on all counsel of record.

/s/ Karina Alvarez
Karina Alvarez, Litigation Paralegal

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HIND OMAR,

      Plaintiff,                     Case No. 23-cv-11689

                                         Hon.  George Carem Steeh

v.

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, in their individual
and official capacity,

      Defendant.

| DAVID A. NACHT (P47034) | Brett J. Miller (P68612) |
|---|---|
| NACHTLAW, P.C. | Sarah L. Nirenberg (P77560) |
| Attorneys for Plaintiff | BUTZEL LONG, |
| 501 Avis Drive, Suite 3 | Attorneys for Defendant |
| Ann Arbor, MI 48108 | 150 W. Jefferson – Suite 100 |
| (734) 663-7550 | Detroit, MI 48226 |
| dnacht@nachtlaw.com | (313) 225-7000 |
| | millerbr@butzel.com |
| | nirenberg@butzel.com |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES .................................................... ii

STATEMENT OF ISSUES PRESENTED ........................................ iii

I. INTRODUCTION .......................................................... 1

II. STATEMENT OF FACTS .................................................. 2

    a. Omar's Academic Successes Despite Having Multiple Disabilities ............. 2

    b. Omar's Acceptance to WSU Law School ................................. 3

    Omar's Accommodation Requests at WSU Law School ..................... 3

    d. WSU Law School's Refusal to Accommodate Omar ..................... 4

    e. Plaintiff's Expert Witness Robert Dinerstein ........................... 7

III. STANDARD OF REVIEW ................................................ 7

IV. ARGUMENT ............................................................ 9

    a. Hind Omar is a Qualified Individual with a Disability ................... 9

    b. Hind Omar's Proposed Accommodation is Reasonable ................. 12

    c. Wayne State University Law School Failed to Engage in the Interactive
    Process Regarding Omar's Proposed Accommodation ..................... 15

    e. Omar's Proposed Accommodation Does Not Impose a Fundamental Alteration
    on Wayne State University Law School's Juris Doctor Program ............ 17

    d. Wayne State University Law School's Approach to the COVID-19 Pandemic
    Precludes any Claim that Remote Learning Imposes a Fundamental Alteration to
    its Curriculum ........................................................ 19

V. CONCLUSION .......................................................... 22

PROOF OF SERVICE ....................................................... 23

i

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Choate*, 469 U.S. 287, 301 (1985) ........................................... 9, 13, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). .....................................8

*Brady v. Wal-Mart Stores, Inc.*, 521 F.3d 127, 135 (2d Cir. 2008) ..........................15

*Chiles v. Mach Shop, Inc.*, 238 Mich. App. 462, 472, 606 N.W.2d 398 (1999) ........8

*Eagle v. Hurley Med. Ctr.*, 292 F.R.D. 466, 477-78 (E.D. Mich. 2013) ...................9

*Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998). ...................................................................................................... 8, 10

*Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018) ..................................9

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) .................15

*Loye v. Cnty. Of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010), .................................13

*McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) .....................................................................................................8

*Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir. 1978)...............................12

*Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014)...................................15

*Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) ............................12

*Stern v. Univ. Of Osteopathic Med. & Health Sciences*, 220 F.3d 906, 908 (8th Cir. 2000) ...................................................................................................................9

*Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016).............................8

*Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). ...........12

**Other Authorities**

Michigan's Persons with Disabilities Civil Rights Act..............................................8

Section 504 of the Rehabilitation Act ...................................................................8, 9

ii

Title II of the Americans with Disabilities Act ..........................................................8

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................8

Federal Rule of Civil Procedure 56 ..........................................................................7

## STATEMENT OF ISSUES PRESENTED

1.      Whether Plaintiff, Hind Omar, who has a bachelor's degree from the University of Michigan and is currently successfully completing a master's degree at Oklahoma University, is "otherwise qualified" to attend WSU Law School, the law school that not only accepted her but also offered her a full tuition scholarship, for purposes of the ADA, Section 504, and PDCRA.


