## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HIND OMAR,

        Plaintiff,

Case No. 23-cv-11689
Hon. Robert J. White

v.

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, in their individual
and official capacity,

        Defendant.

---

| | |
|---|---|
| David A. Nacht (P47034) | Brett J. Miller (P68612) |
| NACHTLAW, P.C. | BUTZEL LONG |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 501 Avis Drive, Suite 3 | 150 W. Jefferson – Suite 100 |
| Ann Arbor, MI 48108 | Detroit, MI 48226 |
| (734) 663-7550 | (313) 225-7000 |
| dnacht@nachtlaw.com | millerbr@butzel.com |

---

**Defendant's Response to Plaintiff's Motion for Summary Judgment**

## Statement of the Issues Presented

1.    Whether Omar, who admits she cannot participate in the Socratic method or conduct legal research with citations independently, is "otherwise qualified" to attend law school when these are essential functions of legal education, and whether her rejection of WSU's offered reasonable accommodations in favor of demanding full remote learning renders her unqualified as a matter of law under the ADA and related statutes.

2.    Whether WSU failed to provide Omar with necessary accommodations when it offered alternatives addressing her stated limitations but denied her demand for full remote learning, which was not supported by her medical documentation, and when Omar abandoned the interactive process by refusing to discuss alternatives and instead filing a lawsuit without ever attending classes or testing the offered accommodations.

3.    Whether Omar's demand for full remote learning for first-year law courses constitutes a fundamental alteration of WSU's law program, given the interactive nature of legal education, the lack of facilities for hybrid learning, and the potential compromise of educational standards and ABA accreditation requirements.

4.    Whether Dinerstein's expert report is inadmissible under Federal Rule of Evidence 702 and should be disregarded in considering Omar's motion for summary judgment, given its lack of relevance, fit, and reliability, and its improper legal conclusions about WSU's program without sufficient factual foundation.

# **Table of Contents**

Controlling Authorities ................................................................ i

Introduction ...............................................................................1

I.  WSU's Extensive Efforts Demonstrate Good-Faith
    Engagement in the Interactive Process. ...............................2

    A.  The Interactive Process Requires Mutual
        Exploration, Not Unilateral Demands. .......................2

    B.  WSU's Actions Exemplify Good-Faith
        Engagement in Accommodating Omar.......................4

    C.  Omar's Rejection of WSU's Accommodations
        Renders Her Unqualified. ..........................................7

II.  Omar Fails to Establish a *Prima Facie* Case of Failure to
     Accommodate............................................................... 10

    A.  Omar Is Not Qualified for WSU's Law Program. ...... 11

    B.  WSU Did Not Deny Omar Necessary
        Accommodations. .................................................. 13

III.  Remote Learning for Lecture-Based Courses
      Fundamentally Alters WSU's Law Program. ...................... 14

IV.  Dinerstein's Expert Report:  Irrelevant and Inadmissible.................. 17

    A.  Dinerstein's Conclusions Do Not Create Genuine
        Issues of Material Fact. ........................................... 17

    B.  Dinerstein's Expert Report Is Inadmissible Under
        FRE 702. ............................................................... 19

        i.  The Conclusions in Dinerstein's Report Lack
            Relevance and Fit. .......................................... 20

        ii.  The Conclusions in Dinerstein's Report Lack
             Reliability. ..................................................... 22

Conclusion ............................................................................. 23

Certificate of Service ............................................................... 24

# Controlling Authorities

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994)

*Brumley v. UPS*, 909 F.3d 834 (6th Cir. 2018)

*Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993)

*Daycab Co. v. Prairie Tech., LLC*, 67 F.4th 837 (6th Cir. 2023)

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)

*Gati v. W. Ky. Univ*., 762 F.App'x 246 (6th Cir. 2019)

*Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996)

*Johnson v. Cleveland City School Dist.*, 443 F.App'x 974 (6th Cir. 2011)

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007)

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014)

*Shaikh v. Lincoln Mem'l Univ.*, 608 F.App'x 349 (6th Cir. 2015)

*Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985)

*Tranter v. Orick*, 460 F. App'x 513 (6th Cir. 2012)

*United States v. Gissantaner*, 990 F.3d 457 (6th Cir. 2021)

*U.S. v. Zipkin*, 729 F.2d 384 (6th Cir. 1984)

Federal Rule of Evidence 702

Federal Rule of Civil Procedure 56(c)

**Introduction**

On August 28, 2024, the parties filed dispositive motions under Fed. R. Civ. P. 56. Wayne State University incorporates by reference its motion for summary judgment, ECF No. 23, which comprehensively recites the undisputed facts and applicable legal standards and cites back to its original brief where arguments overlap.

