## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HIND OMAR,

      Plaintiff,

v.

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, in their individual
and official capacity,

      Defendant.

Case No. 23-cv-11689
Hon. George Carem Steeh

---

| | |
|---|---|
| DAVID A. NACHT (P47034) | Brett J. Miller (P68612) |
| NACHTLAW, P.C. | Sarah L. Nirenberg (P77560) |
| Attorneys for Plaintiff | BUTZEL LONG, |
| 501 Avis Drive, Suite 3 | Attorneys for Defendant |
| Ann Arbor, MI 48108 | 150 W. Jefferson – Suite 100 |
| (734) 663-7550 | Detroit, MI 48226 |
| dnacht@nachtlaw.com | (313) 225-7000 |
| | millerbr@butzel.com |
| | nirenberg@butzel.com |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT OF ISSUES PRESENTED.............................................. vi

I. INTRODUCTION ...................................................................................1

II. COUNTERSTATEMENT OF MATERIAL FACTS.............................2

III. STANDARD OF REVIEW ..................................................................6

IV. ARGUMENT.........................................................................................7

    a. Omar has Established a Prima Facie Case that WSU failed to Accommodate her Disabilities. ....................................................................................7

       i. Omar is "Otherwise Qualified" to Attend Law School ...................................8

         1. Omar Can Perform Essential Functions of Legal Education ....................8

           *a. The Socratic Method* ...............................................................8

           *b. Research Assistant* ...............................................................10

         2. Omar Did Not Reject Reasonable Accommodations Offered by WSU Because It Never *Offered* Reasonable Accommodations.............................11

           *a. Accommodations* ...............................................................11

           *b The Gati Case* ...............................................................13

       ii. Omar Can Establish that WSU Failed to Provide her With Necessary Accommodations.................................................................................15

         1. Omar's Demanded Accommodations Were Reasonable .........................15

         2. Omar Did Not Abandon the Interactive Process Given that WSU Failed to Engage in the Interactive Process.................................................................17

    b. Remote Learning for First-Year Courses Does Not Fundamentally Alter WSU's Law Program.........................................................................20

c. Sovereign Immunity Does Not Bar Omar's Claims for Monetary Damages and Retrospective Relief ................................................................................................22

V. CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)......................................7

*Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005) ...............................................................................................................25

*Board of Curators of University of Missouri v. Horowtiz*, 435 U.S. 78, 79 (1978) 24

Brown v. Board of Education, 347 U.S. 483, 493, 74 S. Ct. 686, 98 L. Ed. 873 (1954)...........................................................................................................25

*Brumley v. UPS*, 909 F.3d 834, 840 (6th Cir. 2018), citing *Kleiber*, 485 F.3d .......17

*Chiles v. Mach Shop, Inc.*, 238 Mich. App. 462, 472, 606 N.W.2d 398, (Mich. Ct. App. 1999) .....................................................................................................8

*Faford v. Grand Trunk W.R.R. Co.*, 335 F.R.D. 503, 505 (E.D. Mich. 2020) ........14

*Goss v. Lopez*, 419 U.S. 565 (1975) .......................................................................24

*In re Smith*, Nos. 355077, 355677, 2021 Mich. App. LEXIS 4074, at *12 (Ct. App. July 1, 2021) .......................................................................................................14

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) .....................17

*Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998) ...............................................................................................................8

*Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018) ................................8

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) .......... 17, 18

*McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997)...........................................................................................................8

*Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2019 U.S. Dist. LEXIS 26467, at *9 (S.D. Ohio Feb. 20, 2019) ........................................................... 22, 23, 24

*Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015).................15

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (6th Cir. 2008) ..........13

*Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014)......................................................7

*Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016)............................7

*United States v. Georgi*a, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006) .............23

*Watson v. Veterans Evaluation Servs.*, No. 23-1109-HLT-GEB, 2023 U.S. Dist.
  LEXIS 167744, at *5 (D. Kan. Sep. 20, 2023) ..................................................14

## Statutes

29 C.F.R. §1630.2(o) ...............................................................................................14

29 C.F.R. §1630.2(o)(3)..................................................................................... 17, 18

42 U.S.C.S. § 12201(d)............................................................................................20

## Rules

Fed. R. Civ. P. 56(a)..................................................................................................7

Fed. R. Evid. 702 ......................................................................................................9

## STATEMENT OF ISSUES PRESENTED

1.      Whether Omar has established a prima facie case of failure to accommodate pursuant to the American with Disabilities Act and the Rehabilitation Act.

2.      Whether Omar is an otherwise qualified individual pursuant to the American with Disabilities Act and the Rehabilitation Act.

3.      Whether Omar's accommodations were reasonable pursuant to the American with Disabilities Act and the Rehabilitation Act.