2.      Whether Omar's accommodation requests, including a request for partial remote learning, were reasonable and did not fundamentally alter WSU's curriculum as the requested accommodation was a routine practice for WSU and expressly contemplated by the ABA's educational and accreditation requirements

Plaintiff Hind Omar (herein after "Omar") submits her Brief in Support of Plaintiff's Motion for Summary Judgment as follows.

## I.    <u>INTRODUCTION</u>

This case arises out the Board of Governors of Wayne State University's (herein after "WSU") refusal to reasonably accommodate Omar's disabilities. Having been disabled all her life, Omar is familiar with what she needs to navigate educational barriers. Accordingly, upon being admitted, Omar submitted a list of accommodations, including partial remote learning, for WSU to consider. WSU not only refused to accommodate, but it also refused to actively engage in the interactive process. It did not defer to Student Disability Services, nor did it consider Omar's individualized circumstances.

Omar asked WSU for an explanation, which was ignored. After Omar persistently emailed WSU for a written explanation, WSU finally told Omar that it refused to implement her remote learning accommodation as it "fundamentally altered" the program, even though Omar's proposed accommodation was routine practice. Robert Dinerstein's (herein after "Dinerstein") unrebutted expert testimony, multiple depositions, and other exhibits demonstrate how WSU utterly failed to engage in the interactive process to determine whether Omar's accommodation requests were reasonable.

No genuine issues of material fact exist in this matter regarding whether WSU

discriminated against Omar when it refused to reasonably accommodate her disabilities. Thus, this Court should grant Omar's Motion for Summary Judgment.

## II.   STATEMENT OF FACTS

### a.   Omar's Academic Successes Despite Having Multiple Disabilities

Since birth, Omar has had a degenerative visual impairment. (Omar Dep. 14:19, 15:8). Today, Omar is legally blind. (Ex. A). Omar's blindness, ---in conjunction with her documented post-traumatic stress disorder, anxiety, and depression, ---has presented significant difficulties in her life. (Frost Dep. 16:13-16:17; Ex. A;). Nonetheless, Omar is "not scared to struggle, in the ways necessary." (Ex. B). As a student, Omar "[does] whatever [necessary] to ask [and answer] whatever question." (Omar Dep. 105:14-105:17). For instance, she routinely uses bulky, extensive assistive technology to use her laptop in classrooms. (Frost Dep. 26:18-26:19; Omar Dep. 71:1-71:2). With or without accommodations, Omar "present[s] as a bright and intelligent young woman who has an intense drive and desire to perform well." (Ex. A). In fact, she is currently successfully completing a master's degree in global studies from Oklahoma University. (Omar Dep. 93:5-93:6, 134:17-134:19, 146:2-146:3).

In 2017, Omar graduated from the University of Michigan with a bachelor's degree in political science. (Omar Dep. 18:5-18:13). In Fall 2021, during the COVID-19 pandemic, Omar enrolled in the University of Toledo. (Omar Dep.

2

29:13-29:20). Like many universities—including WSU—the University of Toledo offered remote courses at the time. (Welch Dep. 10:4-10:13; Omar Dep. 33:16-33:22). There, Omar attended remote classes for about a week before she disenrolled because of funding delays. (Omar Dep. 30:2-31:7). Eventually, Omar decided to apply to other, higher ranked schools. (Omar Dep. 33:12-33:15).

### b. Omar's Acceptance to WSU Law School

In 2021, Omar applied to WSU for the 2022-2023 academic year. (Omar Dep. 47:14-47:16). Omar was initially waitlisted and eventually denied. (Omar Dep. 47:13, 51:23-51:24). Thereafter, WSU Assistant Dean of Admissions Kathy Fox (herein after "WSU Dean Fox") personally emailed Omar that although WSU was unable to offer her a seat for Fall 2022, she wanted Omar to know that she was incredibly impressed with her credentials. (Ex. D). "But for [the] class filling up, [Omar] would have been a strong student at Wayne Law." (Ex. D). Additionally, WSU Dean Fox encouraged Omar to reapply to WSU for Fall 2023. (Ex. D). Accordingly, Omar reapplied to WSU. (Omar Dep. 52:2-52:3) As a testament to Omar's tenacity, WSU admitted her for the 2023-2024 academic year on December 7, 2022. (Ex. E; Omar Dep. 52:21-52:24). Notably, WSU awarded Omar the Pitt Family Scholarship. (Omar Dep. 55:10-55:13).