WSU's motion accurately articulates the legal standards governing disability accommodations. Omar's motion and brief, conversely, presents a fundamentally flawed interpretation of these principles and mischaracterizes the undisputed record. Omar erroneously asserts she can dictate specific accommodations, disregarding precedent that grants institutions discretion in selecting effective accommodations. She also misrepresents her initial demands, claiming limited remote learning when the record clearly shows she sought a comprehensive distance learning program. And, critically, she fails to address the *prima facie* elements required for a failure to accommodate claim under the ADA, § 504, and PWDCRA. Instead, she relies on irrelevant COVID-era comparisons and an inadmissible expert report offering improper legal conclusions without factual foundation.

A review of the record unequivocally demonstrates WSU's good faith throughout the interactive process, in which it offered numerous reasonable accommodations addressing Omar's stated limitations, including assistive technology, on-

campus housing, and modified cold-calling practices.[1] The record also reveals that Omar summarily rejected these alternatives, insisting on her preferred accommodations in a "my way or the highway" approach—an intransigence evident in her own recordings of conversations with SDS staff.

When the record is applied to the proper legal framework, it is clear that Omar cannot prove a *prima facie* case of failure to accommodate. Her own admissions reveal she cannot perform essential functions of legal education, rendering her unqualified for WSU's law program. Even if the Court permitted Omar to recant those admissions, her claims fail because her demanded accommodations are rendered unnecessary to address her disabilities. Further, by abandoning the interactive process while options remained, Omar has placed herself outside the law's protection.

For these reasons, and those in WSU's motion for summary judgment, the Court should deny Omar's motion and grant summary judgment in WSU's favor.

## I.    WSU's Extensive Efforts Demonstrate Good-Faith Engagement in the Interactive Process.

### A.    The Interactive Process Requires Mutual Exploration, Not Unilateral Demands.

The interactive process is a crucial component of the ADA's accommodation framework. As the Sixth Circuit has noted, "The interactive process requires

---

[1] For a comprehensive summary of the demanded accommodations and WSU's response during the interactive process, WSU refers the Court to a demonstrative exhibit attached to its original brief. See ECF No. 23-34, PgID.413-14.

communication and good-faith exploration of possible accommodations." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). However, the law is clear that an institution is not required to provide the specific accommodation demanded by a plaintiff. It is long-standing, established law that the institution "providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996); *see also Smith v. Honda of Am. Mfg., Inc.*, 101 F. App'x 20, 25 (6th Cir. 2004); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004), ("an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.").

Importantly, the ADA does not obligate employers to make on-the-spot accommodations of the employee's choosing. As the Sixth Circuit explained in *Brumley v. UPS*, 909 F.3d 834, 840 (6th Cir. 2018):

> Under the ADA, an employer must engage in an 'informal, interactive process' with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). For employees seeking accommodations, "the interactive process is mandatory, and both parties have a duty to participate in good faith." *Id*. … An employer's refusal to provide an accommodation to the position of the employee's choice immediately upon the employee's request is not, in and of itself, a failure to accommodate under the ADA.

Thus, the purpose of the interactive process is not for the plaintiff to dictate terms, but for both parties to engage in a good faith exploration of effective accommodations. The focus is on finding a reasonable accommodation that addresses the individual's limitations, not on providing the specific accommodation demanded by the individual.