4.      Whether WSU failed to engage in the interactive process as mandated by the American with Disabilities Act.

5.      If WSU did engage in the interactive process, whether it did so in good faith.

Plaintiff Hind Omar (hereinafter referred to as "Omar"), by and through her attorneys, NACHTLAW, P.C., submits her Brief in Opposition of Defendant Board of Governors of Wayne State University's (hereinafter referred to as "WSU") Motion for Summary Judgment as follows.

## I.      <u>INTRODUCTION</u>

WSU, in its questions presented in its Motion for Summary Judgment, highlights the very ignorance the institution showed in handling Omar's accommodations requests. WSU continues to unfairly insist that Omar's accommodations were not reasonable due to a request for "full remote learning," yet WSU cannot point to a single piece of evidence that she ever did, in fact, request, full remote learning. Omar repeatedly attempted to clarify her position, even though they consistently told her, "that's not how we do things here." They held this incorrect position even after Omar retained counsel to act as an advisor throughout the process. They now continue to hold on to this position despite Omar's responses, at deposition, confirming that she never made a request for fully remote learning.

WSU's arguments are flawed; Omar is in fact an otherwise qualified individual. Her accommodations – the ones she *actually* requested – were reasonable. WSU failed to engage in the interactive accommodations project and improperly denied Omar reasonable accommodations.

WSU confuses the bureaucratic maze it threw Omar into as engaging in the

1

interactive process, which is simply not fair. When Omar turned to Student Disabilities Services to engage in the interactive process, they simply deferred to Dean Brandi Welch's and other law school staff's decisions. Welch made the decision about accommodations not after coordinating and meeting with disability experts or with individuals with the necessary specialized knowledge, but after consulting with an associate dean. The individuals WSU forced Omar to interact with lacked the authority to engage in the process.

WSU denied her accommodations and simply closed shop; when Omar highlighted how these accommodations were insufficient and needed to be modified, WSU shut down and refused to engage in the interactive process. WSU should not be granted any relief for their unwavering commitment to misinterpreting Omar's requests for reasonable accommodations.

## II.  COUNTERSTATEMENT OF MATERIAL FACTS

Omar incorporates her Statement of Material Facts from her Motion for Summary Judgment here. [ECF No.24]

Despite any "issues" WSU now feels there may have been with Omar's profile and motivations, WSU admitted her and continued to insist she attend even after denying her the reasonable accommodations she sought. (ECF No 24-9; ECF No 24-2, PageID. 461, (Page 52); ECF 24-6, PageID. 612-613).

On February 2, 2023, Omar talked to Shohatee about her proposed

2

accommodations. (ECF No. 24-2, PageID.463(pp.57-58). Shohatee told Omar to talk to Welch instead. (ECF No. 24-6, PageID.551). Accordingly, Omar met with Welch via Zoom to discuss her proposed accommodations and establish "a cohesion between SDS and the law school so there was no disconnect in communication." (ECF No. 24-4,PageID.519(p.16); ECF No. 24-2, PageID.465(pp.65-66) 65:24-66:3; ECF 24-6, PageID.544). During this meeting, Omar only briefly relayed her accommodation requests before Welch met her with disregard, dismissive language, and resistance. (ECF No. 24-2, PageID.465(p.66)). Welch swiftly told Omar "We don't do that here, that's not how it's done here, we've never done that before, that is not something we can do" to communicate "how accommodations had typically been implemented at the law school." (ECF No. 24-2, PageID.465(p.66);ECF No. 24-4,PageID.519(p.16). She immediately said "no" to Omar's request for a private room for examinations, recorded lectures, and an assistant to help take notes without explanation. (ECF No. 24-2, PageID.465(p.65-67). Consequently, Omar's willingness to attend guest lectures, clinics, etc. in person was never explored. (ECF No. 24-2, PageID.472(pp. 95-96)).

Welch immediately denied all Omar's accommodation requests, even those she received her entire life. (ECF No. 24-2, PageId.465(Page 66); ECF No. 24-6, PageID. 568). Following this initial disheartening conversation, Omar emailed Welch a spreadsheet of her proposed accommodations. (ECF No. 24-6, PageID. 547-

5500; ECF No. 24-2, PageId.465(Page 68)). Upon receipt, Welch consulted with WSU Dean of Academic Affairs Dean Settlage ("Settlage"), rather than the qualified SDS office. (ECF No. 24-4,PageID.521(pp.22-23)). Welch and Settlage "had not seen [Omar's proposed accommodations] before, so they assumed they were impermissible. (ECF No. 24-4,PageID.519(p.16)). WSU made no other considerations. "Remote learning in part was not discussed. It was not even contemplated by [WSU law school officials] or the SDS office." (ECF No. 24-4,PageID.526(p.45))." Welch and Settlage decided on their own that Omar's request for partial remote learning was a "fundamental alteration" and their decision was not going to change. (ECF No. 24-4,PageID.525(p.38)). SDS did not decide, the law school did. (ECF No. 24-4,PageID.525(p.38)).