### c. Omar's Accommodation Requests at WSU Law School

It is common for students to make accommodation requests at WSU. (Welch Dep. 13:10). Like many other students, Omar initiated a conversation about potential accommodations with WSU Student Disability Services (herein after, "SDS") Specialist Sadfah Shohatee (herein after, "SDS Specialist Shohatee") before beginning school. (Omar Dep. 57:19-58:1). On February 2, 2023, Omar told SDS Specialist Shohatee a list of accommodations to explore. (Omar Dep. 61:23-61:25). That list included a request to attend lecture courses remotely, limit cold-calling as well as receive recorded lectures, a research assistant, extended time and a private room for examinations, physical and digital copies in-class materials, and permission to use her extensive technology and laptop. (Ex. B). Thereafter, SDS Specialist Shohatee notified WSU Law School that Omar had a disability that requires reasonable accommodations. (Frost Dep. 16:8-16:11).

### d. WSU Law School's Refusal to Accommodate Omar

In February 2023, Omar initiated a meeting with WSU Former Assistant Dean for Student Affairs (herein after "Former WSU Dean Welch") via Zoom to discuss her proposed accommodations and establish "a cohesion between SDS and the law school so there was no disconnect in communication." (Welch Dep. 16:1-16:3; Omar Dep. 65:24-66:3; Ex. B, p. 2). Omar had only begun to go through her accommodation requests when she was met with disregard, dismissive language, and resistance. (Omar Dep. 66:10-66:14). Former WSU Dean Welch swiftly told Omar,

"we don't do that here, that's not how it's done here, we've never done that before, that is not something we can do" to communicate "how accommodations had typically been implemented at the law school." (Omar Dep. 66:19-66:21; Welch Dep. 16:5-16:6). She immediately said "no" to Omar's request for a private room for examinations, recorded lectures, and an assistant to help take notes without further explanation. (Omar Dep. 66:22-67:22). Consequently, Omar's willingness to attend guest lectures, clinics, etc. in person was never explored. (Omar Dep. 96:21, 96:1-96:2, 95:1-95:24).

Still, Omar tried to engage in an interactive, individualized process. (Omar Dep. 82:25-83:1). Accordingly, Omar emailed WSU Director of Student Disability Services Cherise Frost (herein after "WSU Director Frost") and Former WSU Former Dean Welch a spreadsheet of her accommodations, which were based on her needs supported by "medical documentation regarding multiple diagnoses" in early March 2023. (Omar Dep. 61:21-61:25, 131:3-131:6; Ex. B, p. 7). Upon receipt, WSU Former Dean Welch consulted with WSU Dean of Academic Affairs Dean Settlage (herein after "WSU Dean Settlage"), rather than the qualified SDS office. (Welch Dep. 22:23-23:6). Because they "had not seen [Omar's proposed accommodations] before, they just assumed that it would be impermissible." (Welch Dep. 16:23-16:25). They made no other considerations. "Remote learning in part was not discussed. It was not even contemplated by [WSU law school officials] or

5

the SDS office." (Welch Dep. 45:3-45:6). By April 5, 2023, Former WSU Dean Welch and WSU Dean Settlage decided on their own that Omar's request for remote learning was a fundamental alteration and their decision was not going to change. (Welch Dep. 38:8-38:12)

On March 30, 2023, WSU denied a "full remote, distance learning program," something Omar *never* requested. (Welch Dep. 20:2; Ex. B, p. 59). WSU did not provide an answer for the other requests. (Ex. B, p. 60). That same day, Omar requested a written explanation as to why her request was denied. (Welch Dep. 37:15-37:19; Ex. B, pp. 66-67). Omar again requested a written explanation on April 5, 2023. (Ex. B, pp. 64-65).