### B.    WSU's Actions Exemplify Good-Faith Engagement in Accommodating Omar.

The undisputed facts demonstrate that WSU engaged in good faith in the interactive process, while Omar's actions and arguments reveal a fundamental misunderstanding of the process:

*First*, WSU accepted most of Omar's accommodation requests as presented, including extended time for exams and assignments, use of personal computer and assistive technology, access to digital in-class materials, and recorded lectures. ECF No. 23-37, PgID.316-17.

*Second*, for the few requests not granted outright, WSU offered reasonable alternatives that directly addressed Omar's stated limitations:

- Commuting difficulties:  WSU offered on-campus housing and transportation assistance. *Id*.

- Classroom anxiety:  WSU offered permission to leave the classroom for breaks, lecture recording privileges, which would cover any gaps if she had to leave the classroom for a break, and collaboration with BSBP to provide assistance

navigating the Law School and campus. *Id*. It also offered to encourage and facilitate students sharing their notes. ECF No. 23-14, PgID.265.

- Cold-calling concerns: WSU proposed modified practices, including advance notice of cold-calling weeks and the ability to opt-out. ECF No. 23-37, PgID.316-17. It also committed to engage in further discussions about accommodations once Omar enrolled, recognizing that specific adaptions would require input from individual professors, who retain discretion in choosing between reasonable accommodations. ECF 23-14 PgID.262-63.

*Third,* WSU's proposed alternatives demonstrate careful consideration of Omar's medical documentation and stated limitations. The tailored nature of these accommodations, addressing specific concerns raised by Omar, reflects WSU's thorough assessment of her individual needs.

*Fourth*, WSU persistently engaged with Omar despite her increasing resistance:

- March 10, 2023: Following Omar's submission of a spreadsheet detailing her demands and justifications, Shohatee discussed potential alternatives. Omar, however, argued against these suggestions, demonstrating unwillingness to consider options other than fully remote classes. ECF No. 23, PgID.111-12.

- March 14/15, 2023:  Omar, Shohatee, and Welch further discussed reasonable accommodations and the alternatives that WSU was proposing. *Id.* at PgID.112.

- March 15, 2023:  Frost attempted to explore Omar's specific limitations in depth. Instead of engaging in this discussion, Omar insisted that the Law School was legally obligated to implement her demanded accommodations without modification. *Id.* at PgID.113-14.

- March 30, 2023: Frost informed Omar that WSU had determined full remote learning was not a reasonable accommodation and sought to discuss alternative options. Omar interrupted this attempt, reiterating her demand for a fully remote program and requesting a written denial, presumably to pursue legal action. *Id.* at PgID.114.

- Post-communication breakdown:  Despite Omar's disengagement, as requested, Frost provided a comprehensive email detailing WSU's decisions and outlining available alternative accommodations. *Id.* at PgID.115-16.

- After Omar's continued disengagement:  WSU's legal counsel advised Omar to re-engage with SDS to continue the interactive process. *Id.* at PgID.116.

Omar ignores these extensive efforts by WSU, instead arguing that WSU failed to engage in the interactive process simply because it didn't accede to all of her exact demands, particularly her request for fully remote learning. This argument

fundamentally misunderstands the nature of the interactive process and the legal standard for reasonable accommodations.

Moreover, Omar's undisputed actions reveal that she, not WSU, was the party unwilling to engage in a true interactive process. When presented with WSU's thoughtfully designed alternatives—crafted to facilitate her full participation while maintaining essential program elements—Omar abandoned the process. She filed this lawsuit without ever attending a class or testing WSU's proposed accommodations. *Id.* at PgID.115-16.

### C.    Omar's Rejection of WSU's Accommodations Renders Her Unqualified.

Omar's rejection of WSU's reasonable accommodations not only demonstrates her failure to engage in the interactive process but also renders her unqualified under disability statutes. As held in *Gati v. W. Ky. Univ.*, 762 F. App'x 246, 252 (6th Cir. 2019), when a university offers reasonable accommodations that address a student's stated limitations, and the student rejects these accommodations, the student is no longer considered a "qualified individual" as a matter of law.[2]

The situation in *Gati* is strikingly similar to this case. WSU offered Omar accommodations directly addressing her stated rationales for requesting remote learning, offering reasonable alternatives that would allow her to participate fully in