Shohatee initially told Omar that "obviously, given the nature of [her] condition. . ., [they could] definitely talk about some remote components just to make it more accessible to [her]." (Page 18, lines 5-8 of ECF No. 23-14, PageID. 261). However, in early March 2023, SDS told Omar that any concerns should be discussed in further detail with Welch. (ECF No. 24-6, PageID. 551). That same month, SDS also confirmed that it was waiting for Welch's decision about Omar's accommodations request. (ECF No. 24-6, PageID.553). SDS served as a mere messenger of Welch and Settlage. *Id*.

On March 30, 2023, WSU denied a "full remote, distance learning program,"

4

something Omar never requested. (ECF No. 24-6, PageID.601; (ECF No. 24-4,PageID.520(p.20)).; ECF No. 24-2, PageID.472 (P.94)). WSU did not provide an answer for the other requests. (ECF No. 24-6, PageID.602). That same day, Omar asked Welch for a written explanation as to why WSU refused to accommodate her. (ECF No. 24-4,PageID.524(p.37); ECF No. 24-6, PageID.608-609). However, she was ignored. (ECF No. 24-6, PageID.568). Omar again requested a written explanation on April 5, 2023. (ECF No. 24-6, PageID.606-607). That same day, Welch suddenly told Omar to direct any questions to SDS, although WSU already established that Welch was the one who decided to refuse accommodation. (*Id*. at PageIDs. 553, 568, 571; (ECF No. 24-4,PageID.525(p.38)).

According to Welch's instruction, Omar immediately emailed SDS to discuss her accommodation request. (ECF 24-6). SDS then told Omar that "after consultation with the Law School," her request for a "fully remote, distance learning program" was denied. *Id*. at 33. Not only did WSU deny a "fully remote program," something Omar never requested, but it also refused to discuss her proposed accommodation. (ECF No. 24-4, PageID.520(p.20); ECF No. 24-2, PageID.472(P.94). Omar believed *partial* remote education was reasonable given her several disabilities, which are supported by "medical documentation regarding multiple diagnoses." (ECF No. 24-2, PageId.464(p.61);PageID.481(p.81); ECF 24-6, PageID.549). She also emphasized that she was in no way attempting to alter or

forgo any essential part of the program. (ECF 24-6, PageID.601); ECF No. 24-2, PageID.475 (P.108). SDS agreed that Omar's condition called for partial remote learning; however, WSU still denied a "fully remote education," something Omar never requested, and something WSU previously utilized, because it "fundamentally altered" its program. (ECF 24-6, PageID.601).

Omar then continued to communicate with WSU, attempting to engage in the interactive process despite being shut down. (ECF No. 24-4,PageID.524(p.37); ECF No. 24-6, PageIDs. 572, 577, 582, 586-587, 606-609) She did hire counsel in an advisory role. Through counsel, Omar attempted to continue the interactive process by explaining why the accommodations offered were unreasonable based on her particular needs. (ECF No. 24-6, PageID.587-592). Counsel's letter was an invitation to continue discussions, as it requested explanations for the denials. (*Id.*).

There was no attempt to modify or engage in the interactive process. (ECF No. 24-2, PageID.465(P.66); (ECF No. 24-4,PageID.519(p.16). It held its position that the accommodations were enough. (ECF No. 24-6, PageID.577, 586) WSU, in its reticence, failed to engage in the interactive process. Omar had no choice but to not start in the Fall of 2023, even though WSU continued to insist she attend with the unreasonable accommodations. (ECF No. 24-6, PageID. 612-613).

## III.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, a court must view the evidence "in the light most favorable to the opposing party" and "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). "A dispute of material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.   **ARGUMENT**

WSU is not entitled to summary judgment because the undisputed evidence on record does not support of WSU's argument. Weighing the evidence in the light most favorable to Omar, this Court should deny WSU's Motion.

### a. **Omar has Established a Prima Facie Case that WSU failed to Accommodate her Disabilities.**

As extensively argued in Omar's Motion for Summary Judgment, she has established a prima facie case under the American with Disabilities Act (hereinafter referred to as the "ADA"), the Rehabilitation Act (hereinafter referred to as "504"), and Michigan's Persons with Disabilities Civil Rights Act (hereinafter referred to as the "PDCRA"). To establish a violation of Title II of the ADA, Omar must demonstrate that she is a qualified individual, that she requested a reasonable

7

accommodation, and that WSU failed to provide the reasonable accommodation. *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998). Analysis of ADA claims generally apply to 504 and PDCRA claims. See *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997). See also *Chiles v. Mach Shop, Inc.*, 238 Mich. App. 462, 472, 606 N.W.2d 398, (Mich. Ct. App. 1999).