It was not until April 26, 2023, when WSU Director Frost provided a written response to Omar's request. (Ex. B). Then, WSU Director Frost once again denied a "fully remote, distance learning program," something Omar never requested. (Welch Dep. 20:2; Ex. B, p. 33). WSU Director Frost further claimed that "it is a fundamental alteration of program" because it would modify the Socratic method (which requires interactive and collaborative learning), and WSU's facilities are not readily prepared for remote learning. (Ex. B, p. 33). WSU argued that "modifying the pedagogical approach to the program [via remote learning] would result in compromising the Law School's commitment to educating future lawyers who meet the standards as required by ABA accreditation," despite successfully utilizing

6

remote learning before. (Ex. B, p. 33; Welch Dep. 9:20-10:8). WSU has previously utilized remote learning during COVID-19, for students with broken legs, for students recovering from surgical procedures, and more. (Welch Dep. 9:20-10:8; Frost Dep. 38:22-39:11).

Although WSU refused to accommodate Omar, WSU still insisted that she pay her deposit before orientation started in August 2023. (Ex. B, pp. 70-71). However, a discouraged Omar chose to defer enrollment.

### e. Plaintiff's Expert Witness Robert Dinerstein

Dinerstein's credentials establish he is a relevant expert; he has devoted his life to legal education with a focus on disability issues in law school. (Ex. C). Dinerstein currently serves as chair of the ABA Commission on Disability Rights, where he "[has] spoken on a number of conference panels regarding students with disabilities and the reasonable accommodations process." (Ex. F, p. 1).

Dinerstein opines that WSU "rejected [Omar's] request for remote attendance for certain classes without engaging in an individualized evaluation of whether the request was reasonable" and that rejection "did not take into sufficient account plaintiff's psychological/mental disabilities." (Ex. F, p. 2).

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). "A dispute of material fact is genuine so long as 'the evidence is such that

a reasonable jury could return a verdict for the non-moving party." *Tyson v. Sterling*

*Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016), quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).

To establish a violation of Title II of the Americans with Disabilities Act

(herein after "ADA"), Omar must demonstrate that she was qualified to continue

school with or without reasonable accommodations, that she requested a reasonable

accommodation, and that the school failed to provide the reasonable

accommodations. *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432,

437 (6th Cir. 1998).

Analysis of ADA claims generally apply to claims made pursuant to Section

504 of the Rehabilitation Act (herein after "Section 504") because the purpose,

scope, and "standards of the acts are largely the same..." *McPherson v. Michigan*

*High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997). Further, the ADA

and the Michigan's Persons with Disabilities Civil Rights Act (herein after,

"PDCRA") share the same purpose and use similar definitions and analyses, and

courts have relied on the ADA in interpreting the PDCRA. *Chiles v. Mach Shop, Inc.*,

238 Mich. App. 462, 472, 606 N.W.2d 398 (1999). See also *Eagle v. Hurley Med.*

*Ctr.*, 292 F.R.D. 466, 477-78 (E.D. Mich. 2013). Therefore, the analysis in this brief applies equally to Counts I, II, and III of Omar's Complaint.

## IV.   <u>ARGUMENT</u>

The U.S. Supreme Court has held that the ADA and Section 504 require that "an otherwise qualified [disabled] individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Accordingly, a school must provide "reasonable accommodations ...when a disabled student would otherwise be denied meaningful access to a university." *Stern v. Univ. Of Osteopathic Med. & Health Sciences*, 220 F.3d 906, 908 (8th Cir. 2000), citing *Alexander,* 469 U.S. at 301.

Here, Omar is a qualified individual with a disability and was discriminated against when WSU declined to provide reasonable accommodation, which denied Omar meaningful access to the law school. Each element stated below is undisputed by evidence on the record. Therefore, summary judgment should be granted for Omar for claims under the ADA, Section 504, and PDCR.

### a.  Hind Omar is a Qualified Individual with a Disability

A plaintiff is a "qualified individual" if she is disabled and can meet the requirements of the program with or without reasonable accommodations. *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more of the major

9

life activities of such individual; [a] record of such impairment; or [b]eing regarded as having such an impairment as described in paragraph (f) of this section." Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1)(A).

Omar is a qualified individual. Omar has been diagnosed with legal blindness, anxiety, and depression (Omar Dep. 14:18-14:19, 32:10). These impairments meet the first two definitions of disability under the ADA. First, Omar's blindness, anxiety, and depression affect her education, which is a major life activity. (Omar Dep. 15:9-15:10, 71:1-71:24). Second, her disabilities, as evidenced by medical and school records, establish a record of impairments from her infancy. (Frost Dep. 16:13-16:14; Omar Dep. 14:1-14:19; Ex. A).