---

[2] *See also* WSU's Motion for Summary Judgment. ECF No. 23, PgID.120-22.

the program while maintaining its essential elements. Just as in *Gati*, the breakdown in communications in this case occurred not because WSU failed to engage, but because Omar insisted on a "my way or the highway" approach, rejecting WSU's alternative accommodations by failing to respond to them and instead initiating this lawsuit. This rejection, analogous to the plaintiff's actions in *Gati*, renders Omar unqualified as a matter of law. WSU fulfilled its obligation to offer accommodations that would enable Omar to meet the program's requirements. By rejecting these offers and insisting on her preferred accommodations, Omar has placed herself outside the protection of the law as a qualified individual.

### D.   Omar's Claim of a Flawed Interactive Process Is Legally Baseless.

Omar's argument that WSU denied her a reasonable accommodation is not only factually unsupported, her assertion that a "flawed interactive process" establishes a violation of the law is also without merit and further demonstrates Omar's own misunderstanding of the law. Again, *Gati* is instructive. In rejecting the same "flawed interactive process" argument, the *Gati* court stated:

> Gati also argues that the university's failure to engage in the ADA's required interactive process mandates reversal. "Even if such an interactive process is required in an academic setting," ... this process is not an end in itself—it is a means to find a disabled person a reasonable accommodation... Thus, an employer violates the ADA when his unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee. Here, it wasn't any failure to properly engage in the interactive process that led to the university not

> accommodating Gati's disability. Negotiations broke
> down when Gati refused to consider the university's pro-
> posed accommodation and transferred to another school.

*Gati*, 762 F. App'x at 252 (internal citations omitted).

The burden lies with the plaintiff to demonstrate that the institution failed to accommodate the disability. Omar cannot meet this burden. WSU addressed her limitations as thoroughly set forth above. *See supra* Argument I (B). WSU was not obligated to accept Omar's specific accommodation requests, as it maintains the ultimate discretion to choose between effective accommodations. *Hankins*, 84 F.3d at 800. WSU offered multiple reasonable accommodations addressing Omar's stated limitations. While these differed from Omar's demands, they were within WSU's discretion and designed to effectively meet her needs. Omar fails to identify any limitation that WSU's proposed accommodations did not effectively address; this underscores her inability to demonstrate a failure to accommodate.

Furthermore, just as in *Gati*, negotiations broke down because Omar refused to consider WSU's proposed accommodations. Instead of engaging with the offered alternatives, Omar chose to start another graduate program. This parallel to Gati's actions, where he transferred to another school rather than consider proposed accommodations, demonstrates that Omar's claim of a flawed interactive process is not actionable. The law does not require that a university provide the exact accommodations a student demands, only that it reasonably accommodates the student's

disabilities. Omar's insistence on her preferred accommodations, to the exclusion of all others, does not constitute a failure to accommodate on WSU's part.

## II.  Omar Fails to Establish a *Prima Facie* Case of Failure to Accommodate.

Omar's brief conspicuously neglects to address the *prima facie* case required under the ADA, § 504, and the PWDCRA. These statutes mandate that a plaintiff prove five elements:  (1) she is disabled within the meaning of the ADA, § 504, and the PWDCRA; (2) she is otherwise qualified, with or without reasonable accommodation; (3) WSU knew or had reason to know about her disability; (4) she requested an accommodation; and (5) WSU failed to provide the necessary accommodation. *Johnson v. Cleveland City School Dist.*, 443 F.App'x 974 (6th Cir. 2011). *See also DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

While addressing the qualification element, Omar fails to provide any analysis of whether she can perform the essential program requirements, even with accommodation. Her own admissions indicate she cannot—which is fatal to her claims. Further, Omar incorrectly reframes the fifth element, erroneously suggesting that she can dictate an accommodation and WSU must accept it, unless WSU can demonstrate it is a fundamental alteration of the program. ECF No. 24, PgID.434-37, 439-40. This mischaracterization of the law ignores established precedent:  Omar cannot compel WSU to provide a specific accommodation if another is available. WSU retains the discretion to choose an accommodation that is more economical or easier

to implement. *See* Argument I. WSU exercised this discretion, offering reasonable alternatives which Omar summarily rejected, rendering her claim untenable.