### i.  Omar is "Otherwise Qualified" to Attend Law School

A plaintiff is a "qualified individual" if she is disabled and can meet the requirements of the program with or without reasonable accommodations. *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). It is undisputed that Omar is disabled. (ECF No. 24-3, PageID.494(p.16); ECF No. 24-2,PageID.452(p.14); ECF No.24-5). Omar maintains that she is otherwise qualified, a fact supported by WSU's insistence that she enroll. (ECF No. 24-6, PageID. 612-613).

### 1.  Omar Can Perform Essential Functions of Legal Education

It cannot be reiterated enough that Omar was not requesting full-time remote education; she was planning on participating in-person and was asking for accommodations for her participation. (ECF No. 24-2,PageID.469(p.83)). WSU incorrectly states that Omar could not participate in the essential functions of law school.

### a.  The Socratic Method

8

WSU overemphasizes the importance of the Socratic Method in its traditional format as an essential functions of law school. Omar was not asking to circumvent the Socratic method. (ECF No. 24-2, PageID.475 (P.108)). Rather, Omar wanted to modify the logistics of her attendance to "focus on the material rather than social barriers." (ECF No. 24-2,PageID.469(p.83)). Omar can interpret and analyze the law as required by WSU. (ECF No. 24-2, PageID.475(p.108)).

To this specific point, expert Dinerstein[1] comments:

"The stereotypical view of Kingsfield-inspired Socratic questioning—where the faculty member focuses on only a few students for an entire class, asking them a series of hypothetical questions with slight variations in terminology designed to show the limits of their reasoning—is largely a thing of the past. In my experience, even faculty who would consider themselves practitioners of the Socratic arts have adapted the pure form to allow for such variations as (1) dialogues with multiple students in a class session; (2) opt-outs by students (either at the time of the question—"I pass"—or with prior notification); (3) notice to an entire row of students that they will be "on" for next week's classes; and so on."

---

[1] Dinerstein is a proper expert in this case. His testimony comports to Fed. R. Evid. 702. Dinerstein currently serves as chair of the ABA Commission on Disability Rights. He taught several disability law courses as a full-time professor at American University Washington College of Law from 1983 to 2023. (ECF No. 24-7) There, he also served as the Director of Clinical Programs (189-1996; 2008-2018), Director of the Disability Rights Law Clinic (2005-2020; 2021-2023), the Principal Investigator for the Open Society Foundations Disability Rights Fellow Program (2012-2020), Associate Dean for Experiential Education (2012-2018), and Acting Dean (2020-2021). (ECF No. 24-7) Additionally, Dinerstein has several publications that speak directly to disability law. (ECF No. 24-7). Dinerstein's expert testimony is akin to the testimony allowed by the Court in *United States v. Ledbetter*, 929 F.3d 338 (2019). Like the experienced police whose work with gangs generally allowed him to testify as an expert about gangs in a specific-gang case, Dinerstein's experience in academia, practice, and policy advocacy, permits him, as an expert, to determine generally about whether WSU engaged in an interactive process and about legal academia.

(ECF No. 24-10, PageID.743, ECF No. 24-7). Critically, he noted that "it is critical that those in the law school who are consulted on the matter look critically at the question and not respond reflexively with 'Socratic dialogue is an essential characteristic of the program.'"

Critically, WSU has previously utilized "the Socratic Method, which is by nature an interactive, participation-based teaching methodology that requires in-the-moment discussion between faculty and students that inspires collaboration and active learning," via Zoom. (ECF 24-6; ECF No. 24-4, PageID.521-522(pp.25-26)). Then, WSU professors facilitated the "back and forth interaction[s] [that commonly occur] between students and faculty…" remotely. (ECF No. 24-4, PageID.521(p.25)). No evidence on the record indicates a fundamental difference between a back-and-forth interaction on Zoom and in person. The importance of this absence of evidence is substantiated by the fact that WSU refused to discount tuition fees for its law students who attended remotely during the COVID-19 pandemic. (ECF No. 24-4, PageID.517-518(pp.9-10)). A remote and in person legal lecture are fundamentally equivalent.