Secondly, Omar can meet the program's essential requirements program with or without accommodations. Courts have consistently held that a "disabled person is 'otherwise qualified' to participate in a program if he can meet its necessary requirements with reasonable accommodations." *Kaltenberger*, 162 F.3d at 435. Thus, if a student cannot successfully continue in a program with accommodations, they are not otherwise qualified under the ADA.

Omar has repeatedly succeeded academically when given consistent accommodations. She earned a bachelor's degree from the University of Michigan in 2017, and she is currently successfully completing a master's degree at Oklahoma University. (Omar Dep. 18:5-18:13, 93:5-93:6, 134:17-134:19, 146:2-146:3). She is

"able to do anything given the proper accommodations as anyone else." Still, "although [Omar] may possess the ability to perform proficiently and surpass normal expectations, without a modified method of execution, her performance will likely suffer, especially if there are visual tasks required." (Ex. A). For instance, she could "sit and access [her] material and collect whatever [she] need[s], analyze whatever data [she] need[s], answer a question, or interact the way anyone else could. But it would take [her] 20 minutes to do it…" (Omar Dep. 40:1-40:6).

Despite struggles, Omar says that she can interpret and analyze the law as required by WSU. (Omar Dep. 108:11-108:15). In her current remote master's program, she "is expected to write essays and cite and provide bibliographies." (Omar Dep. 124:11-124:14). Omar has attended classes in person at the University of Michigan. (Omar Dep. 19:25-20:2). She has also attended classes remotely at Oklahoma University. (Omar Dep. 44:5-44:8). Thus, Omar is qualified to attend WSU as well.

Moreover, after Omar notified WSU of her disabilities and WSU unequivocally denied her proposed accommodations, Former WSU Dean Welch still personally urged her to register for classes on August 10, 2023, and August 15, 2023, because orientation was set to begin on August 21, 2023. (Ex. B, pp. 70-71). If WSU believed that Omar was unqualified to attend their program, the school would not have encouraged her to still attend orientation, even without any accommodation in

place. WSU assured Omar that "there [was] no deposit due until June [2023], so she [had] plenty of time to make a decision [about whether she would still attend the law school]." (Ex. B, p. 41). Evidently, WSU believed that Omar could still succeed in its juris doctor program.

Furthermore, Dinerstein opines that "[Omar] is a qualified individual with disabilities who is able to meet the essential requirements of the law school program with reasonable accommodations." (Ex. F, p. 2). The evidence shows that there is no genuine issue as to Omar's identity as a qualified individual with a disability for the purposes of the ADA and Section 504.

### b. Hind Omar's Proposed Accommodation is Reasonable

The ADA mandates that a public entity, like WSU's law school, must provide reasonable accommodations. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). Whether a proposed accommodation is reasonable under the ADA may sometimes turn on considerations that are best reserved for the trier of fact. *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), citing *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir. 1978). A reasonable jury would find Omar's proposed accommodation to be reasonable.

Here, Omar requested to attend lecture courses remotely, limit cold-calling as well as receive recorded lectures, a research assistant, extended time and a private room for examinations, physical and digital copies in-class materials, and permission

12

to use her extensive technology and laptop. (Ex. B). However, WSU failed to respond to most of these requests in its initial response. (Ex. B). WSU solely focused on Omar's request for partial remote learning, which it unequivocally denied. (Ex. B).

Omar specifically requested "to attend 'the classroom or direct faculty instruction' portions of lecture-type courses and seminars remotely, via agreed-upon synchronous or asynchronous methods, as required by ABA Standard 310 and Wayne State Law J.D. Academic Regulation Credit Hours Policy." (Ex. B). Such a request "is expressly contemplated by the ABA standards for Law Schools," making it appear reasonable on its face. (Ex. B, p. 45). However, WSU refused to even consider Omar's proposed accommodation.