### A.    Omar Is Not Qualified for WSU's Law Program.

Omar's lack of qualification stems from her admitted inability to perform essential program requirements and her abandonment of the interactive process. *Shaikh v. Lincoln Mem'l Univ.*, 608 F.App'x 349, 353 (6th Cir. 2015). In her brief, Omar asserts that she is qualified based on her admission to the Law School, her 2017 BA from the University of Michigan, and her current enrollment in a remote master's program where she takes one to two classes per semester. ECF No. 23, PgID.432-33; ECF No. 23-28, PgID.319. She claims she can meet program requirements without demonstrating knowledge of what those requirements entail.

Despite below standard LSAT scores and GPA, WSU accepted Omar after her third Law School application with the hope that she could meet program requirements. ECF No. 23, PgID.105-08. Omar's extensive list of accommodation demands and subsequent discussions, however, revealed her inability to perform the essential functions of the program, demonstrated as follows:

*First*, she cannot participate in the interactive nature of first-year courses, a fact she maintains in her brief. ECF No. 24, PgID.436.

*Second*, she admits she cannot reference material, consider questions, and respond in class in a timely fashion. ECF No. 24, PgID.436. Unlike other students who

11

work to overcome these challenges and social anxiety, Omar refuses to attempt and hone these essential skills. She, therefore, cannot properly train for her aspired role as a disability advocate litigator, ECF No. 23, PgID.107, as she will be expected to respond in real time while engaging with peers, judges, and clients, referencing materials during hearings, depositions, and meetings. *Id.*

*Third*, she cannot properly cite legal sources, an essential skill for legal practitioners. *Id.* at PgID.119-20.

Omar's maintains her need for a research assistant to perform an essential program requirement—completing citations. ECF No. 23-2, PgID.163-64; ECF No. 24, PgID.434. Proper citation is a graded component of the first-year research and writing course and cannot be outsourced to a "research assistant." ECF No. 23, PgID.119-20. This skill is crucial for legal practice, and the Law School's program aims to train lawyers in such necessary skills. *Id.*

WSU cannot be expected to eliminate an essential function of the program to accommodate Omar. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014). Either Omar cannot perform these essential functions and is thus not qualified, or she has changed her position and in demanding such accommodations she was seeking an unnecessary competitive advantage. Omar's inability to perform these essential functions of WSU's law program, by her own admission, clearly demonstrates that she is not qualified under the legal standards.

**B.     WSU Did Not Deny Omar Necessary Accommodations.**

Omar's brief mischaracterizes the legal standard. Properly framed, the burden lies with Omar to prove that WSU failed to provide necessary accommodations, not merely that it declined to implement her preferred choices. This distinction is crucial. While Omar's brief obfuscates this point, WSU agreed to provide her with most of her requested accommodations, without alterations. It only declined four specific requests in their exact form:  full remote class attendance, elimination of the Socratic method/cold-calling, a research assistant, and a private examination space. ECF No. 23, PgID.123-24.

When considering whether an accommodation is necessary, it must be compared to the purported limitation. Omar's couching of an accommodation is not dispositive. Many students would like to remotely attend all lecture-based classes, which amounts to all first-year courses, and many upper-level classes for convenience and to save commute time. This, again, would be Omar seeking a competitive advantage, not the provision of necessary accommodations that address her stated limitations.

For remote learning, one of Omar's justifications is that it would allow her more study time. Even if this is an acceptable justification, it is cured by WSU's

proposal to offer her on-campus housing to eliminate commute time.[3] *Id*. Her other justifications were also addressed through alternative accommodations that she rejected in her "my way or the highway" approach, including assistive technology in the classroom, permission of breaks to alleviate anxiety, collaboration with BSBP to orient her to campus and reduce anxiety caused by unfamiliarity with the environment, and recorded lectures and access to in-class material to eliminate gaps in information should she leave the classroom for a break. ECF No. 23-24, PgID.413.