### b. Research Assistant

WSU's next attack on Omar's accommodations focuses on the research assistant. (ECF No. 25, PageID.764). In undergraduate, Omar completed a 30-page research paper. (ECF No. 24-2,PageIDs. 454-455). The school granted her a research

assistant to help her with citations; nonetheless, she would have been able to write the paper without the research assistant with more "time, visual exhaustion, and an unnecessarily high requirement of effort." (ECF No. 24-2, PageID.455(pp.25-26)). In her current master's program, where she does not have an assistant, she is expected to write memorandum, also expected of law students. ECF No. 24-2, PageID.472 (p.93), 479(p.124), 459(p.43), 484(p.143). Although Omar has not requested much accommodation, she is successfully completing the master's program. (ECF No. 24-2, PageID.472(P.93); 484(p.143)) Omar is qualified to attend WSU as well.

Omar's request for a research assistant is interwoven with her accommodations. Perhaps the research assistant would not be necessary given a combination of *partial* remote learning with other accommodations. WSU failed to have these conversations with Omar, as part of the interactive process.

### 2. Omar Did Not Reject Reasonable Accommodations Offered by WSU Because It Never *Offered* Reasonable Accommodations

#### a. Accommodations

WSU's offered accommodations were not *reasonable* due to the fact that it failed to engage in the interactive process. Upon reviewing, amongst other discovery items, Omar's requests, WSU's offered accommodations, and the correspondence

between Omar and WSU, Dinerstein found that WSU failed to engage in the interactive process and to perform an individualized assessment:

> "As explained in the body of this report, in my opinion, there were a number of ways in which Wayne State University Law School and University officials failed to give adequate consideration to the reasonable accommodations1 that plaintiff sought. Plaintiff is a qualified individual with disabilities who is able to meet the essential requirements of the law school program with reasonable accommodations. The University and law school rejected her request for remote attendance for certain classes without engaging in an individualized evaluation of whether such a request was reasonable. The law school's claim that such a request, as well as the request for modified Socratic questioning, would amount to a fundamental alteration of its program or ABA standards is insufficiently developed and non-individualized. The law school's rejection of limited remote learning and modified questioning, as well as some other requested reasonable accommodations, did not take into sufficient account plaintiff's psychological/mental disabilities, disabilities that made problematic some of the accommodations that the law school had provided to previous students who were blind. In this respect, the law school did not address plaintiff's individualized circumstances."

(ECF No. 24-10, PageID.739) [internal references omitted]. WSU could not have offered Omar reasonable accommodations when it failed to follow the interactive process.

Looking at some of the specifics it offered, provision of assistive technology, on its face, is not enough. Omar requires specialized technology. WSU did not offer any sort of guarantees on what this assistive technology would look like and if it would be available in every class. Access to a distraction-reduced study environment was given in the undergraduate library, which would require leaving the law school and lose access to resources for law students typically only available at the law

library. On-campus housing would affect her entire family's life, since she is married and has kids. Permission to leave class when she felt anxious still causes anxiety and puts the onus on her to make up for material lost.

These accommodations did not address the full scope of her sight issues. When Omar tried to discuss this matter with WSU after its March 30, 2023 decision through counsel, WSU refused to engage. WSU's supposed "evidence" of engaging in the interactive process is a bureaucratic maze to give the appearance of a process; WSU had made up its mind to reject Omar's accommodations early.

### b. The Gati Case

WSU's reliance on *Gati* is misguided and should not be relied on by this Court. An unpublished case, *Gati*, as cited by WSU, further relies on an *employment* case, *Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099 (6th Cir. 2008). Even if the Court were persuaded to apply this principle in the educational context, *Gati* is distinguishable from the present matter. There, the university successfully argued that its counseling courses could not be offered remotely, which is why remote courses were never offered. *Gati*, 762 F. App'x at 251.

Contrarily, WSU Law School's primary purpose is to prepare students to be lawyers, who can practice both in person and remotely. Several legal proceedings in and out of the Sixth Circuit's jurisdiction have been held remotely. See *Watson v. Veterans Evaluation Servs.*, No. 23-1109-HLT-GEB, 2023 U.S. Dist. LEXIS

167744, at *5 (D. Kan. Sep. 20, 2023) (holding that Zoom provides for real time interaction, which is a hallmark of court hearings); See also *Faford v. Grand Trunk W.R.R. Co.*, 335 F.R.D. 503, 505 (E.D. Mich. 2020) (holding that depositions do not have to be in-person and witnesses can participate remotely); See also *In re Smith*, Nos. 355077, 355677, 2021 Mich. App. LEXIS 4074, at *12 (Ct. App. July 1, 2021) (holding that a virtual hearing does not result in fundamental unfairness). Unlike the university in *Gati*, WSU has previously offered remote, legal courses and maintained its accreditation. (ECF No. 24-4, PageID.517-518(pp.9-10)). Thus, WSU cannot establish that remote learning is "unreasonable" at its law school.