While aids and services "are not required to produce the identical result of level of achievement for [disabled] and [non-disabled] persons," they "must afford [disabled] persons equal opportunity to...gain the same benefit." *Loye v. Cnty. Of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010), citing *Alexander*, 469 U.S. at 305. Omar is legally blind. (Ex. A). Glasses do not mitigate her impairment. (Ex. A). Omar cannot navigate campus like a person without a visual impairment.

Additionally, Omar cannot participate in a lecture hall like other students due to her disabilities. (Omar Dep. 70:23-70:25). Students without her disabilities "can have their laptops out and have two or three screens up, split their screen on their

13

laptop, and reference material the way they see fit;" Omar must use extensive assistive technology and "zoom in so closely that [she doesn't] even have a full word on a screen at any point." (Omar Dep. 70:19-71:7). To avoid distracting other students in the past, Omar "s[at] in the back of the classroom, which compromise[d] [her] ability to hear..." (Omar Dep. 71:15-71:17).

Unlike other students, Omar cannot "reference material, consider a question, find, glance at an outline, at a case brief, at whatever is normally referenced, and then also [respond] in a timely fashion that is conducive for a classroom…" (Omar Dep., p. 104:18-104:25). Omar would likely impede the flow of the classroom and/or distract other students. Consequently, social condemnation and embarrassment may ensue, which would "be especially humiliating to her [as she suffers from post-traumatic stress, anxiety, and depressive disorders], creating difficulties in concentration and frequent expressions of guilt and resentment." (Ex. A). Additionally, her assistive technology is also so bulky that it "is not practical to transport from [her Ann Arbor, Michigan] home for each class [in Detroit, Michigan], let alone set up for proper use in class. (Ex. B).

If Omar could attend lectures remotely, she would not have to transport her assistive technology, struggle with navigating the lecture hall, potentially distract other students. In her remote master's program, Omar has not made many accommodation requests. (Omar Dep. 93:2-93:6). The fact that the program is

remote has alleviated several barriers. If WSU allowed Omar to attend lectures remotely, she could focus on the material rather than the material *and* social barriers due to her disability. (Omar Dep. 83:19-83:21). Omar's testimony should be carefully considered as "the individual with a disability is most familiar with his or her disability and is in the best position to determine what type of aid or service will be effective." U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, at II-7.1100 (1993). Critically, WSU never even explored the implementation of Omar's other accommodations. (Omar Dep. 96:2).

### c. Wayne State University Law School Failed to Engage in the Interactive Process Regarding Omar's Proposed Accommodation

Once a qualified individual raises a disability, "the ADA contemplates that the [student] and [school] may need to engage in an interactive process to determine an appropriate accommodation." *Brady v. Wal-Mart Stores, Inc.*, 521 F.3d 127, 135 (2d Cir. 2008). Although "not described in the statue's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). Furthermore, "failure to engage in the interactive process is...an independent violation of the ADA if the plaintiff establishes prima facie showing that [she] proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014)

Dinerstein notes that "the university student disability services office [generally] communicates to a law school administrator the reasonable

accommodations to be provided to the student" during this interactive process. (Ex. F). Before a final decision is made, there is generally communication between the office and the administrator about "whether a proposed accommodation would amount to undue hardship or fundamental alteration," all while considering the student's individualized circumstances. (Ex. F). That did not happen here.

Omar proposed a list of reasonable accommodations. However, WSU denied Omar's accommodation request without considering her individual medical circumstances, "contrary to the individualized approach of the ADA." (Ex. B). WSU casually ignored its obligation under the ADA when it "met [Omar] with a blanketed no." (Omar Dep. 67:21). Former WSU Dean Welch told Omar "That's not how we do it here." (Omar Dep. 67:21-67:22). Further, WSU admits that it did not even consider whether it could offer some remote courses and some on-site courses (Welch Dep. 38:20-38:25; Frost Dep. 29:15-29:23), which is exactly what Omar requested. (Ex. B). If there had been an interactive process, then WSU would have had less room to misinterpret her request "to attend 'the classroom or direct faculty instruction' portions of lecture-type courses and seminars remotely" as a request for a "fully remote, distance learning program." (Ex. B).