Any contradiction between Omar's earlier statements and her current claims regarding the need for a research assistant or in-class participation modifications would undermine the necessity of these accommodations. Should Omar now maintain an ability to cite sources or answer instructor questions in class, the Court should reject these accommodation demands as unnecessary and conclude that WSU did not fail to accommodate Omar.

## III.   Remote Learning for Lecture-Based Courses Fundamentally Alters WSU's Law Program.

Omar's argument that she only requested limited remote learning is a misrepresentation of the record. Her initial demands, as evidenced by her spreadsheet, therapist's letter, and recorded conversations with SDS, clearly indicate a request for a

---

[3] Again, Omar's case closely parallels *Gati*, where the court found that the plaintiff was not qualified under the ADA because the plaintiff rejected the university's reasonable accommodation of on-campus housing to mitigate commuting difficulties. *Gati*, at 762 F.App'x at 252.

14

comprehensive distance learning program without qualifications. ECF No. 23, PgID.109-115. Only after WSU's objections, during this litigation, did Omar belatedly claim willingness to attend rare guest lectures, upper-level clinics, and upper-level discussion-based classes in person.

Despite this semantic shift, her argument still fails to address the fundamental issue: Omar still insists on remote attendance for all first-year courses, a critical period for acclimating to the rigors and interactive nature of legal education.[4] The comparison of her situation to COVID-era remote learning is fundamentally flawed. During COVID, entire classes, including instructors, utilized platforms like Zoom. ECF No. 23-11, PgID.242. This created a uniform learning environment for all participants. *Id*. In contrast, Omar's request would place her as the sole remote participant in otherwise in-person classes. This arrangement presents significant challenges:

*First*, WSU's classrooms are undisputedly not equipped for hybrid learning. ECF No. 23-27, PgID.316. Omar has presented no evidence to the contrary, and she admitted to not knowing whether the classrooms were so equipped. ECF No. 23-2, PgID.152.

---

[4] While the Court may not make credibility determinations at this stage, it is worth noting that Omar's purported rationale for remote learning—the need to control her environment—applies equally to the situations she now claims she could attend in person, undermining the consistency of her argument.

*Second*, as the only remote student, Omar would face difficulties hearing the instructor and other students, and vice versa, which is not entirely cured by technology in the classroom, as even HyFlex learning has significant limitations in discussion-based/student-led classes. ECF No. 23, PgID.126.

*Third*, seamlessly integrating a single remote student into in-person discussions poses substantial challenges for instructors. *Id*.

*Fourth*, instructors would necessarily need to modify their curriculum and teaching methods to accommodate a single remote student in an otherwise in-person class. *Id*.

Omar's reference to WSU's video about HyFlex technology[5] is irrelevant. The undisputed evidence shows that WSU Law School's classrooms are not equipped with such technology. The mere existence of an informational video does not equate to implementation in specific facilities.

These factors, which Omar has not and cannot contest, establish that a fully remote program exclusively for Omar would fundamentally alter the nature of WSU's law program, particularly for first-year courses where interactive engagement and peer learning are crucial. *Id*. at PgID.125-27.

---

[5] Despite referencing evidence, she fails to attach any support. ECF No. 24, Pg.ID.444.

## IV.   Dinerstein's Expert Report:  Irrelevant and Inadmissible.

As a threshold matter, Dinerstein's expert report cannot serve as a basis for Omar's motion for summary judgment. Fed. R. Civ. P. 56(c) requires that the court only consider evidence that would be admissible at trial. *See Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012); *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (refusing to consider evidence from the plaintiff's expert where the testimony was not admissible under FRE 702). Under Fed. R. Civ. P. 56(c)(2), WSU objects to the consideration of Dinerstein's report because "a fact cannot be presented in a form that would be admissible in evidence." As demonstrated below, the Court should disregard Dinerstein's conclusions because they do not create genuine issues of material fact and his expert report is inadmissible under FRE 702.