Additionally, unlike the university in *Gati*, WSU did not offer any reasonable alternative to remote learning. An alternative must not only be effective but must also address the barrier(s) which result from disability. 29 C.F.R. §1630.2(o). Here, because Omar is blind, she faces extreme visual fatigue when navigating campus, worsened when reading material in class She also requires assistance navigate large lecture halls. Once she makes it to her seat, she routinely uses bulky, extensive assistive technology to effectively use her laptop. (ECF No. 24-3,PageID.497(p.26); (ECF 24-2,PageID.466(p.71)). While Omar can transport her assistive technology to some degree, this technology is impractical to transport during her expected 40-minute commute. (ECF 24-6, PageID.549). Once the technology is installed in the classroom, it takes Omar twenty minutes to do what a non-disabled student can do

14

in seconds, which impedes the flow of the course. (ECF 24-2,PageID.458(p.40), 471(p.90)). If Omar sits in front of the room, her technology distracts other students. (ECF 24-2,PageID.466(p.71)). But when she sits in the back of the room, her hearing is compromised, and anxiety disorder is triggered. *Id*.

### ii. Omar Can Establish that WSU Failed to Provide her With Necessary Accommodations

WSU claims that Omar's specific requests were not necessary to address her disabilities; Omar, the disabled person in question, her doctors, and Dinerstein disagree with this contention. WSU further argues that Omar abandoned the interactive process after WSU refused to analyze her specific needs, rejected her accommodations, and failed to discuss her pushback after the rejection; the evidence shows that WSU completely failed to engage in the interactive process and Omar continued to insist it do so.

### 1. Omar's Demanded Accommodations Were Reasonable

Omar's requested accommodations were reasonable and supported by medical documentation. "The ADA and Rehabilitation Act 'do not require 'an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.' While a university 'need not be required to make fundamental or substantial modifications to accommodate the handicapped, it may be required to make reasonable ones.'" *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) [internal citations omitted]. As argued at length in

15

this brief and in her Motion for Summary Judgment, Omar's accommodations would not require WSU a substantial or fundamental modification, just a reasonable one.

Some degree of remote learning can be accommodated by the law school as evidenced by the ability to continue operations during COVID. (ECF No. 24-4, PageIDs.517-518(pp.9-10)). The modifications to cold-calling were *also* done during the pandemic. (ECF No. 24-4, PageID.520-521(pp. 25-26)). A research assistant is likely already on staff in the law library. Moreover, since WSU did not engage in the interactive process, Omar was not able to flesh out or explain in what capacity and how often she would need a research assistant. Extra time and private rooms for examinations are given even for bar examinations; it would just require a proctor. Obtaining notes from the professor and/or classmates would take a conversation and the slightest modification by the professor, if any. Omar, as the disabled individual, knows best what kind of technology she needs for her disability, so a request to use her own assistive technology is far from unreasonable. Finally, it is likely that the class materials she was requesting would already be in an electronic format and any efforts to make them electronic would be minimal. If WSU would have had a meaningful good-faith conversation with Omar, it would have been able to explore a balance of these requests, since they are interconnected.

WSU's cherry-picked quotes do not highlight that her request were not necessary or reasonable. Worthy of highlighting: this was the first time Omar was

posed these questions about her accommodations. These questions were not posed during her conversations with Frost or Welch, but as part of her deposition in this matter.

### 2. Omar Did Not Abandon the Interactive Process Given that WSU Failed to Engage in the Interactive Process

A [university] violates the ADA when [its] unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate a [student]." *Gati*, 762 F. App'x at 252. Although "not described in the statue's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010), citing 29 C.F.R. § 1630.2(o)(3). It is up to WSU to show that an accommodation would cause an undue hardship and, while it is not required to propose a counter accommodation, "taking the extra step of proposing counter accommodations may be additional evidence of good faith." *Id.* at 202-03 [internal citations omitted]. "Examples of how a party may fail to engage in the process in good faith include causing unnecessary delays or obstructing the process, as well as failing to adequately communicate or provide information during the process." *Brumley v. UPS*, 909 F.3d 834, 840 (6th Cir. 2018), citing *Kleiber*, 485 F.3d.

17

Here, WSU breached its duty. As an initial point, WSU did not engage in the interactive process, much less did so in good faith. It failed to identify the precise limitations of Omar's disability, failed to explore reasonable accommodations in the alternative, and, when it ultimately rejected her accommodations, failed to identify how her requested accommodations would actually result in hardship. Any hardship, as Omar argues here and in her own Motion for Summary Judgment, were quick-fire unsupported hardships. WSU further argues that Omar "abandoned" the process after WSU made its final decision, which runs afoul of the evidence in this matter and case law.