WSU was wholly inappropriate in the way it handled Omar's disability accommodation concerns. WSU failed to submit any documentation for approval to the ABA regarding Omar's requested aid. (Ex. B). The school also admits that

16

Former WSU Dean Welch saying "that's not how we do it here" was not an appropriate way to respond to concerns about disability accommodations. (Frost Dep., 31).

There must be an individualized approach for every case. (Ex. F). Disabilities may manifest differently for different people. Furthermore, students with the same disabilities do not require the same accommodation. Dinerstein notes that WSU "did not take into sufficient account plaintiff's psychological/mental disabilities, disabilities that made problematic some of the accommodations that the law school had provided to previous students who were blind." (Ex. F). WSU also failed to "make any determination as to whether the particular requests to appear remotely for law school [lecture] classes was reasonable in light of the particular disabilities that Ms. Omar had." (Frost Dep., p. 19). Overall, WSU failed to engage in well-established ADA process as required by law.

The evidence on record provides that Omar's requests were reasonable, and WSU denied that reasonable accommodation without engaging in the interactive process, resulting in Omar being denied meaningful access to the law school program. A reasonable jury would not find otherwise.

> **d. Omar's Proposed Accommodation Does Not Impose a Fundamental Alteration on Wayne State University Law School's Juris Doctor Program**

The ADA does not require institutions to provide accommodations that would impose a fundamental alteration to the program of study, and an alteration is fundamental if it would alter the 'essential nature' of the program. *Alexander,* 469 U.S. at 300.

Here, the essential objective of WSU's juris doctor program is to provide a legal education, which Omar wants to receive. (Ex. B). Omar did not request that WSU lower its academic standard. She is only asking for WSU to accommodate the logistics of her attendance, not to modify its lesson plans or alter its standards. (Omar Dep., 94). WSU claims that Omar requested a "full remote, distance learning program [,] [which would be] a fundamental alteration to the WSU Law School's course of study," but the evidence on record suggests the contrary. (Ex. B). Omar never requested a full remote distance learning program. (Omar Dep., 94). Omar requested only lecture classes be remote. (Omar Dep., 94). She looked forward to attending small group discussions, guest lectures, and clinics in person. (Omar Dep., 95). Moreover, no evidence suggests that Omar attending lectures remotely while participating in clinics and seminars in person would fundamentally alter the program. Further, Dinerstein opines that "the law school's claim that such a request, as well as the request for modified Socratic questioning, would amount to a fundamental alteration of its program or ABA standards is insufficiently developed and non-individualized." (Ex. F).

18

e. **Wayne State University Law School's Approach to the COVID-19 Pandemic Precludes any Claim that Remote Learning Imposes a Fundamental Alteration to its Curriculum**

Omar's proposed accommodation corresponds to WSU's past decisions. WSU told Omar that remote attendance would affect a "fundamental alteration" in the nature of the law school's course of study. (Ex. B). Additionally, WSU claimed that "modifying the pedagogical approach to the program [to remote] would compromise the school's commitment to educating future lawyers who meet standards as required by ABA accreditation." (Ex. B). However, the university required every student--- with or without a disability---to learn remotely during the COVID-19 pandemic. (Welch Dep. 9:20-10:8). "Wayne State Law graduates of 2020, 2021, 2022, and 2023 attended some or most of their law studies remotely." (Ex. B). Yet, WSU has evidently maintained its accreditation.

Remote learning does not fail to satisfy any basic educational standard; hence WSU utilized it during the height of the COVID-19 pandemic in 2020. (Welch Dep. 9:20-10:8). Furthermore, if WSU's on-site 'requirement' was indispensable and not merely marginal, WSU would have never allowed remote learning. Instead, WSU not only offered remote courses but charged full tuition and gave full credit for these remote courses. (Welch Dep. 9:20-10:8). Furthermore, nothing on record provides that the 2020, 2021, 2022, and 2023 WSU graduates received a subpar legal education and were not adequately prepared for a legal career. If 2020, 2021, 2022,

and 2023 WSU graduates can be successful after learning remotely, Omar can as well. "Notwithstanding the differences between emergency-based, institution-wide practice and an induvial reasonable accommodation, [WSU offering remote learning to all students during the COVID-19 pandemic] demonstrates that [WSU] could deliver adequate academic content remotely and do so in a manner that satisfied its own and ABA standards," as noted by Dinerstein. (Ex. F).