### A.   Dinerstein's Conclusions Do Not Create Genuine Issues of Material Fact.

Omar relies on the expert report of Robert Dinerstein, a former law professor at American University Washington College of Law, to support her factual and legal positions. His conclusions, as cited by Omar in support of this motion, do not alter the outcome of this case or create genuine issues of material fact. A closer examination of Dinerstein's key assertions, as relied upon by Omar, reveals their irrelevance to the legal analysis at hand:

1.   Reasonableness of Remote Attendance:  Dinerstein's conclusion that remote attendance is reasonable, ECF No. 24, PgID.429, is irrelevant to the legal

analysis. The standard is not whether a plaintiff's preferred accommodation is reasonable, but whether WSU has provided a reasonable accommodation. WSU retains ultimate discretion to select a more economical or easily implemented accommodation. *See supra* Argument I, II(B).

2.    Interactive Process Engagement:  Dinerstein's assertion that WSU did not properly engage in the interactive process, ECF No. 24, PgID.429, 437-38, is unsupported by the record. The undisputed evidence shows that WSU properly engaged in the process, while Omar abandoned it. *See supra* Argument I(B). Moreover, a flawed interactive process alone does not constitute a violation of the law. *See supra* Argument I(D).

3.    Omar's Qualification for Law School:  Dinerstein's conclusion that Omar is qualified to meet the essential requirements of law school, ECF No. 24, PgID.434, is unsupported by the record. His report fails to address WSU's specific program requirements or consider Omar's own admissions regarding her inability to participate in interactive first-year courses, reference materials, respond timely in class, and properly cite legal sources. *See supra* Argument II(A).

4.    Fundamental Alteration of the Program:  Dinerstein's opinion that remote attendance for all lecture courses and modification of cold-calling practices does not fundamentally alter the program, ECF No. 24, PgID.440, 442, is not supported by the record because it is based on his experience at a different institution.

He lacks knowledge of WSU Law School's specific program and requirements, which do utilize the Socratic method. ECF No. 23-31, PgID.329-403. His opinion on whether these changes would require curriculum and methodology alterations is therefore speculative and unreliable.

5.     COVID-Era Remote Learning Comparison:   Dinerstein's conclusion that WSU's COVID-era remote learning proves it could offer a program where Omar is the only remote student, ECF No. 24, PgID.442, is unsupported by the record, as it fails to consider crucial distinctions between fully remote and hybrid models. This oversimplification undermines the validity of his argument, which is no different than counsel's argument. See Argument III.

In assessing this case, the Court should rely on the record evidence and applicable case law, not on unsupported factual determinations and legal conclusions from an expert whose expertise stems solely from his experience as a professor at a different institution. Dinerstein's report, grounded in erroneous legal analysis and devoid of specific knowledge about WSU Law School's program, fails to create genuine issues of material fact. Consequently, it should be disregarded in the Court's summary judgment analysis.

**B.     Dinerstein's Expert Report Is Inadmissible Under FRE 702.**

In assessing the admissibility of expert testimony, courts have a duty to act as a "gatekeeper." *United States v. Miller*, No. 23-5485, 2024 U.S. App. LEXIS 20520,

at *21 (6th Cir. Aug. 12, 2024) (*citing Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). Under amended FRE 702, Omar bears the burden of "demonstrate[ing] to the [C]ourt that it is more likely than not" that Dinerstein is sufficiently qualified to offer his proposed testimony; that his opinions are "based on sufficient facts or data"; that the opinions are the "product of reliable principles and methods"; and that they reflect a "reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Sixth Circuit has interpreted FRE 702 to impose three requirements for admissible expert testimony: (1) the qualifications of the expert, (2) the relevance of that about which the expert intends to testify, and (3) the reliability of the methodology and underlying data employed by the expert. *Daycab Co. v. Prairie Tech., LLC*, 67 F.4th 837, 853 (6th Cir. 2023).

This Court should exercise its gatekeeping function and exclude Dinerstein's opinions because they are not based on sufficient facts, invade the province of the Court and the jury, and are unreliable.

### i. The Conclusions in Dinerstein's Report Lack Relevance and Fit.

For expert testimony to be admissible under FRE 702 and *Daubert*, it must be sufficiently tied to the facts and evidence in the case and assist the trier of fact. *Daubert*, 509 U.S. at 591. In other words, expert testimony must be relevant, helpful, and "fit" the case. *Id*.