WSU denied Omar's accommodation request without considering her individual medical circumstances, "contrary to the individualized approach of the ADA." (ECF 24-6). WSU was obligated to "'identify the precise limitations resulting from [Omar's] disability' and 'any potential reasonable accommodations that could overcome those limitations.'" *Kleiber*, 485 F.3d at 871, quoting 29 C.F.R. §1630.2(o)(3). Instead, it assumed that Omar should attend in person because it "has had, and currently has, other visually impaired/blind students who regularly attend classes in person with reasonable accommodations." (ECF No. 24-6, PageID586). SDS admitted that WSU needed to put in "certain amounts of hours . . . [and] standards that have to be addressed before [it] implement[s] an accommodation."

18

(ECF No. 23-14,PageID. 258-259(pp.9-10)). However, WSU failed to engage in such a process.

WSU casually ignored its obligation under the ADA when it "met [Omar] with a blanketed no." (ECF No. 24-2, PageId.465(Page 67)). Particularly, Welch told Omar "That's not how we do it here." (ECF No. 24-2, PageId.465(Page 67)). This runs in the face of food faith as the

Further, WSU admits that it did not even consider whether it could offer some remote courses and some on-site courses (ECF No. 24-4,PageID.525(p.38); ECF No. 24-3,PageID.47(p.29), which is exactly what Omar requested. (ECF 24-6). Welch admits that that Omar never requested a "fully remote program." (ECF No. 24-4,PageID.520(p.20)) However, in March 2023, WSU still declined "a fully remote program," something Omar never requested. (ECF No. 24-6,PageID.601;ECF No. 24-4,PageID.520(p.20); ECF No. 24-2, PageID.472(P.94)). By May 2023, WSU admitted that *nothing* was going to change that decision. (ECF No. 24-6,PageID 577,586). Omar's continuous attempts to engage in the interactive process, even when represented by counsel, were met with disregard or disdain. (ECF 24-6, PageIDs. 572, 577, 582, 586). How can WSU insist it engaged in a good-faith interactive process when *it repeatedly and willfully evaluated the wrong accommodation*?

Omar did not abandon the interactive process as it never got underway. So much of Omar's communications with WSU were about just clarifying what exactly she was asking for over and over and *over* again. After offering her insufficient accommodations, WSU failed to engage in meaningful conversation to see if these accommodations could be clarified and expanded. But that's not how WSU "does things." Omar ended conversations with WSU only after WSU repeatedly stuck by its accommodations, failing to consider her individualized medical needs and failing to engage *interactively*. Her only choices were to give up law school or start her first year of law school set up to fail. "Nothing in this Act shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit which such individual chooses not to accept." 42 U.S.C.S. § 12201(d). Omar did not accept WSU's accommodations as they were recommended without going through the interactive process.

### b. Remote Learning for First-Year Courses Does Not Fundamentally Alter WSU's Law Program

WSU claims that "modifying the pedagogical approach to the program [to remote] would compromise the school's commitment to educating future lawyers who meet standards as required by ABA accreditation." (ECF 24-6). While Omar was not requesting full-time remote learning as asserted yet again, it is critical to note that the university required every student – with or without a disability – to learn remotely during the COVID-19 pandemic. (ECF No. 24-4, PageIDs.517-

518(pp.9-10)). Accordingly, "Wayne State Law graduates of 2020, 2021, 2022, and 2023 attended some or most of their law studies remotely." (ECF 24-6). WSU has evidently maintained its accreditation nonetheless.

Remote learning does not fail to satisfy any basic educational standard; hence WSU utilized it during the height of the COVID-19 pandemic in 2020. (ECF No. 24-4, PageIDs.517-518(pp.9-10)). Furthermore, if WSU's on-site 'requirement' was indispensable and not merely marginal, WSU would have never allowed remote learning. Instead, WSU not only offered remote courses but charged full tuition and gave full credit for these remote courses. (ECF No. 24-4, PageIDs.517-518(pp.9-10)). Furthermore, nothing on record provides that the 2020, 2021, 2022, and 2023 WSU graduates received a subpar legal education and were not adequately prepared for a legal career. If 2020, 2021, 2022, and 2023 WSU graduates can be successful after learning remotely, Omar can as well. "Notwithstanding the differences between emergency-based, institution-wide practice and an induvial reasonable accommodation, [WSU offering remote learning to all students during the COVID-19 pandemic] demonstrates that [WSU] could deliver adequate academic content remotely and do so in a manner that satisfied its own and ABA standards," as noted by Dinerstein. (ECF No. 24-10). WSU saying that accommodations for COVID were "different" highlights the very point of this case – disability discrimination.