WSU also argues that remote learning would fundamentally alter its use of "the Socratic Method, which is by nature an interactive, participation-based teaching methodology that requires in-the-moment discussion between faculty and students that inspires collaboration and active learning." (Ex. B). However, the Socratic Method was used via Zoom during COVID-19. (Welch Dep. pp. 25-26). Evidently, the Socratic Method is not specific to remote or in person (Welch Dep. p. 114).

Furthermore, the Socratic Method is not required in every law school course. Dinerstein, who taught full-time at the American University Washington College of Law from 1983 to 2023, notes that the Socratic Method---where the professor asks few students "a series of hypothetical questions with slight variations in terminology designed to show the limits of their reasoning" ---has been modified or abandoned by several professors. (Ex. F). Now, professors may allow students to opt-out of participation and/or notify students that they will be "on call." (Welch Dep., Ex. 12). Thus, Omar could have been assigned to a first-year professor who does not utilize

the traditional Socratic Method. However, WSU failed to consider Omar's individualized circumstances. (Frost Dep. p. 19).

 Former WSU Dean Welch says that remote learning removes "the in-person nature of the classroom where [they're] all working together and can see each other's faces." (Welch Dep. 29:11-29:13). However, Zoom allows one to use a camera to show their face to other participants. Regardless, one does not have to see another's face to receive a legal education. One does not need to have perfect eyesight to be a law student. For instance, a blind person, like Omar, would not see anyone's face, even if they were in person. (Welch Dep. 29:17-29:20). That does not mean that they are not receiving a legal education.

WSU saying that accommodations for COVID were "different" highlights the very point of this case---disability discrimination. No reasonable juror would find a significant difference between remote and hybrid learning during COVID-19 and remote learning due to several disabilities. Both parties are aware of Omar's request for remote learning. (Ex. B). Further, there is no dispute as to whether WSU has previously implemented remote learning. (Welch Dep., p. 9, 10). No reasonable juror would find that a previously implemented accommodation that did not impose a fundamental alteration before would impose a fundamental alteration now.

WSU also claims that Omar's accommodation request could not be approved because "the [law school's] facilities are not readily prepared for HyFlex

21

instruction." (Ex. B). However, Omar contends that WSU offered HyFlex "as a technical option that was available or possibly available." (Omar Dep., p. 75). Further, Zoom and HyFlex are both readily available for remote access to lectures. WSU Office for Teaching and Learning (herein after "OTL") posted a video titled MMTB: Teaching with HyFlex (08-15-2022). (Ex. A). Thus, WSU has been familiar with HyFlex since at least August 15, 2022. Even if HyFlex or Zoom were not readily available, "the ADA gives specific instruction and requirements to ensure facilities are accessible," including "modifications to existing facilities in order to ensure that the facility is accessible." (Ex. B). However, modifications appear to be unnecessary, as OTL noted "almost all of the classrooms at Wayne State University are equipped with the necessary technology to run a high flex classroom." (Ex. B).

Both Zoom and HyFlex are readily available and "allow for more equitable access across all modes of participation," which is exactly what Omar has requested. (Ex. B; Omar Dep. 107:10). No reasonable juror would find readily available and reasonable accommodations such as HyFlex and Zoom to be a fundamental alteration to the program.

## V.   <u>CONCLUSION</u>

For the reasons stated herein, Omar respectfully requests that this Court GRANT her Motion for Summary Judgment and award her all relief is entitled to and that this Court finds just and proper.

22

Respectfully submitted,

**NACHTLAW, P.C.**

By: */s/ David A. Nacht*
David A. Nacht (P47034)
Attorneys for Plaintiff

Dated: August 28, 2024

### PROOF OF SERVICE

The undersigned certifies that on this 28th day of August 2024, a copy of the foregoing Brief in Support was filed via the Court's CM/ECF system, which will cause an electronic copy to be served on all counsel of record.

/s/ Karina Alvarez
Karina Alvarez, Litigation Paralegal