As explained above, Dinerstein's opinions are not based on sufficient facts. His report demonstrates that he knows nothing about WSU Law School's program— it does not indicate that he spoke to anyone at WSU, either at the Law School or SDS, or reviewed any documents about the program, curriculum, or classroom technology capabilities to be able to form an opinion about WSU's interactive process engagement, Omar's qualifications for law school, or whether Omar's demand to take all lecture courses remotely did not amount to a fundamental alteration of WSU's Law School program. ECF No. 24-10, PgID.738-44.

Furthermore, expert testimony is not helpful if it invades the province of the judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts. *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). The Sixth Circuit has consistently held that expert testimony on questions of law is impermissible. In *U.S. v. Zipkin*, the court held that expert testimony on the law is impermissible because "[i]t is the function of the trial judge to determine the law of the case." 729 F.2d 384, 387 (6th Cir. 1984). Similarly, in *Chavez v. Carranza*, the court reaffirmed that an expert opinion on a question of law is impermissible. 559 F.3d 486, 498 (6th Cir. 2009).

Dinerstein's opinions here are improper as they invade the province of the judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts. He is clearly making inappropriate factual and legal

determinations about qualifications, what is reasonable, and what constitutes a fundamental alteration of WSU's Law School's program. ECF No. 24-10, PgID.738-44. In doing so, he provides an incorrect assessment of the law, wrongly suggesting that Omar, not WSU, has the ultimate discretion to select an accommodation and that a flawed interactive process alone constitutes a violation of law. *Id*.; *see supra* Argument I(D).

The Sixth Circuit has specifically addressed this issue in *Berry v. City of Detroit*, holding that although expert testimony can embrace the ultimate factual issue to be decided by the trier of fact, an expert cannot express a legal conclusion. 25 F.3d 1342, 1353-54 (6th Cir. 1994). Dinerstein's report runs afoul of this principle by offering legal conclusions about the reasonableness of accommodations and the fundamental alteration of WSU's program.

Moreover, while attorneys can be acceptable expert witnesses, they cannot be used "as a conduit to feed into the case desired legal conclusions." *Frontczak v. City of Detroit*, 2020 U.S. Dist. LEXIS 212940, at *8 (E.D. Mich. 2020). Dinerstein's report appears to do exactly that, offering legal opinions about the ADA process and WSU's obligations without proper factual foundation.

### ii.    The Conclusions in Dinerstein's Report Lack Reliability.

The hallmark of admissibility under *Daubert* and its progeny is that the expert employs a reliable methodology. *Daubert*, 509 U.S. at 592-93. Factors to consider

when determining whether technical, scientific expert testimony is reliable under *Daubert* and Sixth Circuit law include:

> whether (1) a theory or technique can be and has been tested, (2) the theory or technique has been subjected to peer review and publication, (3) there is a known or potential rate of error and whether there are standards for controlling the error, and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community.

*United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021). To warrant admissibility, an expert's methodology must be reliable at every step of the way. *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (*citing Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222-23 (10th Cir. 2003)).

Dinerstein's report lacks any indicia of reliability. Nowhere in his 7-page report does he discuss his methodology, let alone provide any support for it. He merely restates Omar and her attorney's factual and legal conclusions and calls them "expert" opinions because he was a law professor and he says so. ECF No. 24-10, PageID.739 (stating that his report is based on his experience). As such, the Court should exclude Dinerstein's expert report in its entirety.

## Conclusion

The record evidence raises no genuine disputes of material fact that WSU did not fail to accommodate Omar. Under Fed. R. Civ. P. 56(f)(1), the Court should grant summary judgment in WSU's favor.

Respectfully submitted,

BUTZEL LONG, A professional corporation

By:  */s/ Brett J. Miller*
     Brett J. Miller (P68612)
     Attorneys for Defendant
     150 W. Jefferson, Suite 100
     Detroit, Michigan 48226
     (313) 225-7062
Dated:  September 18, 2024     millerbr@butzel.com


## Certificate of Service

I hereby certify that on September 18, 2024, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By:  */s/ Brett J. Miller*
     Brett J. Miller (P68612)