21

### c. Sovereign Immunity Does Not Bar Omar's Claims for Monetary Damages and Retrospective Relief[2]

WSU relies on two cases mainly in arguing that Omar is barred from monetary damages and retrospective relief; their reliance is flawed. In *Saqr*, relying on *United States v. Georgia*, 546 U.S. 151 (2006), the court explained that "the Supreme Court held that Congress had validly abrogated a state's immunity for the Title II claims filed by a paraplegic prisoner plaintiff, and provided guidance for lower courts to resolve similar immunity issues on a claim-by-claim basis in future cases." *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2019 U.S. Dist. LEXIS 26467, at *9 (S.D. Ohio Feb. 20, 2019) "To assess whether any particular Title II claim may proceed, the Supreme Court directed courts to determine: (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

WSU does not grapple with the first two considerations, waiving any argument that they do not weigh in Omar's favor. Omar, as described above, has not only sufficiently state a claim for violations under the ADA and 504, but she has also proven that WSU violated these laws. WSU engaged in conduct that violated

---

[2] Omar acquiesces that her PDCRA claims cannot be brought in federal court.

Title II when it failed to engage in the interactive process and failed to give Omar reasonable accommodations.   The second element also weighs in Omar's favor. "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgi*a, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006). While Omar did not bring a Fourteenth Amendment claim, WSU's actions and violations sound in procedural due process. Omar is not claiming that WSU failed to admit her because she was disabled and generally discriminated against her on the basis of disability; she specifically claims that they failed to follow the interactive *process* required by the ADA.

WSU focuses on the last consideration, the congruence and proportionality test, to justify its argument. *Saqr* is distinguishable from this matter. In *Saqr*, the court grappled with the fact that some courts have chosen to abrogate – or not – based on professional education versus graduate education. *Saqr*, No. 1:18-cv-542 at *22-23. In particular, the plaintiffs in *Saqr* were suing due to a decision by a medical school to dismiss them after findings made by the school's Performance and Advancement Committee. The factual underpinnings from *Saqr* are completely different, as the decision by the medical school was made an academic evaluation committee. In these particular matters, the courts lean towards giving schools deference on monitoring their own students' academics. The Supreme Court has

found that academic disciplinary actions require less process than purely disciplinary actions. The Court held: "[d]ismissals for academic (as opposed to disciplinary) cause do not necessitate a hearing before the school's decisionmaking body. " *Board of Curators of University of Missouri v. Horowtiz*, 435 U.S. 78, 79 (1978), citing *Goss v. Lopez*, 419 U.S. 565 (1975). "The need for flexibility is well illustrated by the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." Id. at 86.

Unlike *Saqr*, the violation is not a subjective one; WSU did not engage in the interactive process. While there is some deference on what a school must do under the ADA and 504 insofar as what accommodations it needs to give, there is no question that it *must* engage in the interactive process. "In conducting the "congruence and proportionality" inquiry, a court must determine: (1) the fundamental right that Congress sought to enforce; (2) whether there is a history of unconstitutional discrimination that supports Congressional determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response." *Saqr*, No. 1:18-cv-542 at *12. "[T]he right to education has been recognized as 'vital' and in Title II, Congress expressed a clear intent to protect that right for persons with disabilities." *Id*. at *15, see also *Ass'n for Disabled Americans,*

*Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005) ("the constitutional right to equality in education, though not fundamental, is vital to the future success of our society," citing Brown v. Board of Education, 347 U.S. 483, 493, 74 S. Ct. 686, 98 L. Ed. 873 (1954)).

The third element weighs in Omar's favor. She is not fighting WSU due to a bad grade or an issue in class – she is fighting WSU due to unfair and discriminate actions before she even got through the door. WSU's actions barred her from getting an education, an education that WSU clearly thought she could handle. Access to education is vital, the ADA was put in place to give disabled students a fighting chance instead of being left to fend on their own, and Title II of the ADA is the appropriate response – otherwise why would the ADA require the interactive process in the first place. Sovereign immunity has been abrogated and Omar should be allowed to continue with her request for monetary damages under her federal claims.

## V.    **CONCLUSION**

For the reasons stated herein, Omar respectfully requests that this Court DENY Defendant's Motion for Summary Judgment and award her all relief is entitled to and that this Court finds just and proper.

Respectfully submitted,

**NACHTLAW, P.C.**

By: */s/ David A. Nacht*

25

David A. Nacht (P47034)
Attorneys for Plaintiff

Dated: September 18, 2024

## PROOF OF SERVICE

The undersigned certifies that on this 18th day of September 2024, a copy of the foregoing Brief was filed via the Court's CM/ECF system, which will cause an electronic copy to be served on all counsel of record.

/s/ Karina Alvarez
Karina Alvarez, Litigation Paralegal